Filed: 4/21/2017 2:54:53 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

# SUMMONS

In the Marion Superior Court, Room No. ____

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

        Plaintiff,

    v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

        Defendants.

Cause No. 49D01-1704-PL-016106

| | |
|---|---|
| To Defendant: (Name) | Marine General Insurance Company a/k/a ProSight Specialty Insurance Group, Inc. |
| (Address) | c/o Corporation Service Company, its Registered Agent<br>80 State Street<br><br>Albany, NY 12207 |

    You are hereby notified that you have been sued by the person named as plaintiff and in the Court indicated above.

    The nature of the suit against you is stated in the complaint, which is attached to this Summons. It also states the relief sought or the demand made against you by the plaintiff.

    An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by the plaintiff.

    If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated   4/21/2017                *Myla A. Eldridge*

                    CLERK, MARION SUPERIOR COURT

      (The following manner of service of summons is hereby designated.)

| | | |
|---|---|---|
| X | Registered or certified mail. | |
| | Service at place of employment, to-wit: | |
| | Service on individual – (Personal or copy) at above address. | |
| X | Service on agent. (Specify) | Corporation Service Company, its Registered Agent |
| | Other service. (Specify) | |

/s/ Olga Voinarevich
Angela P. Krahulik, Atty. No. 23036-49
Olga Voinarevich, Atty. No. 32188-48
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100
Attorneys for Plaintiff

*[Seal: MARION COUNTY COURTS — SEAL — INDIANA]*



EXHIBIT
A

## SHERIFF'S RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served this summons on the _____ day of _____ 20___:

(1) By delivering a copy of the Summons and a copy of the complaint to the defendant, _____ .

(2) By leaving a copy of the Summons and a copy of the complaint at _____

which is the dwelling place or usual place of abode of _____

and by mailing a copy of said summons to said defendant at the above address.

(3) Other Service or Remarks: _____

_____

_____                    _____
             SHERIFF'S COST                                             SHERIFF

                              By: _____
                                                 DEPUTY

## CLERK'S CERTIFICATE OF MAILING

I hereby certify that on the _____ day of _____, 20____, I mailed a copy of this Summons and a copy of the complaint to the defendant, _____ , by _____mail, requesting a return receipt, at the address furnished by the plaintiff.

                              _____
                              CLERK, MARION SUPERIOR COURT

Dated_____                    By: _____
                                                                            DEPUTY

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to defendant _____was accepted by the defendant on the _____ day of _____, 20____.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint was returned not accepted on the _____day of _____, 20___.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to defendant _____was accepted by _____on behalf of said defendant on the _____day of _____, 20____.

                              _____
                              CLERK, MARION SUPERIOR COURT

Dated_____                    By: _____
                                                                            DEPUTY

Filed: 4/21/2017 2:49:44 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

# *INDIANA COMMERCIAL COURT*

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49D01-1704-PL-016106 |

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

       Plaintiff,

    v.

GLOBAL LIVE, INC. and NEW YORK MARINE
GENERAL INSURANCE COMPANY a/k/a
PROSIGHT SPECIALTY INSURANCE GROUP,
INC.,

       Defendants.

**IDENTIFYING NOTICE**

## NOTICE IDENTIFYING COMMERCIAL COURT DOCKET CASE

The undersigned states that this case is a Commercial Court Docket Case eligible for assignment to the Commercial Court Docket pursuant to Rule 2 of the Interim Commercial Court Rules.

Pursuant to Rule 4 of the Interim Commercial Court Rules, the undersigned requests the Clerk of Court assign this case to the Commercial Court Docket.

      Respectfully submitted,

      ICE MILLER LLP

      /s/ Olga Voinarevich
      Angela P. Krahulik, Atty. No. 23036-49
      Olga Voinarevich, Atty. No. 32188-48

      *Attorneys for Indianapolis Motor Speedway,*
      *LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

I\1725159.1

Filed: 4/21/2017 2:51:23 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

STATE OF INDIANA    )      IN MARION COUNTY SUPERIOR COURT
                  )SS:
COUNTY OF MARION   )      CAUSE NO.  49D01-1704-PL-016106

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

          Plaintiff,

    v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

          Defendants.

## <u>E-FILING APPEARANCE BY ATTORNEY IN CIVIL CASE</u>

**This Appearance Form must be filed on behalf of every party in a civil case.**

1.  The party on whose behalf this form is being filed is:
    Initiating  <u> X </u>           Responding  ____    Intervening ____ ; and

    the undersigned attorney and all attorneys listed on this form now appear in this case for the following parties:

    Name of party  <u>**Indianapolis Motor Speedway, LLC**</u>

    Address of party  *(see Question # 5 below if this case involves a protection from abuse order, a workplace violence restraining order, or a no-contact order)*

    _____

    Telephone # of party _____

2.  Attorney information for service as required by Trial Rule 5(B)(2)

| | |
|---|---|
| **Angela D. Krahulik, Atty. No. 23036-49** | **Olga Voinarevich, Atty. No. 32188-48** |
| **ICE MILLER LLP** | **ICE MILLER LLP** |
| **One American Square, Suite 2900** | **One American Square, Suite 2900** |
| **Indianapolis, IN 46282** | **Indianapolis, IN 46282** |
| **(317) 236-5991** | **(317) 236-2347** |
| **Angela.Krahulik@icemiller.com** | **Olga.voinarevich@icemiller.com** |

**-IMPORTANT**: Each attorney specified on this appearance:

(a)     certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this

Appearance;

(b) **acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney; and**

(c) understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Attorneys can review and update their Roll of Attorneys contact information on the Courts Portal at http://portal.courts.in.gov.

3. This is a ___PL_____ case type as defined in administrative Rule 8(B)(3).

4. This case involves child support issues. Yes _____ No _X___  *(If yes, supply social security numbers for all family members on a separately attached document filed as confidential information on **light green paper**. Use Form TCM-TR3.1-4.)*

5. This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order. Yes _____ No _X___  *(If Yes, the initiating party must provide an address for the purpose of legal service but that address should not be one that exposes the whereabouts of a petitioner.)*  The party shall use the following address for purposes of legal service:

_____   Attorney's address

_____   The Attorney General Confidentiality program address
              (contact the Attorney General at 1-800-321-1907 or e-mail address is
              **confidential@atg.in.gov**).

_____   Another address (provide)

_____

This case involves a petition for involuntary commitment. Yes _____ No _X___

6. If Yes above, provide the following regarding the individual subject to the petition for involuntary commitment:

   a. Name of the individual subject to the petition for involuntary commitment if it is not already provided in #1 above:

   _____

   b. State of Residence of person subject to petition: _____

   c. At least one of the following pieces of identifying information:

      (i) Date of Birth _____

      (ii) Driver's License Number _____

          State where issued _____ Expiration date _____

2

    (iii)  State ID number _____

        State where issued _____ Expiration date _____

    (iv)  FBI number _____

    (v)  Indiana Department of Corrections Number _____

  (vi)  Social Security Number is available and is being provided in an attached
      confidential document Yes _____ No _____

7.  There are related cases: Yes _____ No _X_____ *(If yes, list on continuation page.)*

8.  Additional information required by local rule:

    _____

9.  There are other party members: Yes _____ No _X___ *(If yes, list on continuation page.)*

10. This form has been served on all other parties and Certificate of Service is attached:

    Yes_X__ No___

                              Respectfully submitted,

                              ICE MILLER LLP

                              /s/ Olga Voinarevich_____
                              Angela P. Krahulik, Atty. No. 23036-49
                              Olga Voinarevich, Atty. No. 32188-48

                              *Attorneys for Plaintiff, Indianapolis Motor*
                              *Speedway, LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served on the

following, via U.S. Certified Mail, return receipt requested, on the 21st day of April, 2017:

> Global Live, Inc.
> c/o Corporation Service Company, its Registered Agent
> 2711 Centerville Rd., Suite 400
> Wilmington, DE 19808
>
> Marine General Insurance Company a/k/a ProSight
> Specialty Insurance Group, Inc.
> c/o Corporation Service Company, its Registered Agent
> 80 State Street
> Albany, NY 12207

/s/ Olga Voinarevich
Olga Voinarevich, Atty. No. 32188-48

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

4

I\11638368.1

Filed: 4/21/2017 2:47:36 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

# INDIANA COMMERCIAL COURT

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | )SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49D01-1704-PL-016106 |

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

      Plaintiff,

    v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

      Defendants.

## ADMINISTRATIVE RULE 9(G)(5) NOTICE OF EXCLUSION OF CONFIDENTIAL INFORMATION FROM PUBLIC ACCESS

Contemporaneous with the filing of this notice, Plaintiff has filed confidential

information in accordance with Administrative Rule 9(G)(6). Pursuant to Administrative Rule

9(G)(5), Plaintiff provides this notice that the confidential information is to remain excluded

from public access in accordance with the authority listed below:

| Redactions to Be Excluded from Public Record | Administrative Rule 9(G) grounds upon which exclusion is authorized |
|---|---|
| Portions of paragraph 12 of the Complaint, at page 3. | Administrative Rule 9(G)(2)(b); Ind. Code §§ 24-2-3-2, 24-2-3-6 |
| Portions of Exhibit A to Complaint, titled "Special Event Agreement," at pages 1, 3, 4, and 5 | Administrative Rule 9(G)(2)(b); Ind. Code §§ 24-2-3-2, 24-2-3-6 |
| Portions of Exhibit B to Complaint, titled "Certificate of Liability Insurance" | Administrative Rule 9(G)(2)(b); Ind. Code §§ 24-2-3-2, 24-2-3-6 |

Respectfully submitted,

ICE MILLER LLP


/s/ Olga Voinarevich
Angela P. Krahulik, Atty. No. 23036-49
Olga Voinarevich, Atty. No. 32188-48

*Attorneys for Plaintiff, Indianapolis Motor Speedway, LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

2

Filed: 4/21/2017 2:45:45 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

# *CONFIDENTIAL - NOT FOR PUBLIC ACCESS*

## INDIANA COMMERCIAL COURT

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | )SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49D01-1704-PL-016106 |

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

      Plaintiff,

    v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

      Defendants.

### IMS'S COMPLAINT AGAINST GLOBAL LIVE INC. AND NEW YORK MARINE GENERAL INSURANCE COMPANY A/K/A/ PROSIGHT SPECIALTY INSURANCE GROUP, INC.

Plaintiff, Indianapolis Motor Speedway, LLC ("IMS"), by counsel, for its Complaint against Defendants, Global Live, Inc. ("Global Live") and New York Marine General Insurance Company a/k/a ProSight Specialty Insurance Group, Inc. ("ProSight") (collectively, "Defendants"), alleges and states:

### PARTIES, JURISDICTION AND VENUE

1.    IMS is a limited liability company organized under the laws of the State of Indiana, with its principal place of business in Marion County at 4790 W. 16th Street, Indianapolis, Indiana 46222.

2.    At all relevant times, Global Live was a domestic corporation with its principal place of business located at 1100 Glendon Avenue, 21st Floor, Los Angeles, California 90024.

3.    At all times relevant, ProSight was a domestic corporation with its principal place of business located at 9 Maiden Lane, 27th Floor, New York, New York 10038.

4.    This Court may exercise personal jurisdiction over Defendants because Defendants have transacted business in the State of Indiana, have entered into agreements covering performance of duties in the State of Indiana, and have caused harm in the State of Indiana.

5.    Venue is also proper in this Court because a substantial part of the events or omissions giving rise to the alleged claims at issue occurred in Marion County.

## FACTS

### Contracts between IMS and Defendants

6.    On or about April 6, 2015, IMS and Global Live entered into a valid and enforceable Special Event Agreement (the "Event Agreement").  A true and correct copy of the Event Agreement, with trade secret and commercially and financially sensitive information redacted, is attached hereto as **Exhibit A**.

7.    The Event Agreement allowed Global Live to host a concert featuring the musical group professionally known as "The Rolling Stones" at the Indianapolis Motor Speedway on or about July 4, 2015 (the "Event").

8.    The Event Agreement set forth obligations and responsibilities of the parties in connection with the Event.

9.    Global Live's contractual duties included, *inter alia*, organizing, hosting, and sponsoring multiple aspects of the Event, including but not limited to marketing expenses, ticketing costs, event production, labors costs, permits, and *event insurance*. *See* Ex. A, at 1-3.

10.    Specifically, Global Live was expressly obligated to provide coverage for *all* claims arising in connection with the Event. Ex. A, at 4, ¶ 9.

2

11.    The Event Agreement repeatedly refers to the concert attendees as Global Live's "invitees." *See* Ex. A, at 4, ¶ 11.

12.    Under the pertinent terms of the Event Agreement, Global Live was required to "obtain and maintain at its expense commercial general liability insurance *covering the Event...for full coverage of claims* to a limit of at least        per occurrence and in the aggregate (the "Policy")." Ex. A, at 4, ¶ 9 (emphasis added).

13.    According to Paragraph 9(b) of the Event Agreement, "[t]he Policy specifically covers *the Event and* [Global Live's] obligations to IMS." Ex. A, at 4.

14.    At all relevant times, ProSight was Global Live's commercial general liability insurer.

15.    As required under the terms of the Event Agreement, IMS was added as an additional insured to Global Live's Commercial General Liability ("CGL") insurance policy by a Certificate of Liability Insurance issued by ProSight for CGL policy number GL 201500004535 with a period of July 1, 2015 to July 6, 2015 (the "Policy"). A true and correct copy of the Certificate of Liability Insurance, with trade secret and commercially and financially sensitive information redacted, is attached as **Exhibit B**.

16.    To date, IMS has never been provided with a copy of the complete CGL Policy.

17.    The Event Agreement further specifies that the coverage under the Policy must explicitly include IMS "as an additional insured under the Policy" and indicates that the coverage provided to IMS is to be "primary to any other coverage(s) available to IMS." Ex. A, at 4, ¶ 9(a), (c).

18.    The Event Agreement further specifies that "[t]he amount of insurance coverage required to be obtained by [Global Live] is minimum coverage, and it shall be [Global Live's]

obligation to purchase Insurance for full coverage of claims . . . *to protect itself and provide Indemnity to IMS Group based upon the activities to occur in connection with the Event.*" Ex. A, at 4, ¶ 9 (emphasis added).

19.     The Indemnity provision of the Event Agreement provides as follows:

> *To the fullest extent possible, it is the intention* of [Global Live] and IMS that the Indemnities set forth below and *the insurance coverage maintained by [Global Live] pursuant to Section 9 will provide liability protection to [Global Live] and IMS Group for claims arising out of [Global Live]'s and its invitees' presence at the Speedway during the Event…* [I]f and the extent the coverage maintained by [Global Live]…for IMS Group's benefit does not hold IMS Group harmless, *[Global Live] shall indemnify, defend and hold harmless IMS Group for third party claims and liability arising in connection therewith, including costs and reasonable attorneys' fees arising from (i) [Global Live's] or its Invitees' use of the Speedway* or (ii) the negligence or willful misconduct of [Global Live] or its Invitees. . .

Ex. A, at 5, ¶ 11(a) (emphasis added).

20.     To the extent there are any known or unknown claims arising out of the Event, ProSight is contractually obligated to provide a defense and indemnity to IMS, as its insured, under the Policy.

21.     Moreover, to the extent ProSight fails to provide the required defense and indemnity to IMS, Global Live must satisfy its duty to defend and indemnify IMS from any such claims.

### The Underlying Lawsuit

22.     On or about July 4, 2015, Global Live hosted the Event at Indianapolis Motor Speedway.

23.     Upon information and belief, non-parties, Pamela Shepard and William Shepard (collectively, the "Shepards") attended the Event.

4

24.     Upon information and belief, the Shepards tripped over a curb and fell while walking in the tunnel at the Indianapolis Motor Speedway, exiting the Event.

25.     Upon information and belief, Mr. Shepard sustained minor injuries to his leg.

26.     Upon information and belief, Mrs. Shepard sustained injuries to her left elbow and right shin, which required surgical intervention and other treatment.

27.     On or about December 28, 2016, the Shepards filed a Complaint for Damages against IMS (the "Shepards' Complaint") in an action now pending in Marion County, Indiana entitled *Pamela Shepard and William Shepard v. Indianapolis Motor Speedway, LLC*, Cause No. 49D10-1701-CT-000393 (the "Underlying Lawsuit"), alleging IMS is liable to the Shepards for damages arising from the allegations set forth in the Shepards' Complaint. A true and correct copy of the Shepards' Complaint is attached hereto as **Exhibit C**.

28.     The Shepards' Complaint alleges that the Shepards' claims arise out of the incident described in Paragraphs 24 through 26 above and further alleges that, by failing to provide adequate illumination for business invitees exiting the Event, IMS breached its duty of care to the Shepards (the "Claims").

29.     While IMS denies the aforementioned allegations and any liability on behalf of IMS, the Claims and the Underlying Lawsuit are squarely within the scope contemplated by the Event Agreement between IMS and Global Live and the Policy issued by ProSight (as evidenced by the Certificate of Liability Insurance issued to IMS by ProSight).

30.     Accordingly, because ProSight was obligated to provide insurance coverage protection for all "claims arising out of [Global Live]'s and its invitees' presence at the Speedway during the Event[,]"and due to IMS's status as ProSight's additional insured, ProSight

is required to defend the Claims and to indemnify IMS for any damages in connection with the claims in the Underlying Lawsuit. *See* Ex. A.

31.     Moreover, to the extent ProSight refuses to defend the Underlying Lawsuit and indemnify IMS in connection with the Underlying Lawsuit and/or the Claims, Global Live is contractually obligated to do so itself.

32.     IMS notified Global Live and ProSight of the Shepards' Claims within days of the Event and ProSight acknowledged the receipt of said information.  However, to date, IMS has contacted Global Live and/or ProSight regarding the Claims multiple times over a period of more than 18 months, but has not received any substantive response.

33.     The Underlying Lawsuit has continued, and is still pending in Marion County, and IMS is forced to defend itself as to the Claims in Global Live's and ProSight's absence.

34.     Despite numerous demands to assume their responsibilities, Defendants have committed multiple breaches of the Event Agreement and/or the Policy by failing to defend, indemnify, and hold IMS harmless in connection with the Underlying Lawsuit, as they were expressly obligated to do under the terms of the Event Agreement and the Policy.

35.     IMS has fulfilled all of its duties, conditions, and prerequisites to coverage under the Event Agreement and the Policy with respect to the Claims and/or the Underlying Lawsuit.

36.     IMS is thus entitled to an award of all amounts and all expenses and costs incurred as a result of IMS's defense of the Underlying Lawsuit and payment for the same on an as-incurred basis going forward, plus interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit (including any amount paid by vendor or in settlement), and a declaration pursuant to Indiana Code § 34-14-1 *et seq.* that Defendants are obligated to provide

insurance coverage, indemnify, and hold IMS harmless in connection with the Underlying Lawsuit and/or the Claims.

## COUNT I

### BREACH OF CONTRACT AGAINST PROSIGHT

37.   IMS restates and incorporates the allegations of paragraphs 1 through 36 above as if fully set forth herein.

38.   IMS and ProSight are parties to the Policy, which is a valid and enforceable agreement.

39.   As part of the Policy, IMS is entitled to coverage, defense, and indemnity from ProSight for any claims that have been or may be asserted against IMS relating to the Event.

40.   Upon information and belief, no terms or exclusions in the Policy unambiguously exclude coverage for the Underlying Lawsuit and the Claims asserted in the Underlying Lawsuit are within the scope of coverage contemplated by the Event Agreement and the Policy.

41.   As such, ProSight has a duty to provide coverage, defend, and indemnify in the Underlying Lawsuit.

42.   Despite numerous demands to comply with the terms of the Policy, ProSight has failed to provide coverage, to defend the Underlying Lawsuit, or to acknowledge its duties to IMS for any and all claims related to the Event, including the Claims asserted in the Shepards' Complaint, which constitutes a material breach of ProSight's duties under the Policy.

43.   IMS has been, and will continue to be, damaged by ProSight's breach of the Policy.

44.   As a result, IMS is entitled to direct, compensatory, consequential, and incidental damages.

45.     Upon information and belief, all conditions precedent to coverage under the Policy have been satisfied or waived and no exclusion within the Policy precludes coverage for the Underlying Lawsuit and the Claims.

## COUNT II

### PROSIGHT'S BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

46.     IMS restates and incorporates the allegations of paragraphs 1 through 45 above as if fully set forth herein.

47.     IMS and ProSight are parties to the Policy, executed in favor of IMS (the insured under the Policy), which is a valid and enforceable policy of insurance.

48.     Indiana law imposes upon insurers, such as ProSight, an obligation of good faith and fair dealing with their insureds.

49.     ProSight's obligation of good faith and fair dealing includes an obligation to refrain from causing an unfounded delay in making payment; making an unfounded refusal to pay policy proceeds; exercising an unfair advantage to pressure an insured into settlement of a claim; and, deceiving the insured.

50.     Despite IMS's numerous attempts to obtain cooperation from ProSight with regard to ProSight's obligations under the Policy, ProSight has refused to acknowledge IMS's right to coverage, defense, and indemnity under the Policy, has failed to respond to IMS's tender of the claim, and failed to disclaim or accept coverage or to provide IMS a defense in connection with the Underlying Lawsuit.

51.     As set forth herein, IMS has been forced to defend itself against the Underlying Lawsuit because ProSight wrongfully failed to provide it a defense under the Policy.

52.     IMS has and continues to incur costs, expenses, and attorneys' fees due to ProSight's breaches of its duties to its policyholder, and failure to provide coverage and defend IMS in the Underlying Lawsuit.

53.     ProSight's breaches of its fiduciary duties to its policyholder are such that punitive damages, including treble damages, and attorneys' fees are appropriate.

## COUNT III

## DECLARATORY JUDGMENT AGAINST PROSIGHT

54.     IMS restates and incorporates the allegations of paragraphs 1 through 53 above as if fully set forth herein.

55.     The above allegations describe an actual and justiciable controversy between IMS and ProSight regarding their rights and obligations under the Policy.

56.     ProSight is obligated to provide IMS a defense and indemnification for claims to which the insurance applies, including the Claims asserted in the Underlying Lawsuit.

57.     Upon information and belief, no terms or exclusions in the Policy unambiguously exclude coverage for the Underlying Lawsuit. The Claims asserted in the Underlying Lawsuit are within the scope of coverage contemplated by the Policy.

58.     ProSight has wrongly failed to abide by its obligations to defend and indemnify IMS in the Underlying Lawsuit.

59.     The issues in this action are ripe for decision and relate to the construction and validity of the Policy, including the rights of IMS to be provided a defense in the Underlying Lawsuit.

60.     IMS therefore seeks a declaration that ProSight is obligated to provide insurance coverage for any and all claims raised in the Underlying Lawsuit.

9

61.     IMS further seeks a declaration that ProSight is obligated to otherwise fully defend, indemnify and hold IMS harmless for any and all claims made or otherwise made in the Underlying Lawsuit up to the applicable limits of the Policy.

## COUNT IV

## BREACH OF CONTRACT AGAINST GLOBAL LIVE

62.     IMS restates and incorporates the allegations of paragraphs 1 through 61 above as if fully set forth herein.

63.     IMS and Global Live are parties to the Event Agreement, which is a valid and enforceable agreement.

64.     Under the terms of the Event Agreement, Global Live was obligated to procure insurance for any claims relating to the Event, including the Claims raised in the Underlying Lawsuit.  The coverage was to be primary to any other coverage(s) available to IMS.

65.     However, if Global Live's insurance fails to provide coverage, defense, and indemnification for claims arising from the Event, including the Claims raised in the Underlying Lawsuit, Global Live is obligated to do so itself.

66.     ProSight has failed to comply with its obligations and to provide defense and indemnification to IMS as its insured, as evidenced by the Certificate of Liability Insurance.

67.     Accordingly, under the Event Agreement, IMS is entitled to reimbursement of its defense and indemnity from Global Live for any claims that have been or may be asserted against IMS relating to the Event, including the Claims alleged in the Underlying Lawsuit, as well as all interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit (including any amount paid by vendor or in settlement).

68.     Despite numerous demands to comply with the terms of the Event Agreement, Global Live has breached the Event Agreement by failing to defend the Underlying Lawsuit and failing to hold IMS harmless for the Claims raised in the Underlying Lawsuit, which constitute material breaches of the Event Agreement.

69.     Under Indiana law, the disclaimer of a contractual duty is a breach of contract even if the time specified in the contract for performing the duty has not yet arrived.

70.     IMS has been, and will continue to be, damaged by Global Live's breach of the Event Agreement.

71.     As a result, IMS is entitled to direct, compensatory, consequential, and incidental damages, including its fees and costs in the Underlying Lawsuit and in this action.

72.     Upon information and belief, all conditions precedent to this action have been waived or have been fulfilled.

### **PRAYER FOR RELIEF**

WHEREFORE, IMS respectfully requests that the Court grant it the following relief:

A.     A declaratory judgment that ProSight is obligated to provide coverage, including both defense and indemnity, in connection with the Underlying Lawsuit; Immediate payment for any and all amounts and all expenses and costs incurred as a result of IMS's defense of the Underlying Lawsuit and payment for the same on an as-incurred basis going forward, plus all interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit;

B.     Immediate payment for any and all amounts and all expenses and costs incurred as a result of IMS's defense of the Underlying Lawsuit and payment for the same on an as-incurred basis going forward, plus all interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit;

11

C.      A judgment in IMS's favor and against the Defendants in an amount that will fully compensate IMS for its damages and losses, including compensatory, consequential and incidental damages and prejudgment interest, including but not limited to an award of costs, fees (including attorneys' fees),  treble damages, punitive damages, and litigation expenses in this action, with interest; and

D.      For all such other relief that is just and proper in the premises.

Respectfully submitted,

ICE MILLER LLP

/s/ Olga Voinarevich
Angela P. Krahulik, Atty. No. 23036-49
Olga Voinarevich, Atty. No. 32188-48

*Attorneys for Indianapolis Motor Speedway, LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

12

I\11638268.6

CONFIDENTIAL

NOT FOR PUBLIC AC...

Filed: 4/21/2017 2:45:45 PM
Myra A. Eldridge
Clerk
Marion County, Indiana



# SPECIAL EVENT AGREEMENT

THIS SPECIAL EVENT AGREEMENT ("Agreement") is effective as of April __, 2015 (the "Effective Date"), by and between Indianapolis Motor Speedway, LLC, an Indiana limited liability company located at 4790 West 16th Street, Indianapolis, Indiana 46222 ("IMS"), and the licensee identified in Section 1. In consideration of the mutual covenants set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement agree as follows:

**1. Licensee Identification and Event Details.**

**Company Name: Global Live, Inc. ("Licensee")**

**Address: 1100 Glendon Avenue, 21st Floor, Los Angeles, CA 90024**

**E-Mail: chuck.ciongoli@thisisglobal.com**

**Contact Person: Charles Ciongoli**

**Telephone Number: 310-774-4700**



**Event Name: Rolling Stones Concert**

**Event Date(s) and Times:** July 4, 2015, 5:00 a.m. — [ _____ ]. Actual performance time to be mutually agreed by the parties; Camping and RV's to be allowed on the Licensed Premises (as defined below) from July 3, 2015 through the end of the Event, subject to the consumer's execution of any standard license agreements normally required by IMS.

**Set Up Date(s) and Times: Beginning Sunday, June 28, 2015 at 8:00 a.m.** Access to the Licensed Premises to be coordinated with IMS personnel. Licensee shall use reasonable efforts to cause its Invitees that will be conducting set-up, tear-down and other work in connection with the Event to execute standard consent and liability releases normally required by IMS prior to such Invitees being allowed access to the Licensed Premises.

**Tear Down Date(s) and Times: To be completed by Monday, July 6, 2015 by 11:59 p.m.** Access to the Licensed Premises to be coordinated with IMS personnel.

**Description of Event:** Licensee will host a concert featuring the musical group professionally known as "The Rolling Stones" (the "Artist") at the Indianapolis Motor Speedway (the "Speedway") in and around the Plaza, Pavilion, Media Center, Moto GP garages, Old Timers Room, North Chalet, oval track and such other locations as shall be determined by IMS and Licensee (the "Licensed Premises"). The event will consist of the following activities and such other activities as shall be agreed between IMS and Licensee, all of which shall comply with the terms of this Agreement (collectively, the "Event"):

        (i) concert; and
        (ii) fireworks display.

**Included Services and Equipment to be provided by IMS:**

*a) Ambulance and Other Medical Services. IMS will secure ambulatory services for the Event and in addition will make available use of its onsite hospital facility which IMS will cause to be staffed and operational at all times during the Event. IMS will provide the foregoing to Licensee's expense, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.*

*b) Facilities Staff. IMS shall provide Facilities Staff members, who will be available for the entire Event. The number of such Facilities Staff members and their functions (e.g., security, ushers, ticket takers) shall be mutually agreed prior to the Event and shall be reasonable for an event of this size and type, and shall include, but not be limited to, staff and equipment for cleaning/housekeeping services, police and fire services, camping operations and parking and traffic services. IMS will provide the foregoing to Licensee's expense, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.*

1

EXHIBIT A

c) *Video Boards.* Subject to IMS's pre-approval of the advertiser, Licensee shall be permitted to display its and its affiliated companies' advertising and imagery, in accordance with Section 7(d) of the Agreement, on IMS's video boards.

d) *Public Announcements.* IMS shall make available, limited use of the public address system. Announcers and all content shall be provided by Licensee, subject to IMS pre-approval.

e) *Food and Beverage Trucks.* The parties agree that Levy Premium Foodservice Limited Partnership shall be the food and beverage service provider at the Event. IMS shall make arrangements for such service, including without limitation, the arrangement of food and beverage truck vendors desired by Licensee.

f) *Golf Carts.* IMS shall make available to Licensee IMS' golf carts for use by Licensee's production personnel at no additional charge. Subject to execution of IMS' Consent, Indemnification & Liability Release Agreement for Use of a Golf Cart, any and all other golf carts operated on the premises of the Speedway, whether Licensee-owned or rented, must be registered with IMS. All golf cart operators must be at least 18 years of age. If use of a golf cart is part of this Agreement, then the IMS Credential Office will provide Licensee an IMS golf cart voucher ("GC Voucher") upon receipt and approval of: this Agreement, Licensee's certificate of insurance, and a completed golf cart registration form. The GC Voucher must be redeemed at the IMS Safety Office for an IMS golf cart permit/sticker ("GC Permit"). The GC Permit must be placed on Licensee's golf cart. An authorized representative of Licensee must execute IMS' standard waiver and release of liability and indemnity agreement for golf carts and initial a copy of IMS' standard rules of operation for golf carts at the time of redeeming the GC Voucher for a GC Permit. All golf carts operated on the premises of the Speedway, regardless of who owns the golf cart(s), must be registered with IMS.

g) *Fireworks.* To be provided by IMS at Licensee's expense, in accordance with a budget to be mutually agreed in advance, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up. IMS acknowledges that in addition to the fireworks display to which the preceding sentence applies, Artist shall be entitled to include a fireworks display as part of Artist's concert, and that IMS will make available at no cost the services of a supervisory pyrotechnician in connection therewith.

h) *Fencing.* To be provided by IMS at Licensee' expense, in accordance with a budget to be mutually agreed in advance, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

i) *Light towers.* To be provided by IMS at Licensee's expense, in accordance with a budget to be mutually agreed in advance, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

**Additional Services and Equipment:** If at Licensee's request IMS facilitates on behalf of Licensee a third party rental of equipment or engagement of third party services, Licensee will be responsible for the actual invoice price of such rental or services upon presentation of the applicable invoice with respect thereto at settlement. Notwithstanding anything contained in this Agreement to the contrary, subject to coordination with IMS personnel, IMS owned or leased equipment will be made available for Licensee's use in connection with the Event at no charge.

**Additional responsibilities of Licensee:**

a) At no cost to IMS, Licensee agrees to provide IMS with a 60'X 60' display area in the Plaza.

b) All labor costs not otherwise provided for above, including, without limitation, the costs of stage hands, rigging personnel, loaders and unloaders.

c) Ticketing costs including credit card fees.

d) Event Production, including, without limitation, staging, platforms, risers, and barricades, including the equipment and costs therefor except as otherwise provided in this Agreement.

e) Event insurance as set forth below.

f) Permits, if applicable, with respect to the Event.

g) Advertising and marketing expenses with respect to the Event.

Payment: The License Fee and Other Fees are due and payable upon settlement of the Event, which shall take place within five (5) business days following the completion of tear down.

2.     **License.** IMS grants to Licensee a limited, non-transferable and non-exclusive license ("License") to use designated areas during the Event and the set up and tear down periods for the Event as set forth above in accordance for customary standards for comparable events in the United States. This Agreement does not create nor convey any legal title, leasehold or other legal, equitable or beneficial property interest in or to the Speedway.



4.     **Services and Equipment.** IMS shall provide or arrange for all Included Services and Equipment as set forth above, and any Additional Services and Equipment requested by Licensee and agreed to by IMS.  Third party vendors and service providers with respect to Additional Services and Equipment requested by Licensee shall be subject to Licensee's and IMS' mutual approval, not to be unreasonably withheld, and any such services and equipment must be of "first class" quality.

5.     **Open and Close Times and Tear Down.** Unless specified in Section 1, open and close times and tear down times shall be mutually determined by IMS and Licensee.

6.     **Laps.** In the event that persons are participating in hot laps or track laps that are approved by IMS they must be at least eighteen (18) years old; possess valid, government-issued photo identification; and execute all IMS required consent and liability releases.

7.     **Commercial Transactions.**

a.     **Generally.** Unless otherwise set forth in Section 1 or this Section 7, IMS prohibits (i) all commercial transactions at the Speedway, including but not limited to the sale of food, alcoholic and nonalcoholic beverages, and merchandise and (ii) all distribution of products (including donated products), samples and/or premiums (non-saleable articles bearing trademarks, logos or advertising used to promote or publicize any product or service). Licensee shall ensure that its Invitees (as defined in Section 11), are aware of and comply with the terms and conditions regarding commercial transactions in this Agreement.

b.     **Food and Beverages,** IMS shall arrange for Levy to provide food and beverage concessions specified in Section 1 at IMS designated concessions and food and beverage truck areas, and all hospitality food and beverages shall be provided by Levy or IMS-approved caterers at Licensee's additional cost.

c.     **Merchandise.** Licensee and its contractors may sell Event merchandise in IMS designated areas so long as the Event merchandise does not display any IMS trademark.  Notwithstanding the foregoing, Licensee and its contractors shall be entitled to offer for sale t-shirts and other merchandise displaying designs that identify the Event by the name of the venue. Unless set forth in Section 1, no other sale of merchandise by Licensee or its contractors is permitted. Licensee represents, warrants and covenants that, prior to the Event and continuing throughout the Event, Licensee or its contractors shall secure and maintain a proper license from any and all third parties whose trademarks, logos, brands and/or other intellectual property appear on the merchandise/services being offered/displayed at the Speedway. Licensee agrees to permit IMS (and its representatives) access during normal business hours to Licensee's records pertaining to such licenses for the purpose of verifying the existence of such licenses. In the event Licensee cannot demonstrate that it or its contractors hold a proper license for any merchandise/services being offered/displayed at the Speedway, Licensee agrees that it shall cooperate with IMS to promptly remove such merchandise/services from the Speedway.

361793.8
040615

d.   Advertising and Signs. Licensee and Artist shall have the right to solicit third-party sponsors to be sponsors for the Event and to for and/or in connection with the Event, including any sponsorship advertising of or during the Event.  Licensee shall provide IMS in advance a list of potential sponsors and advertisers, and IMS shall have the right, exercisable by written notice within two (2) days after Licensee's submission of such list to IMS, to reject any sponsor or advertiser which would cause IMS to be in breach of its existing third party agreements.  All sponsorship advertising and/or promotional displays and signage at the Speedway of any sponsors and advertisers rejected by IMS pursuant to the preceding sentence are strictly prohibited.  IMS hereby pre-approves the use of Artist's logos in advertising for the Event and otherwise at the Event.

e.   Sweepstakes. Licensee shall not conduct a sweepstakes, raffle or similar activity in connection with the Event without the pre-approval of IMS.  Licensee must comply with all laws and obtain all permits with respect to such activities and must provide IMS evidence thereof prior to the Event.

f.   Consumer Information. If Licensee collects any information (e.g., name, email address, mail address, mobile number, etc.) in connection with any activity under this Agreement (e.g., via sweepstakes entry forms, if a sweepstakes is pre-approved by IMS, Event registration forms, etc.), provided that to do so will not result in Licensee's breaching any of its third party obligations, Licensee will share such information (collectively "Consumer Information") with IMS within thirty (30) days after collection. Licensee shall use reasonable efforts to ensure that IMS has all necessary right and power to use the Consumer Information in connection with its business. Without limiting any of its obligations under the foregoing, Licensee represents and warrants that: (a) IMS may utilize the Consumer Information in IMS's direct sales, marketing, communication or other outreach activities; (b) Licensee will provide express notice to each person of its intent to share the Consumer Information with IMS and that, upon receipt by IMS, the Consumer Information will be used and maintained by IMS pursuant to its privacy policy at www.indianapolismotorspeedway.com; (c) in connection with any Consumer Information that is an email address or a mobile number, Licensee will seek to obtain and maintain the applicable consumer's express opt-in consent for IMS's use of the same or provide written notice to IMS if opt-in consent was not obtained; and (d) notwithstanding the foregoing or any of the provision in this Agreement to the contrary, Licensee will not provide IMS any Consumer Information for a child under the age of 13 years without IMS's express prior written approval.

8.      Photography/Videography. Licensee and Artist may take still photos and video recordings of the Event for Licensee's and/or Artist's promotional use as well as internal historical purposes. All other photography and videography arrangements must be pre-approved by IMS, such approval not to be unreasonably withheld, and shall be subject to execution of a Location Release. Other than pursuant to a Location Release, the commercial use or re-sale of any photographs or film footage taken on the grounds of the Speedway is prohibited, provided, however, such restriction shall not apply with respect to behind-the-scenes photos or video recordings. No broadcasts, photographs or videotapes shall imply a relationship between IMS and Licensee other than that permitted under this Agreement.

9.      Insurance. Prior to the Event, Licensee shall obtain and maintain at its expense commercial general liability insurance covering the Event, including without limitation products and completed operations liability, and a contractual liability endorsement (and covering X,C and U hazards, where applicable; independent contractors; and use of pyrotechnics), for full coverage of claims to a limit of ████████████ per occurrence and in the aggregate (the "Policy"); automobile liability insurance on all owned, non-owned and hired autos and equipment operated or otherwise used or displayed during the Event with coverage limits ████████████ per occurrence; and workers' compensation in accordance with statutory requirements, including employers liability insurance with a limit of ████ ████████ per claim (but in no event in limits less than those required by law and/or as set forth in the artists' riders, if any); and Event cancellation or postponement coverage  in an amount sufficient to cover ticket refunds. Licensee shall deliver a certificate evidencing Licensee's compliance as to insurance coverage to IMS upon execution of this Agreement or the Event will be canceled, and no fees or deposits paid prior to the cancellation will be refunded. The certificate of insurance must demonstrate the following:

(a)     IMS Group (as defined below) is a certificate holder and is included as an additional insured under the Policy;
(b)     The Policy specifically covers the Event and Licensee's obligations to IMS; and
(c)     The Policy provides coverage primary to any other coverage(s) available to IMS Group.

The amount of insurance coverage required to be obtained by Licensee is minimum coverage, and it shall be Licensee's obligation to purchase insurance for full coverage of claims as it deems advisable in its business judgment to protect itself and provide indemnity to IMS Group based upon the activities to occur in connection with the Event. In addition, Licensee will require all subcontractors performing work in connection with the Event to include IMS Group as Additional Insureds for comprehensive general liability insurance carried by such subcontractors.

4

To support its indemnity obligations as set forth in Section 11(b), IMS shall maintain commercial general liability insurance ▮▮▮▮▮▮ ▮▮▮▮▮▮ per occurrence and in the aggregate.  In addition, IMS shall have Licensee named as an additional insured for any claims asserted against Licensee that would, if successful, be covered by IMS's indemnity obligations as set forth in Section 11(b).

10.      **Representations and Warranties.**

a.  Licensee represents and warrants that (i) Licensee has the right to enter into and fully perform every provision of this Agreement; and (ii) the person executing this Agreement on Licensee's behalf has the authority to do so.

b.  IMS represents and warrants that (i) IMS owns the Licensed Premises and that IMS has the right to enter into and fully perform every provision of this Agreement; and (ii) the person executing this Agreement on IMS' behalf has the authority to do so.

11.      **Indemnification.**

a.  Licensee and Licensee's agents, representatives, employees, contractors and invitees and spectators ("Invitees") shall be provided with access to the Speedway (including both public areas and restricted areas of the Speedway) conditioned upon Licensee's compliance with this Section 11a. To the fullest extent possible, it is the intention of Licensee and IMS that the indemnities set forth below and the insurance coverage maintained by Licensee pursuant to Section 9 will provide liability protection to Licensee and IMS Group for claims arising out of Licensee's and its Invitees' presence at the Speedway during the Event. To the extent that Licensee's insurance holds IMS Group harmless, IMS Group does not require indemnity from Licensee. However, if and to the extent the coverage maintained by Licensee for the Licensee and IMS Group's benefit does not hold IMS Group harmless, Licensee shall indemnify, defend and hold harmless IMS Group for third party claims and liability arising in connection therewith, including costs and reasonable outside attorneys' fees, arising from (i) Licensee's or its Invitees' use of the Speedway or (ii) the negligence or willful misconduct of Licensee or its Invitees or (iii) Licensee's breach of this Agreement and/or its representations and warranties hereunder, provided the applicable claim is reduced to a final adverse judgment or settled with Licensee's prior written consent, not to be unreasonably withheld, provided, however, the foregoing indemnity shall not apply with respect to claims resulting from the breach of IMS' representations, warranties or covenants under this Agreement or from the sole negligence or willful misconduct of the IMS Group or any member thereof.  This Section shall survive expiration or termination of this Agreement. "IMS Group" means IMS, Indianapolis Motor Speedway Foundation, Inc., all relevant race sanctioning bodies, and the successors, assigns, officers, directors, owners, members, agents, affiliates and employees of each of them.

b.  IMS shall indemnify, defend and hold harmless Licensee and Artist and the respective successors, assigns, officers, directors, owners, members, agents, affiliates and employees thereof for third party claims and liability arising in connection therewith, including costs and reasonable outside attorneys' fees, arising from (i) the failure of IMS' Equipment, including, without limitation, any software, provided by IMS as set forth under "Included Services and Equipment to be provided by IMS" in Section 1 above in connection with the performance of IMS' obligations hereunder, or (ii) the sole negligence or willful misconduct of IMS or its employees or independent contractors engaged by IMS or any affiliated or related entity, or (iii) IMS' breach of this Agreement and/or its representations and warranties hereunder, provided the applicable claim is reduced to a final adverse judgment or settled with IMS' prior written consent, not to be unreasonably withheld. This Section shall survive expiration or termination of this Agreement.

12.      **Cancellation and Refund Policy.** If Licensee cancels the Event in advance of the dates set forth in Section 1 other than as a result of force majeure as set forth in Section 13 or IMS' negligence or fault, IMS shall be entitled to reimbursement of its actual out-of-pocket non-overhead expenses incurred specifically in connection with the Event prior to such cancellation as provided for in this Agreement.  If for any reason the Licensed Premises becomes unavailable in advance of the Event, IMS will promptly notify Licensee and use its best efforts to mitigate any adverse effect on Licensee or on the Event.  If IMS cancels the Event other than as a result of force majeure as set forth in Section 13, in addition to any other rights or remedies that Licensee may have at law or in equity, IMS shall promptly refund to Licensee 100% of the License Fee and any and all fees and deposits paid by Licensee to IMS prior to the cancellation. Licensee assumes the risk of cancellation of all or part of the Event or any portion thereof during the Event for any reason not within IMS' control including without limitation inclement weather.

13.      **Force Majeure.** The parties' obligation to perform hereunder is subject to acts of God, war, government regulations, disasters, strikes, civil disorder, curtailment of transportation facilities, or other emergencies provided the foregoing are beyond the control of the parties, making it inadvisable, illegal or impossible to hold the Event.

361793.8
040615

14.    **Maintenance of the Licensed Premises.**

    <u>a.</u>    Licensee shall maintain order at the Speedway and shall not conduct, and shall use its reasonable efforts not to permit, any activities at the Speedway which (i) are prohibited by any applicable law, regulation, rule or ordinance; (ii) endanger the health or safety of any persons or property; or (iii) violate any rules, regulations, policies, practices or procedures of IMS as amended from time to time by IMS in its sole discretion provided Licensee has previously been notified thereof in writing.

    <u>b.</u>    Licensee shall use its good faith reasonable efforts not to commit waste at the Speedway, damage Speedway property or maintain or permit to be maintained a nuisance therein. Licensee shall not apply any substance to any racing or other surface without the consent of IMS. Licensee shall present all licensed space in a tasteful manner appropriate for Invitees of all ages. Following the Event, Licensee shall remove any and all trash and debris, clean all surfaces, and otherwise return the Licensed Premises to the same condition, normal wear and tear excepted, as the Licensed Premises was received by Licensee from IMS. The Inclusion shall be responsible for any and all property damage and all clean-up costs to the Licensed Premises during or as a result of the Event. All debris shall be placed in containers furnished by IMS.  No firearms or other weapons shall be brought onto the grounds of the Speedway.

    <u>c.</u>    The integrity of any paved surface of the Licensed Premises shall be maintained at all times, and Licensee shall repair any damage to the surface at Licensee's sole cost. Penetration of the parking surface with tent stakes or similar implements is prohibited.

    <u>d.</u>    All displays and trailers are subject to IMS approval, not to be unreasonably withheld. IMS shall be deemed to have approved any display provided such display would not cause IMS to be in breach of any of its third party obligations or otherwise expose IMS to legal liability or material reputational harm.  The inclusion of any Artist logo or other mark on or in connection with any displays or trailers shall not be deemed to expose IMS to reputational harm.   All displays and trailers shall be free standing. Storage on top of any trailer located on the Licensed Premises is prohibited. No one is permitted on top of a trailer located on the Licensed Premises. Licensee shall be solely responsible for maintaining the Licensed Premises in a clean and tasteful manner during the License Period, consistent with the standards of taste for similar concerts in the United States.

    <u>e.</u>    All stages and other temporary structures including stage equipment, elevated platforms, mobile/portable bleachers and fences must comply with all applicable laws and regulations and may be subject to prior inspection and approval by a governmental authority and IMS, provided IMS shall not unreasonably withhold its approval and shall be deemed to have approved all stages and other temporary structures that are of a type and quality consistent with that customarily used for similar concerts in the United States.

    <u>f.</u>    All merchandise to be sold in the Licensed Space must be displayed, stored and sold from a mobile trailer unit or professional portable tenting with proper display area and self-contained storage.

    <u>g.</u>    The boundaries of any display space identified in <u>Section 1</u> may not be exceeded and shall contain completely all elements of the display, including but not limited to restroom facilities, generators, light towers, storage units, office trailers, tractor/trailers, rubbish containers, personal vehicles, hoisting equipment, rigging, stakes, entrance structures, guy wires. If the dimensions and location of the display space have been specified to in <u>Section 1</u> or subsequent to execution of this Agreement, they shall not be changed during installation. Motor vehicles not a part of a display are only permitted in parking lots open to the public.

    <u>h.</u>    All portions of the Event, including viewing areas, exhibits, kiosks, interactive displays, and stages that are open and available to Invitees and shall be accessible to individuals with disabilities, and shall comply with the Americans with Disabilities Act (ADA).

    <u>i.</u>    Upon consent from IMS, not to be unreasonably withheld, Licensee may "plug in" customary power and/or telecommunications cords into currently existing standard household power outlets (120 volt convenience receptacles) or currently existing standard telephone jacks. Any equipment, device or system requiring connections to other services must be connected and disconnected by IMS.

    <u>j.</u>    Operation of the Event shall immediately cease if so instructed by IMS or public safety officials acting in good faith due to severe weather materially threatening the attendees of the Event or otherwise based on legitimate concern for public safety. Licensee shall be prepared to lower, dismantle, and/or secure as required any parts of the display or vendor area that are unstable, susceptible to damage or otherwise pose an elevated hazard during high winds, lightning, and heavy rain. Licensee shall insure that display is fabricated and installed

6

in such a manner as to be quickly disassembled, lowered and/or secured as required to insure the safety of the general public during severe weather.

k.    IMS safety personnel will be onsite during the Event to provide security for the Event and its attendees. If Licensee requires additional security for the Event, IMS will assist in making these arrangements through an IMS-approved security firm at Licensee's additional expense.

15.    **Miscellaneous.**

a.    **Assignment.** Licensee may not assign or transfer any of its rights or obligations under this Agreement without the prior written consent of IMS.

b.    **Entire Agreement.** This Agreement constitutes the entire understanding between the parties to this Agreement with respect to the subject matter of this Agreement and shall be deemed to supersede all prior agreements, whether written or oral, and the terms and provisions of any such prior agreements shall be deemed to have been merged into this Agreement.  Notwithstanding the foregoing, IMS and Licensee hereby acknowledge and agree that they intend to enter into, and are currently negotiating, an overall exclusive agreement between each other pursuant to which Licensee would be the exclusive promoter of music-related events at the Licensed Premises for a term of four (4) years from the date of the Event, with an exclusive six (6) month first negotiation right to extend such term (the "Overall Agreement").  At such time, if ever, that such Overall Agreement is entered into, this Agreement shall be deemed to be superseded thereby (except as may be expressly provided otherwise in the Overall Agreement), and the Event shall be deemed to have been undertaken pursuant to the terms and conditions of the Overall Agreement.

c.    **Modification and Waiver.** No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by both parties. No waiver of any breach or violation of any of the provisions of this Agreement shall constitute or shall be deemed to constitute a waiver of any other breach or violation of any provision of this Agreement, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

d.    **Public Statements and Press Releases.** The Licensee agrees to obtain IMS's pre-approval, not to be unreasonably withheld or delayed, and to coordinate the content and timing of all public statements and press releases concerning the relationship governed by this Agreement.

e.    **Notice.** All notices required to be given under this Agreement or which the parties may desire to give under this Agreement shall be in writing and (a) hand delivered personally; or (b) delivered by facsimile transmission if receipt is confirmed to the party whom notice is to be given; or (c) addressed and sent by certified or registered mail, postage prepaid and return receipt requested to the parties. Notices to Licensee shall be directed to the addresses provided on Page 1, to the attention of the Head of Business Affairs and to the Chief Financial Officer. Copies of all notices to Licensee shall be simultaneously sent to *Grubman Shire & Meiselas, P.C., 152 West 57th Street, New York, NY 10019, Attention: Donald R. Friedman, Esq., facsimile 212-554-0444.* Notices to IMS shall be directed to *President, 4790 W. 16th Street, Indianapolis, IN 46222, facsimile 317-492-6482, with a copy to General Counsel, 4790 W. 16th Street, Indianapolis, IN 46222, facsimile 317-492-6490.* If either party wishes to alter the address to which notices to it are sent, it may do so by providing the new address, in writing, to the other party by one of the methods set forth in this Section 15(f). All notices addressed in accordance with this Agreement shall be effective when received if delivered by mail or, if personally delivered, the date on which delivery is made.

f.    **Remedies.** All rights and remedies provided in this Agreement shall be cumulative, and shall not be exclusive of one another or of any remedies available at law or in equity. Under no circumstances shall either party be liable for consequential, special or incidental damages.

g.    **Trademarks.** Except as set forth elsewhere in the Agreement, this Agreement does not grant Licensee any right or license to use any trademarks, service marks, copyrights or other intellectual property rights of IMS other than to identify the location of the Event, and any such use by Licensee is strictly prohibited. If IMS grants Licensee a license in the Agreement, the Licensee shall have a royalty-free, non-exclusive, limited, non-transferable license to use the specified Event Mark or IMS marks ("IMS Marks") in the United States for specified purpose requirements set forth in Section 1 or elsewhere in this Agreement. All artwork, design and premiums using the IMS Marks are subject to any applicable approval rights of IMS in accordance with the terms of this Agreement in each instance. The manufacturer of any premium bearing an IMS Mark must be an officially-approved licensee of IMS. Requests for the IMS Marks and approval shall be

7

submitted to Manager of Licensing, Indianapolis Motor Speedway, 4790 West 16th Street, Indianapolis, Indiana 46222, (317) 492-6792.

h.    Taxes.  IMS shall notify Licensee on a timely basis of the correct rates for calculating Licensee's taxes to be assessed on all amounts received by Licensee in respect of ticket sales for the Event to enable Licensee to prepare and timely file any and all tax returns or reports required to be filed in respect of any taxes owed by Licensee in connection with ticket sales for the Event.

i.    Compliance with Law.  Licensee shall obtain all permits and comply with all laws applicable to its activities hereunder.

IN WITNESS WHEREOF, each party acknowledges that a duly authorized representative of such party has executed this Agreement as of the date set forth below, and acknowledges that such party has read, understands and agrees to the terms and conditions of this Agreement.


INDIANAPOLIS MOTOR SPEEDWAY, LLC

By: _____

Printed: J. Douglas Boles

Title: President

Date: 4/6/15


LICENSEE: GLOBAL LIVE, INC.

By: _____

Printed: Charles C. Ciongoli

Title: Executive VP & CFO

361793.8
040615

## INDIANA COMMERCIAL COURT

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | )SS: | |
| COUNTY OF MARION | ) | CAUSE NO. |

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

        Plaintiff,

    v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

        Defendants.

### NOTICE OF EXCLUSION OF CONFIDENTIAL INFORMATION
### THAT IS NOT NECESSARY TO THE DISPOSITION OF THE CASE

Contemporaneous with the filing of this notice, Plaintiff has omitted confidential information in accordance with Administrative Rule 9(G). Pursuant to Administrative Rule 9(G)(5)(b)(ii)(a), Plaintiff provides this notice that the omitted confidential information "is not necessary to the disposition of the case" and, therefore, "the excluded Court Record need not be filed or tendered in any form and only the Public Access version is required." Admin. Rule 9(G)(5)(b)(i).

| Document to Be Excluded from Public Record | Administrative Rule 9(G) grounds upon which exclusion is authorized |
|---|---|
| Pages 9 and 10, titled "Schedule A," to Exhibit A of the Complaint | Administrative Rule 9(G)(2)(b); Ind. Code §§ 24-2-3-2, 24-2-3-6 |

Respectfully submitted,

ICE MILLER LLP


/s/ Olga Voinarevich
Angela P. Krahulik, Atty. No. 23036-49
Olga Voinarevich, Atty. No. 32188-48

*Attorneys for Plaintiff, Indianapolis Motor
Speedway, LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

2

CONFIDENTIAL

Filed: 4/21/2017 2:45:45 PM
NOT FOR PUBLIC ACCESS Clerk Eldridge
Clerk
Marion County, Indiana

# CERTIFICATE OF LIABILITY INSURANCE

**ACORD**

DATE (MM/DD/YYYY)

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT |
|---|---|
| Arthur J. Gallagher & Co.<br>Insurance Brokers of California, Inc.<br>505 N. Brand Blvd., Suite 600<br>Glendale, CA 91203-3944<br>License No. 0726293 | NAME: S. Corissa Stuckey |
| | PHONE (A/C, No, Ext): (818) 539-1278    FAX (A/C, No): (818) 539-1578 |
| | ADDRESS: E-MAIL corissa_stuckey@ajg.com |
| | PRODUCER CUSTOMER ID #: |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED<br>Global Entertainment US Holdings, Inc.; Global Live, Inc. their officers, members, directors, representatives, employees, agents, subsidiaries and affiliates<br>1100 Glendon, Suite 2100<br>Los Angeles, CA 90024 | INSURER A : New York Marine and General Insurance Co. | 16608 |
| | INSURER B : | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |

**COVERAGES**          **CERTIFICATE NUMBER:**          **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | CLAIMS-MADE X OCCUR | X | | GL201500004535 | 07/01/2015 | 07/06/2015 | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | X POLICY PRO-JECT LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | SCHEDULED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | |
| | X HIRED AUTOS | | | | | | | $ |
| | X NON-OWNED AUTOS | | | | | | | |
| | X PHYSICAL DAMAGE | | | | | | PHYSICAL DAMAGE | |
| A | X UMBRELLA LIAB X OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB CLAIMS-MADE | X | | UM201500003145 | 07/01/2015 | 07/06/2015 | AGGREGATE | $ |
| | DEDUCTIBLE | | | | | | | $ |
| | X RETENTION | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N | | | | | | WC STATU-TORY LIMITS OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)**

Certificate Holder is included as an Additional Insured but only as respects to claims arising out of the negligence of the Named Insured, as is required by written contract as per blanket Additional Insured endorsements CG 20 11 (04-98), CG 20 23 (10-93) and/or CG 20 34(07-04) as respects the operations of the Named Insured. Regarding Concert performance by the Rolling Stones – Indiana Motor Speedway – 4790 West 16th Street, Indianapolis, Indiana – 07/01/2015 – 07/06/2015 (including load-in and load-out)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Indianapolis Motor Speedway, LLC.<br>4790 West 16th Street,<br>Indianapolis, Indiana 46222 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br>*[signature]* |

© 1988-2009 ACORD CORPORATION. All rights reserved.

ACORD 25 (2009/09)          The ACORD name and logo are registered marks of ACORD

EXHIBIT B

Filed: 4/21/2017 2:45:45 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) | |
| COUNTY OF MARION | ) | CAUSE NO. 49D10 17 01 CT 000595 |

PAMELA SHEPARD and ⟩
WILLIAM SHEPARD, ⟩
⟩
  Plaintiffs, ⟩   **JURY TRIAL DEMAND**
⟩
vs. ⟩
⟩
INDIANAPOLIS MOTOR ⟩
SPEEDWAY, LLC ⟩
⟩
  Defendant. ⟩

## COMPLAINT FOR DAMAGES

Come now the Plaintiffs, Pamela and William Shepard, and for their cause of action

against Defendant, Indianapolis Motor Speedway, LLC, state as follows:

  1. At all times herein mentioned Defendant maintains its corporate headquarters at

4790 West 16th Street, Indianapolis, Indiana.

  2. On or about July 4, 2015, Plaintiff Pamela Shepard, was a business invitee of the

Indianapolis Motor Speedway, LLC, Marion County, Indianapolis Indiana.

  3. At said time and place, Plaintiff Pamela Shepard fell after striking a concealed

hazard.

  4. Defendant failed to provide adequate illumination for business invitees exiting the

Rolling Stones concert at night.

  5. At said time and place Defendant, by and through its agents or employees, was

negligent in the maintenance and upkeep of its premises.

  6. Defendant had notice of the hazardous condition.

**EXHIBIT C**

7.     As a proximate result of Defendant's careless and negligent acts and/or omissions Plaintiff, Pamela Shepard, has suffered the following damages:

      a.     severe physical injuries;

      b.     pain and suffering;

      c.     emotional distress;

      d.     reasonable medical expenses; and

      e.     disfigurement.

8.     That as a direct and proximate result of Defendant, Indianapolis Motor Speedway, LLC's careless and negligent acts and/or omissions, Plaintiff William Shepard has suffered the following damages:

      a.     he has been deprived of the love, care, affection and services of his wife; and

      b.     he has had to provide for the nursing care and assistance of his wife.

WHEREFORE, Plaintiffs, by Counsel, demand judgment against the Defendant, Indianapolis Motor Speedway, LLC, in an amount which will fully and fairly compensate them for their injuries and damages, for their costs, for TRIAL BY JURY, and for all other just and proper relief in the premises.

Respectfully submitted,

Merry M. Fountain
Attorney No. 20125-49
THE FOUNTAIN LAW FIRM
10401 North Meridian, Suite 209
Indianapolis, Indiana 46290
(317) 423-4242
Attorney for Plaintiffs

**49D01-1704-PL-016106**
Marion Superior Court, Civil Division 1

Filed: 4/21/2017 2:16:16 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

## INDIANA COMMERCIAL COURT

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | )SS: | |
| COUNTY OF MARION | ) | CAUSE NO. |

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

      Plaintiff,

    v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

      Defendants.

### IMS'S COMPLAINT AGAINST GLOBAL LIVE INC. AND NEW YORK MARINE GENERAL INSURANCE COMPANY A/K/A/ PROSIGHT SPECIALTY INSURANCE GROUP, INC.

Plaintiff, Indianapolis Motor Speedway, LLC ("IMS"), by counsel, for its Complaint against Defendants, Global Live, Inc. ("Global Live") and New York Marine General Insurance Company a/k/a ProSight Specialty Insurance Group, Inc. ("ProSight") (collectively, "Defendants"), alleges and states:

### PARTIES, JURISDICTION AND VENUE

1.     IMS is a limited liability company organized under the laws of the State of Indiana, with its principal place of business in Marion County at 4790 W. 16th Street, Indianapolis, Indiana 46222.

2.     At all relevant times, Global Live was a domestic corporation with its principal place of business located at 1100 Glendon Avenue, 21st Floor, Los Angeles, California 90024.

3.     At all times relevant, ProSight was a domestic corporation with its principal place of business located at 9 Maiden Lane, 27th Floor, New York, New York 10038.

4.      This Court may exercise personal jurisdiction over Defendants because Defendants have transacted business in the State of Indiana, have entered into agreements covering performance of duties in the State of Indiana, and have caused harm in the State of Indiana.

5.      Venue is also proper in this Court because a substantial part of the events or omissions giving rise to the alleged claims at issue occurred in Marion County.

## FACTS

### Contracts between IMS and Defendants

6.      On or about April 6, 2015, IMS and Global Live entered into a valid and enforceable Special Event Agreement (the "Event Agreement").  A true and correct copy of the Event Agreement, with trade secret and commercially and financially sensitive information redacted, is attached hereto as **Exhibit A**.

7.      The Event Agreement allowed Global Live to host a concert featuring the musical group professionally known as "The Rolling Stones" at the Indianapolis Motor Speedway on or about July 4, 2015 (the "Event").

8.      The Event Agreement set forth obligations and responsibilities of the parties in connection with the Event.

9.      Global Live's contractual duties included, *inter alia*, organizing, hosting, and sponsoring multiple aspects of the Event, including but not limited to marketing expenses, ticketing costs, event production, labors costs, permits, and *event insurance*. *See* Ex. A, at 1-3.

10.      Specifically, Global Live was expressly obligated to provide coverage for *all* claims arising in connection with the Event. Ex. A, at 4, ¶ 9.

2

11.     The Event Agreement repeatedly refers to the concert attendees as Global Live's "invitees." *See* Ex. A, at 4, ¶ 11.

12.     Under the pertinent terms of the Event Agreement, Global Live was required to "obtain and maintain at its expense commercial general liability insurance *covering the Event...for full coverage of claims* to a limit of at least ███████ per occurrence and in the aggregate (the "Policy")." Ex. A, at 4, ¶ 9 (emphasis added).

13.     According to Paragraph 9(b) of the Event Agreement, "[t]he Policy specifically covers *the Event and* [Global Live's] obligations to IMS." Ex. A, at 4.

14.     At all relevant times, ProSight was Global Live's commercial general liability insurer.

15.     As required under the terms of the Event Agreement, IMS was added as an additional insured to Global Live's Commercial General Liability ("CGL") insurance policy by a Certificate of Liability Insurance issued by ProSight for CGL policy number GL 201500004535 with a period of July 1, 2015 to July 6, 2015 (the "Policy"). A true and correct copy of the Certificate of Liability Insurance, with trade secret and commercially and financially sensitive information redacted, is attached as **Exhibit B**.

16.     To date, IMS has never been provided with a copy of the complete CGL Policy.

17.     The Event Agreement further specifies that the coverage under the Policy must explicitly include IMS "as an additional insured under the Policy" and indicates that the coverage provided to IMS is to be "primary to any other coverage(s) available to IMS." Ex. A, at 4, ¶ 9(a), (c).

18.     The Event Agreement further specifies that "[t]he amount of insurance coverage required to be obtained by [Global Live] is minimum coverage, and it shall be [Global Live's]

3

obligation to purchase Insurance for full coverage of claims . . . *to protect itself and provide Indemnity to IMS Group based upon the activities to occur in connection with the Event.*" Ex. A, at 4, ¶ 9 (emphasis added).

19.    The Indemnity provision of the Event Agreement provides as follows:

> *To the fullest extent possible, it is the intention* of [Global Live] and IMS that the Indemnities set forth below and *the insurance coverage maintained by [Global Live] pursuant to Section 9 will provide liability protection to [Global Live] and IMS Group for claims arising out of [Global Live]'s and its invitees' presence at the Speedway during the Event*... [I]f and the extent the coverage maintained by [Global Live]...for IMS Group's benefit does not hold IMS Group harmless, *[Global Live] shall indemnify, defend and hold harmless IMS Group for third party claims and liability arising in connection therewith, including costs and reasonable attorneys' fees arising from (i) [Global Live's] or its Invitees' use of the Speedway* or (ii) the negligence or willful misconduct of [Global Live] or its Invitees. . .

Ex. A, at 5, ¶ 11(a) (emphasis added).

20.    To the extent there are any known or unknown claims arising out of the Event, ProSight is contractually obligated to provide a defense and indemnity to IMS, as its insured, under the Policy.

21.    Moreover, to the extent ProSight fails to provide the required defense and indemnity to IMS, Global Live must satisfy its duty to defend and indemnify IMS from any such claims.

### The Underlying Lawsuit

22.    On or about July 4, 2015, Global Live hosted the Event at Indianapolis Motor Speedway.

23.    Upon information and belief, non-parties, Pamela Shepard and William Shepard (collectively, the "Shepards") attended the Event.

4

24.     Upon information and belief, the Shepards tripped over a curb and fell while walking in the tunnel at the Indianapolis Motor Speedway, exiting the Event.

25.     Upon information and belief, Mr. Shepard sustained minor injuries to his leg.

26.     Upon information and belief, Mrs. Shepard sustained injuries to her left elbow and right shin, which required surgical intervention and other treatment.

27.     On or about December 28, 2016, the Shepards filed a Complaint for Damages against IMS (the "Shepards' Complaint") in an action now pending in Marion County, Indiana entitled *Pamela Shepard and William Shepard v. Indianapolis Motor Speedway, LLC*, Cause No. 49D10-1701-CT-000393 (the "Underlying Lawsuit"), alleging IMS is liable to the Shepards for damages arising from the allegations set forth in the Shepards' Complaint. A true and correct copy of the Shepards' Complaint is attached hereto as **Exhibit C**.

28.     The Shepards' Complaint alleges that the Shepards' claims arise out of the incident described in Paragraphs 24 through 26 above and further alleges that, by failing to provide adequate illumination for business invitees exiting the Event, IMS breached its duty of care to the Shepards (the "Claims").

29.     While IMS denies the aforementioned allegations and any liability on behalf of IMS, the Claims and the Underlying Lawsuit are squarely within the scope contemplated by the Event Agreement between IMS and Global Live and the Policy issued by ProSight (as evidenced by the Certificate of Liability Insurance issued to IMS by ProSight).

30.     Accordingly, because ProSight was obligated to provide insurance coverage protection for all "claims arising out of [Global Live]'s and its invitees' presence at the Speedway during the Event[,]"and due to IMS's status as ProSight's additional insured, ProSight

is required to defend the Claims and to indemnify IMS for any damages in connection with the claims in the Underlying Lawsuit. *See* Ex. A.

31.     Moreover, to the extent ProSight refuses to defend the Underlying Lawsuit and indemnify IMS in connection with the Underlying Lawsuit and/or the Claims, Global Live is contractually obligated to do so itself.

32.     IMS notified Global Live and ProSight of the Shepards' Claims within days of the Event and ProSight acknowledged the receipt of said information. However, to date, IMS has contacted Global Live and/or ProSight regarding the Claims multiple times over a period of more than 18 months, but has not received any substantive response.

33.     The Underlying Lawsuit has continued, and is still pending in Marion County, and IMS is forced to defend itself as to the Claims in Global Live's and ProSight's absence.

34.     Despite numerous demands to assume their responsibilities, Defendants have committed multiple breaches of the Event Agreement and/or the Policy by failing to defend, indemnify, and hold IMS harmless in connection with the Underlying Lawsuit, as they were expressly obligated to do under the terms of the Event Agreement and the Policy.

35.     IMS has fulfilled all of its duties, conditions, and prerequisites to coverage under the Event Agreement and the Policy with respect to the Claims and/or the Underlying Lawsuit.

36.     IMS is thus entitled to an award of all amounts and all expenses and costs incurred as a result of IMS's defense of the Underlying Lawsuit and payment for the same on an as-incurred basis going forward, plus interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit (including any amount paid by vendor or in settlement), and a declaration pursuant to Indiana Code § 34-14-1 *et seq.* that Defendants are obligated to provide

insurance coverage, indemnify, and hold IMS harmless in connection with the Underlying Lawsuit and/or the Claims.

## COUNT I

### BREACH OF CONTRACT AGAINST PROSIGHT

37.     IMS restates and incorporates the allegations of paragraphs 1 through 36 above as if fully set forth herein.

38.     IMS and ProSight are parties to the Policy, which is a valid and enforceable agreement.

39.     As part of the Policy, IMS is entitled to coverage, defense, and indemnity from ProSight for any claims that have been or may be asserted against IMS relating to the Event.

40.     Upon information and belief, no terms or exclusions in the Policy unambiguously exclude coverage for the Underlying Lawsuit and the Claims asserted in the Underlying Lawsuit are within the scope of coverage contemplated by the Event Agreement and the Policy.

41.     As such, ProSight has a duty to provide coverage, defend, and indemnify in the Underlying Lawsuit.

42.     Despite numerous demands to comply with the terms of the Policy, ProSight has failed to provide coverage, to defend the Underlying Lawsuit, or to acknowledge its duties to IMS for any and all claims related to the Event, including the Claims asserted in the Shepards' Complaint, which constitutes a material breach of ProSight's duties under the Policy.

43.     IMS has been, and will continue to be, damaged by ProSight's breach of the Policy.

44.     As a result, IMS is entitled to direct, compensatory, consequential, and incidental damages.

45.     Upon information and belief, all conditions precedent to coverage under the Policy have been satisfied or waived and no exclusion within the Policy precludes coverage for the Underlying Lawsuit and the Claims.

## COUNT II

### PROSIGHT'S BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

46.     IMS restates and incorporates the allegations of paragraphs 1 through 45 above as if fully set forth herein.

47.     IMS and ProSight are parties to the Policy, executed in favor of IMS (the insured under the Policy), which is a valid and enforceable policy of insurance.

48.     Indiana law imposes upon insurers, such as ProSight, an obligation of good faith and fair dealing with their insureds.

49.     ProSight's obligation of good faith and fair dealing includes an obligation to refrain from causing an unfounded delay in making payment; making an unfounded refusal to pay policy proceeds; exercising an unfair advantage to pressure an insured into settlement of a claim; and, deceiving the insured.

50.     Despite IMS's numerous attempts to obtain cooperation from ProSight with regard to ProSight's obligations under the Policy, ProSight has refused to acknowledge IMS's right to coverage, defense, and indemnity under the Policy, has failed to respond to IMS's tender of the claim, and failed to disclaim or accept coverage or to provide IMS a defense in connection with the Underlying Lawsuit.

51.     As set forth herein, IMS has been forced to defend itself against the Underlying Lawsuit because ProSight wrongfully failed to provide it a defense under the Policy.

8

52.     IMS has and continues to incur costs, expenses, and attorneys' fees due to ProSight's breaches of its duties to its policyholder, and failure to provide coverage and defend IMS in the Underlying Lawsuit.

53.     ProSight's breaches of its fiduciary duties to its policyholder are such that punitive damages, including treble damages, and attorneys' fees are appropriate.

## COUNT III

## DECLARATORY JUDGMENT AGAINST PROSIGHT

54.     IMS restates and incorporates the allegations of paragraphs 1 through 53 above as if fully set forth herein.

55.     The above allegations describe an actual and justiciable controversy between IMS and ProSight regarding their rights and obligations under the Policy.

56.     ProSight is obligated to provide IMS a defense and indemnification for claims to which the insurance applies, including the Claims asserted in the Underlying Lawsuit.

57.     Upon information and belief, no terms or exclusions in the Policy unambiguously exclude coverage for the Underlying Lawsuit. The Claims asserted in the Underlying Lawsuit are within the scope of coverage contemplated by the Policy.

58.     ProSight has wrongly failed to abide by its obligations to defend and indemnify IMS in the Underlying Lawsuit.

59.     The issues in this action are ripe for decision and relate to the construction and validity of the Policy, including the rights of IMS to be provided a defense in the Underlying Lawsuit.

60.     IMS therefore seeks a declaration that ProSight is obligated to provide insurance coverage for any and all claims raised in the Underlying Lawsuit.

61.     IMS further seeks a declaration that ProSight is obligated to otherwise fully defend, indemnify and hold IMS harmless for any and all claims made or otherwise made in the Underlying Lawsuit up to the applicable limits of the Policy.

## COUNT IV

## BREACH OF CONTRACT AGAINST GLOBAL LIVE

62.     IMS restates and incorporates the allegations of paragraphs 1 through 61 above as if fully set forth herein.

63.     IMS and Global Live are parties to the Event Agreement, which is a valid and enforceable agreement.

64.     Under the terms of the Event Agreement, Global Live was obligated to procure insurance for any claims relating to the Event, including the Claims raised in the Underlying Lawsuit. The coverage was to be primary to any other coverage(s) available to IMS.

65.     However, if Global Live's insurance fails to provide coverage, defense, and indemnification for claims arising from the Event, including the Claims raised in the Underlying Lawsuit, Global Live is obligated to do so itself.

66.     ProSight has failed to comply with its obligations and to provide defense and indemnification to IMS as its insured, as evidenced by the Certificate of Liability Insurance.

67.     Accordingly, under the Event Agreement, IMS is entitled to reimbursement of its defense and indemnity from Global Live for any claims that have been or may be asserted against IMS relating to the Event, including the Claims alleged in the Underlying Lawsuit, as well as all interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit (including any amount paid by vendor or in settlement).

10

68.     Despite numerous demands to comply with the terms of the Event Agreement, Global Live has breached the Event Agreement by failing to defend the Underlying Lawsuit and failing to hold IMS harmless for the Claims raised in the Underlying Lawsuit, which constitute material breaches of the Event Agreement.

69.     Under Indiana law, the disclaimer of a contractual duty is a breach of contract even if the time specified in the contract for performing the duty has not yet arrived.

70.     IMS has been, and will continue to be, damaged by Global Live's breach of the Event Agreement.

71.     As a result, IMS is entitled to direct, compensatory, consequential, and incidental damages, including its fees and costs in the Underlying Lawsuit and in this action.

72.     Upon information and belief, all conditions precedent to this action have been waived or have been fulfilled.

<strong><u>PRAYER FOR RELIEF</u></strong>

WHEREFORE, IMS respectfully requests that the Court grant it the following relief:

A.      A declaratory judgment that ProSight is obligated to provide coverage, including both defense and indemnity, in connection with the Underlying Lawsuit; Immediate payment for any and all amounts and all expenses and costs incurred as a result of IMS's defense of the Underlying Lawsuit and payment for the same on an as-incurred basis going forward, plus all interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit;

B.      Immediate payment for any and all amounts and all expenses and costs incurred as a result of IMS's defense of the Underlying Lawsuit and payment for the same on an as-incurred basis going forward, plus all interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit;

C.   A judgment in IMS's favor and against the Defendants in an amount that will fully compensate IMS for its damages and losses, including compensatory, consequential and incidental damages and prejudgment interest, including but not limited to an award of costs, fees (including attorneys' fees), treble damages, punitive damages, and litigation expenses in this action, with interest; and

D.   For all such other relief that is just and proper in the premises.

Respectfully submitted,

ICE MILLER LLP

/s/ Olga Voinarevich
Angela P. Krahulik, Atty. No. 23036-49
Olga Voinarevich, Atty. No. 32188-48

*Attorneys for Indianapolis Motor Speedway, LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

12

Filed: 4/21/2017 2:16:16 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

**49D01-1704-PL-016106**
Marion Superior Court, Civil Division 1



## SPECIAL EVENT AGREEMENT

THIS SPECIAL EVENT AGREEMENT ("Agreement") is effective as of April ___, 2015 (the "Effective Date"), by and between Indianapolis Motor Speedway, LLC, an Indiana limited liability company located at 4790 West 16th Street, Indianapolis, Indiana 46222 ("IMS"), and the licensee identified in Section 1. In consideration of the mutual covenants set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement agree as follows:

**1. Licensee Identification and Event Details.**

**Company Name:** Global Live, Inc. ("Licensee")          **Contact Person:** Charles Ciongoli

**Address:** 1100 Glendon Avenue, 21st Floor, Los Angeles, CA 90024          **Telephone Number:** 310-774-4700

**E-Mail:** chuck.ciongoli@thejsglobal.com

**Event Name: Rolling Stones Concert**

**Event Date(s) and Time:** July 4, 2015, 8:00 p.m. — [_____]. Actual performance time to be mutually agreed by the parties. Camping and RVs to be allowed on the Licensed Premises (as defined below) from July 3, 2015 through the end of the Event, subject to the consumer's execution of any standard license agreement normally required by IMS.

**Set Up Date(s) and Time:** Beginning Sunday, June 28, 2015 at 8:00 a.m.  Access to the Licensed Premises to be coordinated with IMS personnel.  Licensee shall use reasonable efforts to cause its invitees that will be conducting set-up, tear-down and other work in connection with the Event (to execute standard consent and liability releases normally required by IMS prior to such invitees being allowed access to the Licensed Premises.

**Tear Down Date(s) and Time:** To be completed by Monday, July 6, 2015 by 11:59 p.m.  Access to the Licensed Premises to be coordinated with IMS personnel.

**Description of Event:** Licensee will host a concert featuring the musical group professionally known as "The Rolling Stones" (the "Artist") at the Indianapolis Motor Speedway (the "Speedway") in and around the Plaza, Pavilion, Media Center, Moto GP garages, Old Timers Room, North Chalet, oval track and such other locations as shall be determined by IMS and Licensee (the "Licensed Premises"). The event will consist of the following activities and such other activities as shall be agreed between IMS and Licensee, all of which shall comply with the terms of this Agreement (collectively, the "Event"):

    (i) concert; and

    (ii) fireworks display.

**Included Services and Equipment to be provided by IMS:**

**a)** _Ambulance and Other Medical Services._ IMS will secure ambulatory services for the Event and in addition will make available use of its onsite hospital facility which IMS will cause to be staffed and operational at all times during the Event. IMS will provide the foregoing to Licensee's expense, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

**b)** _Facilities Staff._ IMS shall provide Facilities Staff members, who will be available for the entire Event.  The number of such Facilities Staff members and their functions (e.g., security, ushers, ticket takers) shall be mutually agreed prior to the Event and shall be reasonable for an event of this size and type, and shall include, but not be limited to, staff and equipment for cleaning/housekeeping services, police and fire services, camping operations and parking and traffic services.  IMS will provide the foregoing to Licensee's expense, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

351703.8
040515

**EXHIBIT A**

c) _Video Boards._ Subject to IMS's pre-approval of the advertiser, Licensee shall be permitted to display its and its affiliated companies' advertising and imagery, in accordance with Section 7(d) of the Agreement, on IMS's video boards.

d) _Public Announcements._ IMS shall make available, limited use of the public address system. Announcers and all content shall be provided by Licensee, subject to IMS pre-approval.

e) _Food and Beverage Trucks._ The parties agree that Levy Premium Foodservice Limited Partnership shall be the food and beverage service provider at the Event. IMS shall make arrangements for such service, including without limitation, the arrangement of food and beverage truck vendors desired by Licensee.

f) _Golf Carts._ IMS shall make available to Licensee IMS' golf carts for use by Licensee's production personnel at no additional charge. Subject to execution of IMS' Consent, Indemnification & Liability Release Agreement for Use of a Golf Cart, any and all other golf carts operated on the premises of the Speedway, whether Licensee-owned or rented, must be registered with IMS. All golf cart operators must be at least 18 years of age. If use of a golf cart is part of this Agreement, then the IMS Credential Office will provide Licensee an IMS golf cart voucher ("GC Voucher") upon receipt and approval of: this Agreement, Licensee's certificate of insurance, and a completed golf cart registration form. The GC Voucher must be redeemed at the IMS Safety Office for an IMS golf cart permit/sticker ("GC Permit"). The GC Permit must be placed on Licensee's golf cart. An authorized representative of Licensee must execute IMS' standard waiver and release of liability and indemnity agreement for golf carts and initial a copy of IMS' standard rules of operation for golf carts at the time of redeeming the GC Voucher for a GC Permit. All golf carts operated on the premises of the Speedway, regardless of who owns the golf cart(s), must be registered with IMS.

g) _Fireworks._ To be provided by IMS at Licensee's expense, in accordance with a budget to be mutually agreed in advance, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up. IMS acknowledges that in addition to the fireworks display to which the preceding sentence applies, Artist shall be entitled to include a fireworks display as part of Artist's concert, and that IMS will make available at no cost the services of a supervisory pyrotechnician in connection therewith.

h) _Fencing._ To be provided by IMS at Licensee' expense, in accordance with a budget to be mutually agreed in advance, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

i) _Light towers._ To be provided by IMS at Licensee's expense, in accordance with a budget to be mutually agreed in advance, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

Additional Services and Equipment: If at Licensee's request IMS facilitates on behalf of Licensee a third party rental of equipment or engagement of third party services, Licensee will be responsible for the actual invoice price of such rental or services upon presentation of the applicable invoice with respect thereto at settlement. Notwithstanding anything contained in this Agreement to the contrary, subject to coordination with IMS personnel, IMS owned or leased equipment will be made available for Licensee's use in connection with the Event at no charge.

Additional responsibilities of Licensee:

a) At no cost to IMS, Licensee agrees to provide IMS with a 60'X 60' display area in the Plaza.

b) All labor costs not otherwise provided for above, including, without limitation, the costs of stage hands, rigging personnel, loaders and unloaders.

c) Ticketing costs including credit card fees.

d) Event Production, including, without limitation, staging, platforms, risers, and barricades, including the equipment and costs therefor except as otherwise provided in this Agreement.

e) Event insurance as set forth below.

f) Permits, if applicable, with respect to the Event.

g) Advertising and marketing expenses with respect to the Event.

2

361793.8
040615

Payment. The License Fee and Other Fees are due and payable upon settlement of the Event, which shall take place within five (5) business days following the completion of tear down.

2.     **License.** IMS grants to Licensee a limited, non-transferable and non-exclusive license (**"License"**) to use designated areas during the Event and the set up and tear down periods for the Event as set forth above in accordance for customary standards for comparable events in the United States. This Agreement does not create nor convey any legal title, leasehold or other legal, equitable or beneficial property interest in or to the Speedway.



4.     **Services and Equipment.** IMS shall provide or arrange for all included Services and Equipment as set forth above, and any Additional Services and Equipment requested by Licensee and agreed to by IMS. Third party vendors and service providers with respect to Additional Services and Equipment requested by Licensee shall be subject to Licensee's and IMS' mutual approval, not to be unreasonably withheld, and any such services and equipment must be of "first class" quality.

5.     **Open and Close Times and Tear Down.** Unless specified in Section 1, open and close times and tear down times shall be mutually determined by IMS and Licensee.

6.     **Laps.** In the event that persons are participating in hot laps or track laps that are approved by IMS they must be at least eighteen (18) years old; possess valid, government-issued photo identification; and execute all IMS required consent and liability releases.

7.     **Commercial Transactions.**

    **a.**     **Generally.** Unless otherwise set forth in Section 1 or this Section 7, IMS prohibits (i) all commercial transactions at the Speedway, including but not limited to the sale of food, alcoholic and nonalcoholic beverages, and merchandise and (ii) all distribution of products (including donated products), samples and/or premiums (non-saleable articles bearing trademarks, logos or advertising used to promote or publicize any product or service). Licensee shall ensure that its invitees (as defined in Section 11), are aware of and comply with the terms and conditions regarding commercial transactions in this Agreement.

    **b.**     **Food and Beverages.** IMS shall arrange for Levy to provide food and beverage concessions specified in Section 1 at IMS designated concessions and food and beverage truck areas, and all hospitality food and beverages shall be provided by Levy or IMS-approved caterers at Licensee's additional cost.

    **c.**     **Merchandise.** Licensee and its contractors may sell Event merchandise in IMS designated areas so long as the Event merchandise does not display any IMS trademark. Notwithstanding the foregoing, Licensee and its contractors shall be entitled to offer for sale t-shirts and other merchandise displaying designs that identify the Event by the name of the venue. Unless set forth in Section 1, no other sale of merchandise by Licensee or its contractors is permitted. Licensee represents, warrants and covenants that, prior to the Event and continuing throughout the Event, Licensee or its contractors shall secure and maintain a proper license from any and all third parties whose trademarks, logos, brands and/or other intellectual property appear on the merchandise/services being offered/displayed at the Speedway. Licensee agrees to permit IMS (and its representatives) access during normal business hours to Licensee's records pertaining to such licenses for the purpose of verifying the existence of such licenses. In the event Licensee cannot demonstrate that it or its contractors hold a proper license for any merchandise/services being offered/displayed at the Speedway, Licensee agrees that it shall cooperate with IMS to promptly remove such merchandise/services from the Speedway.

3

361793.8
040615

d.   Advertising and Signs. Licensee and Artist shall have the right to solicit third-party sponsors to be sponsors for the Event and to for and/or in connection with the Event, including any sponsorship advertising of or during the Event.  Licensee shall provide IMS in advance a list of potential sponsors and advertisers, and IMS shall have the right, exercisable by written notice within two (2) days after Licensee's submission of such list to IMS, to reject any sponsor or advertiser which would cause IMS to be in breach of its existing third party agreements.  All sponsorship advertising and/or promotional displays and signage at the Speedway of any sponsors and advertisers rejected by IMS pursuant to the preceding sentence are strictly prohibited.  IMS hereby pre-approves the use of Artist's logos in advertising for the Event and otherwise at the Event.

e.   Sweepstakes. Licensee shall not conduct a sweepstakes, raffle or similar activity in connection with the Event without the pre-approval of IMS, Licensee must comply with all laws and obtain all permits with respect to such activities and must provide IMS evidence thereof prior to the Event.

f.   Consumer Information. If Licensee collects any information (e.g., name, email address, mail address, mobile number, etc.) in connection with any activity under this Agreement (e.g., via sweepstakes entry forms, if a sweepstakes is pre-approved by IMS, Event registration forms, etc.), provided that to do so will not result in Licensee's breaching any of its third party obligations, Licensee will share such information (collectively "Consumer Information") with IMS within thirty (30) days after collection. Licensee shall use reasonable efforts to ensure that IMS has all necessary right and power to use the Consumer Information in connection with its business. Without limiting any of its obligations under the foregoing, Licensee represents and warrants that: (a) IMS may utilize the Consumer Information in IMS's direct sales, marketing, communication or other outreach activities; (b) Licensee will provide express notice to each person of its intent to share the Consumer Information with IMS and that, upon receipt by IMS, the Consumer Information will be used and maintained by IMS pursuant to its privacy policy at (www.indianapolismotorspeedway.com; (c) in connection with any Consumer Information that is an email address or a mobile number, Licensee will seek to obtain and maintain the applicable consumer's express opt-in consent for IMS's use of the same or provide written notice to IMS if opt-in consent was not obtained; and (d) notwithstanding the foregoing or any of the provision in this Agreement to the contrary, Licensee will not provide IMS any Consumer Information for a child under the age of 13 years without IMS's express prior written approval.

8.   Photography/Videography. Licensee and Artist may take still photos and video recordings of the Event for Licensee's and/or Artist's promotional use as well as internal historical purposes. All other photography and videography arrangements must be pre-approved by IMS, such approval not to be unreasonably withheld, and shall be subject to execution of a Location Release. Other than pursuant to a Location Release, the commercial use or re-sale of any photographs or film footage taken on the grounds of the Speedway is prohibited, provided, however, such restriction shall not apply with respect to behind-the-scenes photos or video recordings. No broadcasts, photographs or videotapes shall imply a relationship between IMS and Licensee other than that permitted under this Agreement.

9.   Insurance, Prior to the Event, Licensee shall obtain and maintain at its expense commercial general liability insurance covering the Event, including without limitation products and completed operations liability, and a contractual liability endorsement (and covering X,C and U hazards, where applicable; independent contractors; and use of pyrotechnics), for full coverage of claims to a limit of ████████████ per occurrence and in the aggregate (the "Policy"); automobile liability insurance on all owned, non-owned and hired autos and equipment operated or otherwise used or displayed during the Event with coverage limits ████████████ per occurrence; and workers' compensation in accordance with statutory requirements, including employers liability insurance with a limit of ████████████ per claim (but in no event in limits less than those required by law and/or as set forth in the artists' riders, if any); and Event cancellation or postponement coverage  in an amount sufficient to cover ticket refunds. Licensee shall deliver a certificate evidencing Licensee's compliance as to insurance coverage to IMS upon execution of this Agreement and the Event will be canceled, and no fees or deposits paid prior to the cancellation will be refunded. The certificate of insurance must demonstrate the following:

(a)   IMS Group (as defined below) is a certificate holder and is included as an additional insured under the Policy;
(b)   The Policy specifically covers the Event and Licensee's obligations to IMS; and
(c)   The Policy provides coverage primary to any other coverage(s) available to IMS Group.

The amount of insurance coverage required to be obtained by Licensee is minimum coverage, and it shall be Licensee's obligation to purchase insurance for full coverage of claims as it deems advisable in its business judgment to protect itself and provide indemnity to IMS Group based upon the activities to occur in connection with the Event. In addition, Licensee will require all subcontractors performing work in connection with the Event to include IMS Group as Additional Insureds for comprehensive general liability insurance carried by such subcontractors.

4

To support its indemnity obligations as set forth in Section 11(b), IMS shall maintain commercial general liability insurance ▮▮▮▮▮▮ per occurrence and in the aggregate. In addition, IMS shall have Licensee named as an additional insured for any claims asserted against Licensee that would, if successful, be covered by IMS's indemnity obligations as set forth in Section 11(b).

10.    **Representations and Warranties.**

a. Licensee represents and warrants that (i) Licensee has the right to enter into and fully perform every provision of this Agreement; and (ii) the person executing this Agreement on Licensee's behalf has the authority to do so.

b. IMS represents and warrants that (i) IMS owns the Licensed Premises and that IMS has the right to enter into and fully perform every provision of this Agreement; and (ii) the person executing this Agreement on IMS' behalf has the authority to do so.

11.    **Indemnification.**

a. Licensee and Licensee's agents, representatives, employees, contractors and invitees and spectators ("Invitees") shall be provided with access to the Speedway (including both public areas and restricted areas of the Speedway) conditioned upon Licensee's compliance with this Section 11a. To the fullest extent possible, it is the intention of Licensee and IMS that the indemnities set forth below and the insurance coverage maintained by Licensee pursuant to Section 9 will provide liability protection to Licensee and IMS Group for claims arising out of Licensee's and its Invitees' presence at the Speedway during the Event. To the extent that Licensee's insurance holds IMS Group harmless, IMS Group does not require indemnity from Licensee. However, if and to the extent the coverage maintained by Licensee for the Licensee and IMS Group's benefit does not hold IMS Group harmless, Licensee shall indemnify, defend and hold harmless IMS Group for third party claims and liability arising in connection therewith, including costs and reasonable outside attorneys' fees, arising from (i) Licensee's or its Invitees' use of the Speedway or (ii) the negligence or willful misconduct of Licensee or its Invitees or (iii) Licensee's breach of this Agreement and/or its representations and warranties hereunder, provided the applicable claim is reduced to a final adverse judgment or settled with Licensee's prior written consent, not to be unreasonably withheld, provided, however, the foregoing indemnity shall not apply with respect to claims resulting from the breach of IMS' representations, warranties or covenants under this Agreement or from the sole negligence or willful misconduct of the IMS Group or any member thereof. This Section shall survive expiration or termination of this Agreement. "IMS Group" means IMS, Indianapolis Motor Speedway Foundation, Inc., all relevant race sanctioning bodies, and the successors, assigns, officers, directors, owners, members, agents, affiliates and employees of each of them.

b. IMS shall indemnify, defend and hold harmless Licensee and Artist and the respective successors, assigns, officers, directors, owners, members, agents, affiliates and employees thereof for third party claims and liability arising in connection therewith, including costs and reasonable outside attorneys' fees, arising from (i) the failure of IMS' Equipment, including, without limitation, any software, provided by IMS as set forth under "Included Services and Equipment to be provided by IMS" in Section 1 above in connection with the performance of IMS' obligations hereunder, or (ii) the sole negligence or willful misconduct of IMS or its employees or independent contractors engaged by IMS or any affiliated or related entity, or (iii) IMS' breach of this Agreement and/or its representations and warranties hereunder, provided the applicable claim is reduced to a final adverse judgment or settled with IMS' prior written consent, not to be unreasonably withheld. This Section shall survive expiration or termination of this Agreement.

12.    **Cancellation and Refund Policy.** If Licensee cancels the Event in advance of the dates set forth in Section 1 other than as a result of force majeure as set forth in Section 13 or IMS' negligence or fault, IMS shall be entitled to reimbursement of its actual out-of-pocket non-overhead expenses incurred specifically in connection with the Event prior to such cancellation as provided for in this Agreement. If for any reason the Licensed Premises becomes unavailable in advance of the Event, IMS will promptly notify Licensee and use its best efforts to mitigate any adverse effect on Licensee or on the Event. If IMS cancels the Event other than as a result of force majeure as set forth in Section 13, in addition to any other rights or remedies that Licensee may have at law or in equity, IMS shall promptly refund to Licensee 100% of the License Fee and any and all fees and deposits paid by Licensee to IMS prior to the cancellation. Licensee assumes the risk of cancellation of all or part of the Event or any portion thereof during the Event for any reason not within IMS' control including without limitation inclement weather.

13.    **Force Majeure.** The parties' obligation to perform hereunder is subject to acts of God, war, government regulations, disasters, strikes, civil disorder, curtailment of transportation facilities, or other emergencies provided the foregoing are beyond the control of the parties, making it inadvisable, illegal or impossible to hold the Event.

361793.8
040615

14.   <u>Maintenance of the Licensed Premises.</u>

<u>a.</u>   Licensee shall maintain order at the Speedway and shall not conduct, and shall use its reasonable efforts not to permit, any activities at the Speedway which (i) are prohibited by any applicable law, regulation, rule or ordinance; (ii) endanger the health or safety of any persons or property; or (iii) violate any rules, regulations, policies, practices or procedures of IMS as amended from time to time by IMS in its sole discretion provided Licensee has previously been notified thereof in writing.

<u>b.</u>   Licensee shall use its good faith reasonable efforts not to commit waste at the Speedway, damage Speedway property or maintain or permit to be maintained a nuisance therein. Licensee shall not apply any substance to any racing or other surface without the consent of IMS. Licensee shall present all licensed space in a tasteful manner appropriate for invitees of all ages. Following the Event, Licensee shall remove any and all trash and debris, clean all surfaces, and otherwise return the Licensed Premises to the same condition, normal wear and tear excepted, as the Licensed Premises was received by Licensee from IMS. Licensee shall be responsible for any and all property damage and all clean-up costs to the Licensed Premises during or as a result of the Event. All debris shall be placed in containers furnished by IMS.  No firearms or other weapons shall be brought onto the grounds of the Speedway.

<u>c.</u>   The integrity of any paved surface of the Licensed Premises shall be maintained at all times, and Licensee shall repair any damage to the surface at Licensee's sole cost. Penetration of the parking surface with tent stakes or similar implements is prohibited.

<u>d.</u>   All displays and trailers are subject to IMS approval, not to be unreasonably withheld. IMS shall be deemed to have approved any display provided such display would not cause IMS to be in breach of any of its third party obligations or otherwise expose IMS to legal liability or material reputational harm.  The inclusion of any Artist logo or other mark on or in connection with any displays or trailers shall not be deemed to expose IMS to reputational harm.   All displays and trailers shall be free standing. Storage on top of any trailer located on the Licensed Premises is prohibited. No one is permitted on top of a trailer located on the Licensed Premises. Licensee shall be solely responsible for maintaining the Licensed Premises in a clean and tasteful manner during the License Period, consistent with the standards of taste for similar concerts in the United States.

<u>e.</u>   All stages and other temporary structures including stage equipment, elevated platforms, mobile/portable bleachers and fences must comply with all applicable laws and regulations and may be subject to prior inspection and approval by a governmental authority and IMS, provided IMS shall not unreasonably withhold its approval and shall be deemed to have approved all stages and other temporary structures that are of a type and quality consistent with that customarily used for similar concerts in the United States.

<u>f.</u>   All merchandise to be sold in the Licensed Space must be displayed, stored and sold from a mobile trailer unit or professional portable tenting with proper display area and self-contained storage.

<u>g.</u>   The boundaries of any display space identified in Section 1 may not be exceeded and shall contain completely all elements of the display, including but not limited to restroom facilities, generators, light towers, storage units, office trailers, tractor/trailers, rubbish containers, personal vehicles, hoisting equipment, rigging, stakes, entrance structures, guy wires. If the dimensions and location of the display space have been specified to in Section 1 or subsequent to execution of this Agreement, they shall not be changed during installation. Motor vehicles not a part of a display are only permitted in parking lots open to the public.

<u>h.</u>   All portions of the Event, including viewing areas, exhibits, kiosks, interactive displays, and stages that are open and available to invitees and shall be accessible to individuals with disabilities, and shall comply with the Americans with Disabilities Act (ADA).

<u>i.</u>   Upon consent from IMS, not to be unreasonably withheld, Licensee may "plug in" customary power and/or telecommunications cords into currently existing standard household power outlets (120 volt convenience receptacles) or currently existing standard telephone jacks. Any equipment, device or system requiring connections to other services must be connected and disconnected by IMS.

<u>j.</u>   Operation of the Event shall immediately cease if so instructed by IMS or public safety officials acting in good faith due to severe weather materially threatening the attendees of the Event or otherwise based on legitimate concern for public safety. Licensee shall be prepared to lower, dismantle, and/or secure as required any parts of the display or vendor area that are unstable, susceptible to damage or otherwise pose an elevated hazard during high winds, lightning, and heavy rain. Licensee shall insure that display is fabricated and installed

6

361793.8
040615

In such a manner as to be quickly disassembled, lowered and/or secured as required to insure the safety of the general public during severe weather.

**k.** IMS safety personnel will be onsite during the Event to provide security for the Event and its attendees. If Licensee requires additional security for the Event, IMS will assist in making these arrangements through an IMS-approved security firm at Licensee's additional expense.

16. **Miscellaneous.**

**a.** Assignment. Licensee may not assign or transfer any of its rights or obligations under this Agreement without the prior written consent of IMS.

**b.** Entire Agreement. This Agreement constitutes the entire understanding between the parties to this Agreement with respect to the subject matter of this Agreement and shall be deemed to supersede all prior agreements, whether written or oral, and the terms and provisions of any such prior agreements shall be deemed to have been merged into this Agreement. Notwithstanding the foregoing, IMS and Licensee hereby acknowledge and agree that they intend to enter into, and are currently negotiating, an overall exclusive agreement between each other pursuant to which Licensee would be the exclusive promoter of music-related events at the Licensed Premises for a term of four (4) years from the date of the Event, with an exclusive six (6) month first negotiation right to extend such term (the "Overall Agreement"). At such time, if ever, that such Overall Agreement is entered into, this Agreement shall be deemed to be superseded thereby (except as may be expressly provided otherwise in the Overall Agreement), and the Event shall be deemed to have been undertaken pursuant to the terms and conditions of the Overall Agreement.

**c.** Modification and Waiver. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by both parties. No waiver of any breach or violation of any of the provisions of this Agreement shall constitute or shall be deemed to constitute a waiver of any other breach or violation of any provision of this Agreement, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

**d.** Public Statements and Press Releases. The Licensee agrees to obtain IMS's pre-approval, not to be unreasonably withheld or delayed, and to coordinate the content and timing of all public statements and press releases concerning the relationship governed by this Agreement.

**e.** Notice. All notices required to be given under this Agreement or which the parties may desire to give under this Agreement shall be in writing and (a) hand delivered personally; or (b) delivered by facsimile transmission if receipt is confirmed to the party whom notice is to be given; or (c) addressed and sent by certified or registered mail, postage prepaid and return receipt requested to the parties. Notices to Licensee shall be directed to the addresses provided on Page 1, to the attention of the Head of Business Affairs and to the Chief Financial Officer. Copies of all notices to Licensee shall be simultaneously sent to *Grubman Shire & Meiselas, P.C., 152 West 57th Street, New York, NY 10019, Attention: Donald R. Friedman, Esq., facsimile 212-554-0444.* Notices to IMS shall be directed to *President, 4790 W. 16th Street, Indianapolis, IN 46222, facsimile 317-492-6482, with a copy to General Counsel, 4790 W. 16th Street, Indianapolis, IN 46222, facsimile 317-492-6490.* If either party wishes to alter the address to which notices to it are sent, it may do so by providing the new address, in writing, to the other party by one of the methods set forth in this Section 16(f). All notices addressed in accordance with this Agreement shall be effective when received if delivered by mail or, if personally delivered, the date on which delivery is made.

**f.** Remedies. All rights and remedies provided in this Agreement shall be cumulative, and shall not be exclusive of one another or of any remedies available at law or in equity. Under no circumstances shall either party be liable for consequential, special or incidental damages.

**g.** Trademarks. Except as set forth elsewhere in the Agreement, this Agreement does not grant Licensee any right or license to use any trademarks, service marks, copyrights or other intellectual property rights of IMS other than to identify the location of the Event, and any such use by Licensee is strictly prohibited. If IMS grants Licensee a license in Section 1 or elsewhere in the Agreement, the Licensee shall have a royalty-free, non-exclusive, limited, non-transferable license to use the specified Event Mark or IMS marks ("IMS Marks") in the United States for specified purpose requirements set forth in Section 1 or elsewhere in this Agreement. All artwork, design and premiums using the IMS Marks are subject to any applicable approval rights of IMS in accordance with the terms of this Agreement in each instance. The manufacturer of any premium bearing an IMS Mark must be an officially-approved licensee of IMS. Requests for the IMS Marks and approval shall be

361793.8
040615

submitted to Manager of Licensing, Indianapolis Motor Speedway, 4790 West 16th Street, Indianapolis, Indiana 46222, (317) 492-6792.

h.   Taxes.  IMS shall notify Licensee on a timely basis of the correct rates for calculating Licensee's taxes to be assessed on all amounts received by Licensee in respect of ticket sales for the Event to enable Licensee to prepare and timely file any and all tax returns or reports required to be filed in respect of any taxes owed by Licensee in connection with ticket sales for the Event.

i.   Compliance with Law.  Licensee shall obtain all permits and comply with all laws applicable to its activities hereunder.

IN WITNESS WHEREOF, each party acknowledges that a duly authorized representative of such party has executed this Agreement as of the date set forth below, and acknowledges that such party has read, understands and agrees to the terms and conditions of this Agreement.

INDIANAPOLIS MOTOR SPEEDWAY, LLC

By: _____

Printed: J. Douglas Boles

Title: President

Date: 4/6/15

LICENSEE: GLOBAL LIVE, INC.

By: _____

Printed: Charles C. Ciongoli

Title: Executive VP & CFO

8

# INDIANA COMMERCIAL COURT

| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
|---|---|---|
| | )SS: | |
| COUNTY OF MARION | ) | CAUSE NO. |

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

Plaintiff,

v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

Defendants.

## NOTICE OF EXCLUSION OF CONFIDENTIAL INFORMATION THAT IS NOT NECESSARY TO THE DISPOSITION OF THE CASE

Contemporaneous with the filing of this notice, Plaintiff has omitted confidential information in accordance with Administrative Rule 9(G). Pursuant to Administrative Rule 9(G)(5)(b)(ii)(a), Plaintiff provides this notice that the omitted confidential information "is not necessary to the disposition of the case" and, therefore, "the excluded Court Record need not be filed or tendered in any form and only the Public Access version is required." Admin. Rule 9(G)(5)(b)(i).

| Document to Be Excluded from Public Record | Administrative Rule 9(G) grounds upon which exclusion is authorized |
|---|---|
| Pages 9 and 10, titled "Schedule A," to Exhibit A of the Complaint | Administrative Rule 9(G)(2)(b); Ind. Code §§ 24-2-3-2, 24-2-3-6 |

Respectfully submitted,

ICE MILLER LLP


/s/ Olga Voinarevich
Angela P. Krahulik, Atty. No. 23036-49
Olga Voinarevich, Atty. No. 32188-48

*Attorneys for Plaintiff, Indianapolis Motor
Speedway, LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

2

**49D01-1704-PL-016106**
Marion Superior Court, Civil Division 1

Filed: 4/21/2017 2:16:16 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

**ACORD** | # CERTIFICATE OF LIABILITY INSURANCE | DATE (MM/DD/YYYY)

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT |
|---|---|
| Arthur J. Gallagher & Co. | NAME: S. Corissa Sluckey |
| Insurance Brokers of California, Inc. | PHONE (A/C, No, Ext): (818) 539-1378   FAX (A/C, No): (818) 539-1678 |
| 505 N. Brand Blvd., Suite 600 | ADDRESS: |
| Glendale, CA 91203-3944 | E-MAIL corissa_sluckey@ajg.com |
| License No. 0726293 | PRODUCER CUSTOMER ID #: |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A: New York Marine and General Insurance Co. | 16608 |
| Global Entertainment US Holdings, Inc., Global Live, Inc. their officers, | INSURER B: | |
| members, directors, representatives, employees, agents, subsidiaries and | INSURER C: | |
| affiliates | INSURER D: | |
| 1100 Glendon, Suite 2100 | INSURER E: | |
| Los Angeles, CA 90024 | INSURER F: | |

**COVERAGES**   CERTIFICATE NUMBER:   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | CLAIMS-MADE X OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | X | | GL201500004535 | 07/01/2015 | 07/08/2015 | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | X POLICY PRO-JECT LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | SCHEDULED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | X HIRED AUTOS | | | | | | | |
| | X NON-OWNED AUTOS | | | | | | | $ |
| | X PHYSICAL DAMAGE | | | | | | PHYSICAL DAMAGE | $ |
| A | X UMBRELLA LIAB X OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | | X | | UM201500003145 | 07/01/2015 | 07/08/2015 | | $ |
| | DEDUCTIBLE | | | | | | | |
| | X RETENTION | | | | | | | |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N | | | | | | WC STATU-TORY LIMITS OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Certificate Holder is included as an Additional Insured but only as respects to claims arising out of the negligence of the Named Insured, as is required by written contract as per blanket Additional Insured endorsements CG 20 11 (01-96), CG 20 23 (10-03) and/or CG 20 34(07-04) as respects the operations of the Named Insured. Regarding Concert performance by the Rolling Stones -- Indiana Motor Speedway -- 4790 West 16th Street, Indianapolis, Indiana - 07/01/2015 - 07/08/2015 (including load-in and load-out)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Indianapolis Motor Speedway, LLC. | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| 4700 West 16th Street, | |
| Indianapolis, Indiana 46222 | AUTHORIZED REPRESENTATIVE |
| | *[signature]* |

© 1988-2009 ACORD CORPORATION. All rights reserved.
ACORD 25 (2009/09)   The ACORD name and logo are registered marks of ACORD

**EXHIBIT B**

**49D01-1704-PL-016106**
Marion Superior Court, Civil Division 1

Filed: 4/21/2017 2:16:16 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

received

| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) | |
| COUNTY OF MARION | ) | CAUSE NO. |

49D10 17 01 CT 000393

| PAMELA SHEPARD and | ) |
| WILLIAM SHEPARD, | ) |
| | ) |
| Plaintiffs, | ) | **JURY TRIAL DEMAND** |
| | ) |
| vs. | ) |
| | ) |
| INDIANAPOLIS MOTOR | ) |
| SPEEDWAY, LLC | ) |
| | ) |
| Defendant. | ) |

FILED

DEC 28 2016

CLERK OF THE MARION SUPERIOR COURT

### COMPLAINT FOR DAMAGES

Come now the Plaintiffs, Pamela and William Shepard, and for their cause of action

against Defendant, Indianapolis Motor Speedway, LLC, state as follows:

1.  At all times herein mentioned Defendant maintains its corporate headquarters at

4790 West 16th Street, Indianapolis, Indiana.

2.  On or about July 4, 2015, Plaintiff Pamela Shepard, was a business invitee of the

Indianapolis Motor Speedway, LLC, Marion County, Indianapolis Indiana.

3.  At said time and place, Plaintiff Pamela Shepard fell after striking a concealed

hazard.

4.  Defendant failed to provide adequate illumination for business invitees exiting the

Rolling Stones concert at night.

5.  At said time and place Defendant, by and through its agents or employees, was

negligent in the maintenance and upkeep of its premises.

6.  Defendant had notice of the hazardous condition.

**EXHIBIT C**

7.   As a proximate result of Defendant's careless and negligent acts and/or omissions Plaintiff, Pamela Shepard, has suffered the following damages:

    a.   severe physical injuries;

    b.   pain and suffering;

    c.   emotional distress;

    d.   reasonable medical expenses; and

    e.   disfigurement.

8.   That as a direct and proximate result of Defendant, Indianapolis Motor Speedway, LLC's careless and negligent acts and/or omissions, Plaintiff William Shepard has suffered the following damages:

    a.   he has been deprived of the love, care, affection and services of his wife; and

    b.   he has had to provide for the nursing care and assistance of his wife.

WHEREFORE, Plaintiffs, by Counsel, demand judgment against the Defendant, Indianapolis Motor Speedway, LLC, in an amount which will fully and fairly compensate them for their injuries and damages, for their costs, for TRIAL BY JURY, and for all other just and proper relief in the premises.

Respectfully submitted,

Merry M. Fountain
Attorney No. 20125-49
THE FOUNTAIN LAW FIRM
10401 North Meridian, Suite 209
Indianapolis, Indiana 46290
(317) 423-4242
Attorney for Plaintiffs

2



**Ice**Miller

LEGAL COUNSEL

One American Square | Suite 2900 | Indianapolis, IN 46282-0200

7016 1970 0000 4821 8846



U.S. POSTAGE ≫ PITNEY BOWES

ZIP 46282 $ 010.03⁰
02 1W
0001397195 APR. 21. 2017.

Marine General Insurance Company a/k/a ProSight
Specialty Insurance Group, Inc.
c/o Corporation Service Company, its Registered
Agent
80 State Street
Albany, NY 12207

**LMS Packing Slip**

# Package ID: 2705593

| | |
|---|---|
| **Tracking Number:** | 786378834240 |
| **Package Recipient:** | Alan Walter |
| **Recipient Company:** | Global Entertainment |
| **Recipient Address:** | 1100 Glendon Avenue Floor 21st Los Angeles CA 90024 USA |
| **Phone Number:** | 888-690-2882 |

**Package Contents:**

| Transmittal Number | Case Number | Title of Action |
|---|---|---|
| 16562868 | 49D01-1704-PL-016106 | Indianapolis Motor Speedway, LLC vs. Global Live, Inc. |



**CSC.**

CORPORATION SERVICE COMPANY®

# Notice of Service of Process

null / ALL<br>
**Transmittal Number: 16562868**<br>
Date Processed: 04/27/2017

| | |
|---|---|
| **Primary Contact:** | Alan Walter<br>Global Entertainment<br>1100 Glendon Avenue<br>Floor 21st<br>Los Angeles, CA 90024 |

| | |
|---|---|
| **Entity:** | Global Live, Inc.<br>Entity ID Number 3327881 |
| **Entity Served:** | Global Live, Inc. |
| **Title of Action:** | Indianapolis Motor Speedway, LLC vs. Global Live, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Marion County Superior Court, Indiana |
| **Case/Reference No:** | 49D01-1704-PL-016106 |
| **Jurisdiction Served:** | Delaware |
| **Date Served on CSC:** | 04/26/2017 |
| **Answer or Appearance Due:** | 23 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Olga Voinarevich<br>317-236-2100 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscglobal.com

Filed: 4/21/2017 2:52:55 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

# SUMMONS

In the Marion Superior Court, Room No. ___

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

      Plaintiff,

  v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

      Defendants.

Cause No. 49D01-1704-PL-016106

To Defendant: (Name) __Global Live, Inc.__
                  c/o Corporation Service Company, its Registered Agent
      (Address) __2711 Centerville Rd., Suite 400__

                  __Wilmington, DE 19808__

You are hereby notified that you have been sued by the person named as plaintiff and in the Court indicated above.

The nature of the suit against you is stated in the complaint, which is attached to this Summons. It also states the relief sought or the demand made against you by the plaintiff.

An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail); or a judgment by default may be rendered against you for the relief demanded by the plaintiff.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated _____4/21/2017_____      _____Myla A. Eldridge_____ (Seal)
                                     CLERK, MARION SUPERIOR COURT

(The following manner of service of summons is hereby designated.)

  X    Registered or certified mail.

       Service at place of employment, to-wit:

       Service on individual – (Personal or copy) at above address.

  X    Service on agent. (Specify)   Corporation Service Company, its Registered Agent

       Other service. (Specify)

MARION COUNTY COURTS

SEAL

INDIANA

/s/ Olga Voinarevich
Angela P. Krahulik, Atty. No. 23036-49
Olga Voinarevich, Atty. No. 32188-48
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100
Attorneys for Plaintiff

## SHERIFF'S RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served this summons on the _____ day of _____ 20___:

(1) By delivering a copy of the Summons and a copy of the complaint to the defendant, _____ .

(2) By leaving a copy of the Summons and a copy of the complaint at _____

which is the dwelling place or usual place of abode of _____

and by mailing a copy of said summons to said defendant at the above address.

(3) Other Service or Remarks: _____

_____

_____         _____
SHERIFF'S COST                                      SHERIFF

By: _____
DEPUTY

## CLERK'S CERTIFICATE OF MAILING

I hereby certify that on the _____ day of _____, 20____, I mailed a copy of this Summons and a copy of the complaint to the defendant, _____ , by _____ mail, requesting a return receipt, at the address furnished by the plaintiff.

_____
CLERK, MARION SUPERIOR COURT

Dated_____                By: _____
DEPUTY

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to defendant _____was accepted by the defendant on the _____ day of _____, 20____.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint was returned not accepted on the _____ day of _____, 20___.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to defendant _____was accepted by _____on behalf of said defendant on the _____day of _____, 20____.

_____
CLERK, MARION SUPERIOR COURT

Dated_____                By: _____
DEPUTY

Filed: 4/21/2017 2:49:44 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

# *INDIANA COMMERCIAL COURT*

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49D01-1704-PL-016106 |

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

     Plaintiff,

v.

GLOBAL LIVE, INC. and NEW YORK MARINE
GENERAL INSURANCE COMPANY a/k/a
PROSIGHT SPECIALTY INSURANCE GROUP,
INC.,

     Defendants.

**IDENTIFYING NOTICE**

## NOTICE IDENTIFYING COMMERCIAL COURT DOCKET CASE

The undersigned states that this case is a Commercial Court Docket Case eligible for

assignment to the Commercial Court Docket pursuant to Rule 2 of the Interim Commercial Court

Rules.

Pursuant to Rule 4 of the Interim Commercial Court Rules, the undersigned requests the

Clerk of Court assign this case to the Commercial Court Docket.

          Respectfully submitted,

          ICE MILLER LLP

          /s/ Olga Voinarevich
          Angela P. Krahulik, Atty. No. 23036-49
          Olga Voinarevich, Atty. No. 32188-48

          *Attorneys for Indianapolis Motor Speedway,
          LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

I\1725159.1

Filed: 4/21/2017 2:51:23 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

STATE OF INDIANA     )    IN MARION COUNTY SUPERIOR COURT
                        )SS:
COUNTY OF MARION    )    CAUSE NO. 49D01-1704-PL-016106

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

      Plaintiff,

   v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

      Defendants.

## E-FILING APPEARANCE BY ATTORNEY IN CIVIL CASE

**This Appearance Form must be filed on behalf of every party in a civil case.**

1.  The party on whose behalf this form is being filed is:
    Initiating __X__         Responding _____     Intervening _____ ; and

    the undersigned attorney and all attorneys listed on this form now appear in this case for the following parties:

    Name of party __**Indianapolis Motor Speedway, LLC**_____

    Address of party *(see Question # 5 below if this case involves a protection from abuse order, a workplace violence restraining order, or a no-contact order)*

    _____

    Telephone # of party _____

2.  Attorney information for service as required by Trial Rule 5(B)(2)

| | |
|---|---|
| **Angela D. Krahulik, Atty. No. 23036-49** | **Olga Voinarevich, Atty. No. 32188-48** |
| **ICE MILLER LLP** | **ICE MILLER LLP** |
| **One American Square, Suite 2900** | **One American Square, Suite 2900** |
| **Indianapolis, IN 46282** | **Indianapolis, IN 46282** |
| **(317) 236-5991** | **(317) 236-2347** |
| **Angela.Krahulik@icemiller.com** | **Olga.voinarevich@icemiller.com** |

**-IMPORTANT:** Each attorney specified on this appearance:

(a)     certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this

Appearance;

(b) **acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney; and**

(c) understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Attorneys can review and update their Roll of Attorneys contact information on the Courts Portal at http://portal.courts.in.gov.

3. This is a ____PL____ case type as defined in administrative Rule 8(B)(3).

4. This case involves child support issues. Yes ____ No _X_ *(If yes, supply social security numbers for all family members on a separately attached document filed as confidential information on **light green paper**. Use Form TCM-TR3.1-4.)*

5. This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order. Yes ____ No _X_ *(If Yes, the initiating party must provide an address for the purpose of legal service but that address should not be one that exposes the whereabouts of a petitioner.)* The party shall use the following address for purposes of legal service:

_____ Attorney's address

_____ The Attorney General Confidentiality program address (contact the Attorney General at 1-800-321-1907 or e-mail address is **confidential@atg.in.gov).**

_____ Another address (provide)

_____

This case involves a petition for involuntary commitment. Yes ____ No _X_

6. If Yes above, provide the following regarding the individual subject to the petition for involuntary commitment:

a. Name of the individual subject to the petition for involuntary commitment if it is not already provided in #1 above:

_____

b. State of Residence of person subject to petition: _____

c. At least one of the following pieces of identifying information:

(i) Date of Birth _____

(ii) Driver's License Number _____

State where issued _____ Expiration date _____

2

(iii) State ID number _____

      State where issued _____ Expiration date _____

(iv) FBI number _____

(v) Indiana Department of Corrections Number _____

(vi) Social Security Number is available and is being provided in an attached confidential document Yes ____ No ____

7. There are related cases: Yes ____ No _X_ *(If yes, list on continuation page.)*

8. Additional information required by local rule:

_____

9. There are other party members: Yes ____ No _X_ *(If yes, list on continuation page.)*

10. This form has been served on all other parties and Certificate of Service is attached:

    Yes _X_ No___

                             Respectfully submitted,

                             ICE MILLER LLP

                             /s/ Olga Voinarevich_____
                             Angela P. Krahulik, Atty. No. 23036-49
                             Olga Voinarevich, Atty. No. 32188-48

                             *Attorneys for Plaintiff, Indianapolis Motor Speedway, LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served on the

following, via U.S. Certified Mail, return receipt requested, on the 21st day of April, 2017:

> Global Live, Inc.
> c/o Corporation Service Company, its Registered Agent
> 2711 Centerville Rd., Suite 400
> Wilmington, DE 19808
>
> Marine General Insurance Company a/k/a ProSight
> Specialty Insurance Group, Inc.
> c/o Corporation Service Company, its Registered Agent
> 80 State Street
> Albany, NY 12207

> /s/ Olga Voinarevich
> Olga Voinarevich, Atty. No. 32188-48

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

4

I\11638368.1

Filed: 4/21/2017 2:47:36 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

## INDIANA COMMERCIAL COURT

STATE OF INDIANA     )     IN THE MARION SUPERIOR COURT
               )SS:
COUNTY OF MARION    )     CAUSE NO. 49D01-1704-PL-016106

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

      Plaintiff,

   v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

      Defendants.

### ADMINISTRATIVE RULE 9(G)(5) NOTICE OF EXCLUSION OF CONFIDENTIAL INFORMATION FROM PUBLIC ACCESS

      Contemporaneous with the filing of this notice, Plaintiff has filed confidential information in accordance with Administrative Rule 9(G)(6). Pursuant to Administrative Rule 9(G)(5), Plaintiff provides this notice that the confidential information is to remain excluded from public access in accordance with the authority listed below:

| Redactions to Be Excluded from Public Record | Administrative Rule 9(G) grounds upon which exclusion is authorized |
| --- | --- |
| Portions of paragraph 12 of the Complaint, at page 3. | Administrative Rule 9(G)(2)(b); Ind. Code §§ 24-2-3-2, 24-2-3-6 |
| Portions of Exhibit A to Complaint, titled "Special Event Agreement," at pages 1, 3, 4, and 5 | Administrative Rule 9(G)(2)(b); Ind. Code §§ 24-2-3-2, 24-2-3-6 |
| Portions of Exhibit B to Complaint, titled "Certificate of Liability Insurance" | Administrative Rule 9(G)(2)(b); Ind. Code §§ 24-2-3-2, 24-2-3-6 |

Respectfully submitted,

ICE MILLER LLP

/s/ Olga Voinarevich
Angela P. Krahulik, Atty. No. 23036-49
Olga Voinarevich, Atty. No. 32188-48

*Attorneys for Plaintiff, Indianapolis Motor Speedway, LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

2

I\1 1745255.1

Filed: 4/21/2017 2:45:45 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

# *CONFIDENTIAL - NOT FOR PUBLIC ACCESS*

## INDIANA COMMERCIAL COURT

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | )SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49D01-1704-PL-016106 |

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

     Plaintiff,

v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

     Defendants.

### IMS'S COMPLAINT AGAINST GLOBAL LIVE INC. AND NEW YORK MARINE GENERAL INSURANCE COMPANY A/K/A/ PROSIGHT SPECIALTY INSURANCE GROUP, INC.

     Plaintiff, Indianapolis Motor Speedway, LLC ("IMS"), by counsel, for its Complaint against Defendants, Global Live, Inc. ("Global Live") and New York Marine General Insurance Company a/k/a ProSight Specialty Insurance Group, Inc. ("ProSight") (collectively, "Defendants"), alleges and states:

### PARTIES, JURISDICTION AND VENUE

     1.    IMS is a limited liability company organized under the laws of the State of Indiana, with its principal place of business in Marion County at 4790 W. 16th Street, Indianapolis, Indiana 46222.

     2.    At all relevant times, Global Live was a domestic corporation with its principal place of business located at 1100 Glendon Avenue, 21st Floor, Los Angeles, California 90024.

     3.    At all times relevant, ProSight was a domestic corporation with its principal place of business located at 9 Maiden Lane, 27th Floor, New York, New York 10038.

4.      This Court may exercise personal jurisdiction over Defendants because Defendants have transacted business in the State of Indiana, have entered into agreements covering performance of duties in the State of Indiana, and have caused harm in the State of Indiana.

5.      Venue is also proper in this Court because a substantial part of the events or omissions giving rise to the alleged claims at issue occurred in Marion County.

## FACTS

### Contracts between IMS and Defendants

6.      On or about April 6, 2015, IMS and Global Live entered into a valid and enforceable Special Event Agreement (the "Event Agreement"). A true and correct copy of the Event Agreement, with trade secret and commercially and financially sensitive information redacted, is attached hereto as **Exhibit A**.

7.      The Event Agreement allowed Global Live to host a concert featuring the musical group professionally known as "The Rolling Stones" at the Indianapolis Motor Speedway on or about July 4, 2015 (the "Event").

8.      The Event Agreement set forth obligations and responsibilities of the parties in connection with the Event.

9.      Global Live's contractual duties included, *inter alia*, organizing, hosting, and sponsoring multiple aspects of the Event, including but not limited to marketing expenses, ticketing costs, event production, labors costs, permits, and *event insurance*. *See* Ex. A, at 1-3.

10.     Specifically, Global Live was expressly obligated to provide coverage for *all* claims arising in connection with the Event. Ex. A, at 4, ¶ 9.

2

11.     The Event Agreement repeatedly refers to the concert attendees as Global Live's "invitees." *See* Ex. A, at 4, ¶ 11.

12.     Under the pertinent terms of the Event Agreement, Global Live was required to "obtain and maintain at its expense commercial general liability insurance *covering the Event...for full coverage of claims* to a limit of at least          per occurrence and in the aggregate (the "Policy")." Ex. A, at 4, ¶ 9 (emphasis added).

13.     According to Paragraph 9(b) of the Event Agreement, "[t]he Policy specifically covers *the Event and* [Global Live's] obligations to IMS." Ex. A, at 4.

14.     At all relevant times, ProSight was Global Live's commercial general liability insurer.

15.     As required under the terms of the Event Agreement, IMS was added as an additional insured to Global Live's Commercial General Liability ("CGL") insurance policy by a Certificate of Liability Insurance issued by ProSight for CGL policy number GL 201500004535 with a period of July 1, 2015 to July 6, 2015 (the "Policy"). A true and correct copy of the Certificate of Liability Insurance, with trade secret and commercially and financially sensitive information redacted, is attached as **Exhibit B**.

16.     To date, IMS has never been provided with a copy of the complete CGL Policy.

17.     The Event Agreement further specifies that the coverage under the Policy must explicitly include IMS "as an additional insured under the Policy" and indicates that the coverage provided to IMS is to be "primary to any other coverage(s) available to IMS." Ex. A, at 4, ¶ 9(a), (c).

18.     The Event Agreement further specifies that "[t]he amount of insurance coverage required to be obtained by [Global Live] is minimum coverage, and it shall be [Global Live's]

3

obligation to purchase Insurance for full coverage of claims . . . *to protect itself and provide*

*Indemnity to IMS Group based upon the activities to occur in connection with the Event*." Ex. A,

at 4, ¶ 9 (emphasis added).

19.   The Indemnity provision of the Event Agreement provides as follows:

> *To the fullest extent possible, it is the intention* of [Global Live]
> and IMS that the Indemnities set forth below and *the insurance*
> *coverage maintained by [Global Live] pursuant to Section 9 will*
> *provide liability protection to [Global Live] and IMS Group for*
> *claims arising out of [Global Live]'s and its invitees' presence at*
> *the Speedway during the Event...* [I]f and the extent the coverage
> maintained by [Global Live]...for IMS Group's benefit does not
> hold IMS Group harmless, *[Global Live] shall indemnify, defend*
> *and hold harmless IMS Group for third party claims and liability*
> *arising in connection therewith, including costs and reasonable*
> *attorneys' fees arising from (i) [Global Live's] or its Invitees' use*
> *of the Speedway* or (ii) the negligence or willful misconduct of
> [Global Live] or its Invitees. . .

Ex. A, at 5, ¶ 11(a) (emphasis added).

20.   To the extent there are any known or unknown claims arising out of the Event,

ProSight is contractually obligated to provide a defense and indemnity to IMS, as its insured,

under the Policy.

21.   Moreover, to the extent ProSight fails to provide the required defense and

indemnity to IMS, Global Live must satisfy its duty to defend and indemnify IMS from any such

claims.

## The Underlying Lawsuit

22.   On or about July 4, 2015, Global Live hosted the Event at Indianapolis Motor

Speedway.

23.   Upon information and belief, non-parties, Pamela Shepard and William Shepard

(collectively, the "Shepards") attended the Event.

4

24.     Upon information and belief, the Shepards tripped over a curb and fell while walking in the tunnel at the Indianapolis Motor Speedway, exiting the Event.

25.     Upon information and belief, Mr. Shepard sustained minor injuries to his leg.

26.     Upon information and belief, Mrs. Shepard sustained injuries to her left elbow and right shin, which required surgical intervention and other treatment.

27.     On or about December 28, 2016, the Shepards filed a Complaint for Damages against IMS (the "Shepards' Complaint") in an action now pending in Marion County, Indiana entitled *Pamela Shepard and William Shepard v. Indianapolis Motor Speedway, LLC*, Cause No. 49D10-1701-CT-000393 (the "Underlying Lawsuit"), alleging IMS is liable to the Shepards for damages arising from the allegations set forth in the Shepards' Complaint. A true and correct copy of the Shepards' Complaint is attached hereto as **Exhibit C**.

28.     The Shepards' Complaint alleges that the Shepards' claims arise out of the incident described in Paragraphs 24 through 26 above and further alleges that, by failing to provide adequate illumination for business invitees exiting the Event, IMS breached its duty of care to the Shepards (the "Claims").

29.     While IMS denies the aforementioned allegations and any liability on behalf of IMS, the Claims and the Underlying Lawsuit are squarely within the scope contemplated by the Event Agreement between IMS and Global Live and the Policy issued by ProSight (as evidenced by the Certificate of Liability Insurance issued to IMS by ProSight).

30.     Accordingly, because ProSight was obligated to provide insurance coverage protection for all "claims arising out of [Global Live]'s and its invitees' presence at the Speedway during the Event[,]"and due to IMS's status as ProSight's additional insured, ProSight

5

is required to defend the Claims and to indemnify IMS for any damages in connection with the claims in the Underlying Lawsuit. *See* Ex. A.

31.     Moreover, to the extent ProSight refuses to defend the Underlying Lawsuit and indemnify IMS in connection with the Underlying Lawsuit and/or the Claims, Global Live is contractually obligated to do so itself.

32.     IMS notified Global Live and ProSight of the Shepards' Claims within days of the Event and ProSight acknowledged the receipt of said information. However, to date, IMS has contacted Global Live and/or ProSight regarding the Claims multiple times over a period of more than 18 months, but has not received any substantive response.

33.     The Underlying Lawsuit has continued, and is still pending in Marion County, and IMS is forced to defend itself as to the Claims in Global Live's and ProSight's absence.

34.     Despite numerous demands to assume their responsibilities, Defendants have committed multiple breaches of the Event Agreement and/or the Policy by failing to defend, indemnify, and hold IMS harmless in connection with the Underlying Lawsuit, as they were expressly obligated to do under the terms of the Event Agreement and the Policy.

35.     IMS has fulfilled all of its duties, conditions, and prerequisites to coverage under the Event Agreement and the Policy with respect to the Claims and/or the Underlying Lawsuit.

36.     IMS is thus entitled to an award of all amounts and all expenses and costs incurred as a result of IMS's defense of the Underlying Lawsuit and payment for the same on an as-incurred basis going forward, plus interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit (including any amount paid by vendor or in settlement), and a declaration pursuant to Indiana Code § 34-14-1 *et seq.* that Defendants are obligated to provide

6

insurance coverage, indemnify, and hold IMS harmless in connection with the Underlying Lawsuit and/or the Claims.

## COUNT I

### BREACH OF CONTRACT AGAINST PROSIGHT

37.     IMS restates and incorporates the allegations of paragraphs 1 through 36 above as if fully set forth herein.

38.     IMS and ProSight are parties to the Policy, which is a valid and enforceable agreement.

39.     As part of the Policy, IMS is entitled to coverage, defense, and indemnity from ProSight for any claims that have been or may be asserted against IMS relating to the Event.

40.     Upon information and belief, no terms or exclusions in the Policy unambiguously exclude coverage for the Underlying Lawsuit and the Claims asserted in the Underlying Lawsuit are within the scope of coverage contemplated by the Event Agreement and the Policy.

41.     As such, ProSight has a duty to provide coverage, defend, and indemnify in the Underlying Lawsuit.

42.     Despite numerous demands to comply with the terms of the Policy, ProSight has failed to provide coverage, to defend the Underlying Lawsuit, or to acknowledge its duties to IMS for any and all claims related to the Event, including the Claims asserted in the Shepards' Complaint, which constitutes a material breach of ProSight's duties under the Policy.

43.     IMS has been, and will continue to be, damaged by ProSight's breach of the Policy.

44.     As a result, IMS is entitled to direct, compensatory, consequential, and incidental damages.

7

45.     Upon information and belief, all conditions precedent to coverage under the Policy have been satisfied or waived and no exclusion within the Policy precludes coverage for the Underlying Lawsuit and the Claims.

## COUNT II

### PROSIGHT'S BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

46.     IMS restates and incorporates the allegations of paragraphs 1 through 45 above as if fully set forth herein.

47.     IMS and ProSight are parties to the Policy, executed in favor of IMS (the insured under the Policy), which is a valid and enforceable policy of insurance.

48.     Indiana law imposes upon insurers, such as ProSight, an obligation of good faith and fair dealing with their insureds.

49.     ProSight's obligation of good faith and fair dealing includes an obligation to refrain from causing an unfounded delay in making payment; making an unfounded refusal to pay policy proceeds; exercising an unfair advantage to pressure an insured into settlement of a claim; and, deceiving the insured.

50.     Despite IMS's numerous attempts to obtain cooperation from ProSight with regard to ProSight's obligations under the Policy, ProSight has refused to acknowledge IMS's right to coverage, defense, and indemnity under the Policy, has failed to respond to IMS's tender of the claim, and failed to disclaim or accept coverage or to provide IMS a defense in connection with the Underlying Lawsuit.

51.     As set forth herein, IMS has been forced to defend itself against the Underlying Lawsuit because ProSight wrongfully failed to provide it a defense under the Policy.

8

52.     IMS has and continues to incur costs, expenses, and attorneys' fees due to ProSight's breaches of its duties to its policyholder, and failure to provide coverage and defend IMS in the Underlying Lawsuit.

53.     ProSight's breaches of its fiduciary duties to its policyholder are such that punitive damages, including treble damages, and attorneys' fees are appropriate.

### COUNT III

### DECLARATORY JUDGMENT AGAINST PROSIGHT

54.     IMS restates and incorporates the allegations of paragraphs 1 through 53 above as if fully set forth herein.

55.     The above allegations describe an actual and justiciable controversy between IMS and ProSight regarding their rights and obligations under the Policy.

56.     ProSight is obligated to provide IMS a defense and indemnification for claims to which the insurance applies, including the Claims asserted in the Underlying Lawsuit.

57.     Upon information and belief, no terms or exclusions in the Policy unambiguously exclude coverage for the Underlying Lawsuit. The Claims asserted in the Underlying Lawsuit are within the scope of coverage contemplated by the Policy.

58.     ProSight has wrongly failed to abide by its obligations to defend and indemnify IMS in the Underlying Lawsuit.

59.     The issues in this action are ripe for decision and relate to the construction and validity of the Policy, including the rights of IMS to be provided a defense in the Underlying Lawsuit.

60.     IMS therefore seeks a declaration that ProSight is obligated to provide insurance coverage for any and all claims raised in the Underlying Lawsuit.

9

61.    IMS further seeks a declaration that ProSight is obligated to otherwise fully defend, indemnify and hold IMS harmless for any and all claims made or otherwise made in the Underlying Lawsuit up to the applicable limits of the Policy.

## COUNT IV

## BREACH OF CONTRACT AGAINST GLOBAL LIVE

62.    IMS restates and incorporates the allegations of paragraphs 1 through 61 above as if fully set forth herein.

63.    IMS and Global Live are parties to the Event Agreement, which is a valid and enforceable agreement.

64.    Under the terms of the Event Agreement, Global Live was obligated to procure insurance for any claims relating to the Event, including the Claims raised in the Underlying Lawsuit. The coverage was to be primary to any other coverage(s) available to IMS.

65.    However, if Global Live's insurance fails to provide coverage, defense, and indemnification for claims arising from the Event, including the Claims raised in the Underlying Lawsuit, Global Live is obligated to do so itself.

66.    ProSight has failed to comply with its obligations and to provide defense and indemnification to IMS as its insured, as evidenced by the Certificate of Liability Insurance.

67.    Accordingly, under the Event Agreement, IMS is entitled to reimbursement of its defense and indemnity from Global Live for any claims that have been or may be asserted against IMS relating to the Event, including the Claims alleged in the Underlying Lawsuit, as well as all interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit (including any amount paid by vendor or in settlement).

10

68.     Despite numerous demands to comply with the terms of the Event Agreement, Global Live has breached the Event Agreement by failing to defend the Underlying Lawsuit and failing to hold IMS harmless for the Claims raised in the Underlying Lawsuit, which constitute material breaches of the Event Agreement.

69.     Under Indiana law, the disclaimer of a contractual duty is a breach of contract even if the time specified in the contract for performing the duty has not yet arrived.

70.     IMS has been, and will continue to be, damaged by Global Live's breach of the Event Agreement.

71.     As a result, IMS is entitled to direct, compensatory, consequential, and incidental damages, including its fees and costs in the Underlying Lawsuit and in this action.

72.     Upon information and belief, all conditions precedent to this action have been waived or have been fulfilled.

## PRAYER FOR RELIEF

WHEREFORE, IMS respectfully requests that the Court grant it the following relief:

A.     A declaratory judgment that ProSight is obligated to provide coverage, including both defense and indemnity, in connection with the Underlying Lawsuit; Immediate payment for any and all amounts and all expenses and costs incurred as a result of IMS's defense of the Underlying Lawsuit and payment for the same on an as-incurred basis going forward, plus all interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit;

B.     Immediate payment for any and all amounts and all expenses and costs incurred as a result of IMS's defense of the Underlying Lawsuit and payment for the same on an as-incurred basis going forward, plus all interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit;

11

C.     A judgment in IMS's favor and against the Defendants in an amount that will

fully compensate IMS for its damages and losses, including compensatory, consequential and

incidental damages and prejudgment interest, including but not limited to an award of costs, fees

(including attorneys' fees), treble damages, punitive damages, and litigation expenses in this

action, with interest; and

D.     For all such other relief that is just and proper in the premises.

Respectfully submitted,

ICE MILLER LLP

/s/ Olga Voinarevich
Angela P. Krahulik, Atty. No. 23036-49
Olga Voinarevich, Atty. No. 32188-48

*Attorneys for Indianapolis Motor Speedway, LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

12

I\11638268.6

CONFIDENTIAL

NOT FOR PUBLIC ACCESS
Filed: 4/4/2017 3:45:45 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

## SPECIAL EVENT AGREEMENT

THIS SPECIAL EVENT AGREEMENT ("Agreement") is effective as of April __, 2015 (the "Effective Date"), by and between Indianapolis Motor Speedway, LLC, an Indiana limited liability company located at 4790 West 16th Street, Indianapolis, Indiana 46222 ("IMS"), and the licensee identified in Section 1. In consideration of the mutual covenants set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement agree as follows:

### 1. Licensee Identification and Event Details.

Company Name: Global Live, Inc. ("Licensee")

Address: 1100 Glendon Avenue, 21st Floor, Los Angeles, CA 90024

E-Mail: chuck.ciongoli@thisisglobal.com

Contact Person: Charles Ciongoli

Telephone Number: 310-774-4700



Event Name: Rolling Stones Concert

Event Date(s) and Times: July 4, 2015, 5:00 a.m. — [_____]. Actual performance time to be mutually agreed by the parties; Camping and RV's to be allowed on the Licensed Premises (as defined below) from July 3, 2015 through the end of the Event, subject to the consumer's execution of any standard license agreements normally required by IMS.

Set Up Date(s) and Times: Beginning Sunday, June 28, 2015 at 8:00 a.m. Access to the Licensed Premises to be coordinated with IMS personnel. Licensee shall use reasonable efforts to cause its Invitees that will be conducting set-up, tear-down and other activities in connection with the Event to execute standard consent and liability releases normally required by IMS prior to such Invitees being allowed access to the Licensed Premises.

Tear Down Date(s) and Times: To be completed by Monday, July 6, 2015 by 11:59 p.m. Access to the Licensed Premises to be coordinated with IMS personnel.

Description of Event: Licensee will host a concert featuring the musical group professionally known as "The Rolling Stones" (the "Artist") at the Indianapolis Motor Speedway (the "Speedway") in and around the Plaza, Pavilion, Media Center, Moto GP garages, Old Timers Room, North Chalet, oval track and such other locations as shall be determined by IMS and Licensee (the "Licensed Premises"). The event will consist of the following activities and such other activities as shall be agreed between IMS and Licensee, all of which shall comply with the terms of this Agreement (collectively, the "Event");

> (i) concert; and
> (ii) fireworks display.

Included Services and Equipment to be provided by IMS:

*a)   Ambulance and Other Medical Services.* IMS will secure ambulatory services for the Event and in addition will make available use of its onsite hospital facility which IMS will cause to be staffed and operational at all times during the Event. IMS will provide the foregoing to Licensee's expense, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

*b)   Facilities Staff.* IMS shall provide Facilities Staff members, who will be available for the entire Event. The number of such Facilities Staff members and their functions (e.g., security, ushers, ticket takers) shall be mutually agreed prior to the Event and shall be reasonable for an event of this size and type, and shall include, but not be limited to, staff and equipment for cleaning/housekeeping services, police and fire services, camping operations and parking and traffic services. IMS will provide the foregoing to Licensee's expense, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

1

361793.8
040615

EXHIBIT A

c) _Video Boards._ Subject to IMS's pre-approval of the advertiser, Licensee shall be permitted to display its and its affiliated companies' advertising and imagery, in accordance with _Section 7(d)_ of the Agreement, on IMS's video boards.

d) _Public Announcements._ IMS shall make available, limited use of the public address system. Announcers and all content shall be provided by Licensee, subject to IMS pre-approval.

e) _Food and Beverage Trucks._ The parties agree that Levy Premium Foodservice Limited Partnership shall be the food and beverage service provider at the Event. IMS shall make arrangements for such service, including without limitation, the arrangement of food and beverage truck vendors desired by Licensee.

f) _Golf Carts._ IMS shall make available to Licensee IMS' golf carts for use by Licensee's production personnel at no additional charge. Subject to execution of IMS' Consent, Indemnification & Liability Release Agreement for Use of a Golf Cart, any and all other golf carts operated on the premises of the Speedway, whether Licensee-owned or rented, must be registered with IMS. All golf cart operators must be at least 18 years of age. If use of a golf cart is part of this Agreement, then the IMS Credential Office will provide Licensee an IMS golf cart voucher _("GC Voucher")_ upon receipt and approval of: this Agreement, Licensee's certificate of insurance, and a completed golf cart registration form. The GC Voucher must be redeemed at the IMS Safety Office for an IMS golf cart permit/sticker _("GC Permit")_. The GC Permit must be placed on Licensee's golf cart. An authorized representative of Licensee must execute IMS' standard waiver and release of liability and indemnity agreement for golf carts and initial a copy of IMS' standard rules of operation for golf carts at the time of redeeming the GC Voucher for a GC Permit. All golf carts operated on the premises of the Speedway, regardless of who owns the golf cart(s), must be registered with IMS.

g) _Fireworks._ To be provided by IMS at Licensee's expense, in accordance with a budget to be mutually agreed in advance, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up. IMS acknowledges that in addition to the fireworks display to which the preceding sentence applies, Artist shall be entitled to include a fireworks display as part of Artist's concert, and that IMS will make available at no cost the services of a supervisory pyrotechnician in connection therewith.

h) _Fencing._ To be provided by IMS at Licensee' expense, in accordance with a budget to be mutually agreed in advance, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

i) _Light towers._ To be provided by IMS at Licensee's expense, in accordance with a budget to be mutually agreed in advance, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

**Additional Services and Equipment:** If at Licensee's request IMS facilitates on behalf of Licensee a third party rental of equipment or engagement of third party services, Licensee will be responsible for the actual invoice price of such rental or services upon presentation of the applicable invoice with respect thereto at settlement. Notwithstanding anything contained in this Agreement to the contrary, subject to coordination with IMS personnel, IMS owned or leased equipment will be made available for Licensee's use in connection with the Event at no charge.

**Additional responsibilities of Licensee:**

a) At no cost to IMS, Licensee agrees to provide IMS with a 60'X 60' display area in the Plaza.

b) All labor costs not otherwise provided for above, including, without limitation, the costs of stage hands, rigging personnel, loaders and unloaders.

c) Ticketing costs including credit card fees.

d) Event Production, including, without limitation, staging, platforms, risers, and barricades, including the equipment and costs therefor except as otherwise provided in this Agreement.

e) Event insurance as set forth below.

f) Permits, if applicable, with respect to the Event.

g) Advertising and marketing expenses with respect to the Event.

2

361793.8
040615

**Payment:** The License Fee and Other Fees are due and payable upon settlement of the Event, which shall take place within five (5) business days following the completion of tear down.

**2.      License.** IMS grants to Licensee a limited, non-transferable and non-exclusive license ("License") to use designated areas during the Event and the set up and tear down periods for the Event as set forth above in accordance for customary standards for comparable events in the United States. This Agreement does not create nor convey any legal title, leasehold or other legal, equitable or beneficial property interest in or to the Speedway.



**4.      Services and Equipment.** IMS shall provide or arrange for all Included Services and Equipment as set forth above, and any Additional Services and Equipment requested by Licensee and agreed to by IMS. Third party vendors and service providers with respect to Additional Services and Equipment requested by Licensee shall be subject to Licensee's and IMS' mutual approval, not to be unreasonably withheld, and any such services and equipment must be of "first class" quality.

**5.      Open and Close Times and Tear Down.** Unless specified in Section 1, open and close times and tear down times shall be mutually determined by IMS and Licensee.

**6.      Laps.** In the event that persons are participating in hot laps or track laps that are approved by IMS they must be at least eighteen (18) years old; possess valid, government-issued photo identification; and execute all IMS required consent and liability releases.

**7.      Commercial Transactions.**

a.      Generally. Unless otherwise set forth in Section 1 or this Section 7, IMS prohibits (i) all commercial transactions at the Speedway, including but not limited to the sale of food, alcoholic and nonalcoholic beverages, and merchandise and (ii) all distribution of products (including donated products), samples and/or premiums (non-saleable articles bearing trademarks, logos or advertising used to promote or publicize any product or service). Licensee shall ensure that its invitees (as defined in Section 11), are aware of and comply with the terms and conditions regarding commercial transactions in this Agreement.

b.      Food and Beverages. IMS shall arrange for Levy to provide food and beverage concessions specified in Section 1 at IMS designated concessions and food and beverage truck areas, and all hospitality food and beverages shall be provided by Levy or IMS-approved caterers at Licensee's additional cost.

c.      Merchandise. Licensee and its contractors may sell Event merchandise in IMS designated areas so long as the Event merchandise does not display any IMS trademark. Notwithstanding the foregoing, Licensee and its contractors shall be entitled to offer for sale t-shirts and other merchandise displaying designs that identify the Event by the name of the venue. Unless set forth in Section 1, no other sale of merchandise by Licensee or its contractors is permitted. Licensee represents, warrants and covenants that, prior to the Event and continuing throughout the Event, Licensee or its contractors shall secure and maintain a proper license from any and all third parties whose trademarks, logos, brands and/or other intellectual property appear on the merchandise/services being offered/displayed at the Speedway. Licensee agrees to permit IMS (and its representatives) access during normal business hours to Licensee's records pertaining to such licenses for the purpose of verifying the existence of such licenses. In the event Licensee cannot demonstrate that it or its contractors hold a proper license for any merchandise/services being offered/displayed at the Speedway, Licensee agrees that it shall cooperate with IMS to promptly remove such merchandise/services from the Speedway.

3

d.   Advertising and Signs. Licensee and Artist shall have the right to solicit third-party sponsors to be sponsors for the Event and to for and/or in connection with the Event, including any sponsorship advertising of or during the Event. Licensee shall provide IMS in advance a list of potential sponsors and advertisers, and IMS shall have the right, exercisable by written notice within two (2) days after Licensee's submission of such list to IMS, to reject any sponsor or advertiser which would cause IMS to be in breach of its existing third party agreements. All sponsorship advertising and/or promotional displays and signage at the Speedway of any sponsors and advertisers rejected by IMS pursuant to the preceding sentence are strictly prohibited. IMS hereby pre-approves the use of Artist's logos in advertising for the Event and otherwise at the Event.

e.   Sweepstakes. Licensee shall not conduct a sweepstakes, raffle or similar activity in connection with the Event without the pre-approval of IMS. Licensee must comply with all laws and obtain all permits with respect to such activities and must provide IMS evidence thereof prior to the Event.

f.   Consumer Information. If Licensee collects any information (e.g., name, email address, mail address, mobile number, etc.) in connection with any activity under this Agreement (e.g., via sweepstakes entry forms, if a sweepstakes is pre-approved by IMS, Event registration forms, etc.), provided that to do so will not result in Licensee's breaching any of its third party obligations, Licensee will share such information (collectively "Consumer Information") with IMS within thirty (30) days after collection. Licensee shall use reasonable efforts to ensure that IMS has all necessary right and power to use the Consumer Information in connection with its business. Without limiting any of its obligations under the foregoing, Licensee represents and warrants that: (a) IMS may utilize the Consumer Information in direct sales, marketing, communication or other outreach activities; (b) Licensee will provide express notice to each person of its intent to share the Consumer Information with IMS and that, upon receipt by IMS, the Consumer Information will be used and maintained by IMS pursuant to its privacy policy at www.indianapolismotorspeedway.com; (c) in connection with any Consumer Information that is an email address or a mobile number, Licensee will seek to obtain and maintain the applicable consumer's express opt-in consent for IMS's use of the same or provide written notice to IMS if opt-in consent was not obtained; and (d) notwithstanding the foregoing or any of the provision in this Agreement to the contrary, Licensee will not provide IMS any Consumer Information for a child under the age of 13 years without IMS's express prior written approval.

8.   Photography/Videography. Licensee and Artist may take still photos and video recordings of the Event for Licensee's and/or Artist's promotional use as well as internal historical purposes. All other photography and videography arrangements must be pre-approved by IMS, such approval not to be unreasonably withheld, and shall be subject to execution of a Location Release. Other than pursuant to a Location Release, the commercial use or re-sale of any photographs or film footage taken on the grounds of the Speedway is prohibited, provided, however, such restriction shall not apply with respect to behind-the-scenes photos or video recordings. No broadcasts, photographs or videotapes shall imply a relationship between IMS and Licensee other than that permitted under this Agreement.

9.   Insurance. Prior to the Event, Licensee shall obtain and maintain at its expense commercial general liability insurance covering the Event, including without limitation products and completed operations liability, and a contractual liability endorsement (and covering X,C and U hazards, where applicable; independent contractors; and use of pyrotechnics), for full coverage of claims to a limit of ███████████ per occurrence and in the aggregate (the "Policy"); automobile liability insurance on all owned, non-owned and hired autos and equipment operated or otherwise used or displayed during the Event with coverage limits ██████████ per occurrence; and workers' compensation in accordance with statutory requirements, including employers liability insurance with a limit of ████ ████ per claim (but in no event in limits less than those required by law and/or as set forth in the artists' riders, if any); and Event cancellation or postponement coverage  in an amount sufficient to cover ticket refunds. Licensee shall deliver a certificate evidencing Licensee's compliance as to insurance coverage to IMS upon execution of this Agreement or the Event will be canceled, and no fees or deposits paid prior to the cancellation will be refunded. The certificate of insurance must demonstrate the following:

   (a)   IMS Group (as defined below) is a certificate holder *and* is included as an additional insured under the Policy;
   (b)   The Policy specifically covers the Event and Licensee's obligations to IMS; and
   (c)   The Policy provides coverage primary to any other coverage(s) available to IMS Group.

The amount of insurance coverage required to be obtained by Licensee is minimum coverage, and it shall be Licensee's obligation to purchase insurance for full coverage of claims as it deems advisable in its business judgment to protect itself and provide indemnity to IMS Group based upon the activities to occur in connection with the Event. In addition, Licensee will require all subcontractors performing work in connection with the Event to include IMS Group as Additional Insureds for comprehensive general liability insurance carried by such subcontractors.

4

361793.8
040615

To support its indemnity obligations as set forth in Section 11(b), IMS shall maintain commercial general liability insurance ▮▮▮▮▮▮▮▮▮ per occurrence and in the aggregate. In addition, IMS shall have Licensee named as an additional insured for any claims asserted against Licensee that would, if successful, be covered by IMS's indemnity obligations as set forth in Section 11(b).

10. **Representations and Warranties.**

a. Licensee represents and warrants that (i) Licensee has the right to enter into and fully perform every provision of this Agreement; and (ii) the person executing this Agreement on Licensee's behalf has the authority to do so.

b. IMS represents and warrants that (i) IMS owns the Licensed Premises and that IMS has the right to enter into and fully perform every provision of this Agreement; and (ii) the person executing this Agreement on IMS' behalf has the authority to do so.

11. **Indemnification.**

a. Licensee and Licensee's agents, representatives, employees, contractors and invitees and spectators ("invitees") shall be provided with access to the Speedway (including both public areas and restricted areas of the Speedway) conditioned upon Licensee's compliance with this Section 11a. To the fullest extent possible, it is the intention of Licensee and IMS that the indemnities set forth below and the insurance coverage maintained by Licensee pursuant to Section 9 will provide liability protection to Licensee and IMS Group for claims arising out of Licensee's and its invitees' presence at the Speedway during the Event. To the extent that Licensee's insurance holds IMS Group harmless, IMS Group does not require indemnity from Licensee. However, if and to the extent the coverage maintained by Licensee for the Licensee and IMS Group's benefit does not hold IMS Group harmless, Licensee shall indemnify, defend and hold harmless IMS Group for third party claims and liability arising in connection therewith, including costs and reasonable outside attorneys' fees, arising from (i) Licensee's or its invitees' use of the Speedway or (ii) the negligence or willful misconduct of Licensee or its invitees or (iii) Licensee's breach of this Agreement and/or its representations and warranties hereunder, provided the applicable claim is reduced to a final adverse judgment or settled with Licensee's prior written consent, not to be unreasonably withheld, provided, however, the foregoing indemnity shall not apply with respect to claims resulting from the breach of IMS' representations, warranties or covenants under this Agreement or from the sole negligence or willful misconduct of the IMS Group or any member thereof. This Section shall survive expiration or termination of this Agreement. "IMS Group" means IMS, Indianapolis Motor Speedway Foundation, Inc., all relevant race sanctioning bodies, and the successors, assigns, officers, directors, owners, members, agents, affiliates and employees of each of them.

b. IMS shall indemnify, defend and hold harmless Licensee and Artist and the respective successors, assigns, officers, directors, owners, members, agents, affiliates and employees thereof for third party claims and liability arising in connection therewith, including costs and reasonable outside attorneys' fees, arising from (i) the failure of IMS' Equipment, including, without limitation, any software, provided by IMS as set forth under "Included Services and Equipment to be provided by IMS" in Section 1 above in connection with the performance of IMS' obligations hereunder, or (ii) the sole negligence or willful misconduct of IMS or its employees or independent contractors engaged by IMS or any affiliated or related entity, or (iii) IMS' breach of this Agreement and/or its representations and warranties hereunder, provided the applicable claim is reduced to a final adverse judgment or settled with IMS' prior written consent, not to be unreasonably withheld. This Section shall survive expiration or termination of this Agreement.

12. **Cancellation and Refund Policy.** If Licensee cancels the Event in advance of the dates set forth in Section 1 other than as a result of force majeure as set forth in Section 13 or IMS' negligence or fault, IMS shall be entitled to reimbursement of its actual out-of-pocket non-overhead expenses incurred specifically in connection with the Event prior to such cancellation as provided for in this Agreement. If for any reason the Licensed Premises becomes unavailable in advance of the Event, IMS will promptly notify Licensee and use its best efforts to mitigate any adverse effect on Licensee or on the Event. If IMS cancels the Event other than as a result of force majeure as set forth in Section 13, in addition to any other rights or remedies that Licensee may have at law or in equity, IMS shall promptly refund to Licensee 100% of the License Fee and any and all fees and deposits paid by Licensee to IMS prior to the cancellation. Licensee assumes the risk of cancellation of all or part of the Event or any portion thereof during the Event for any reason not within IMS' control including without limitation inclement weather.

13. **Force Majeure.** The parties' obligation to perform hereunder is subject to acts of God, war, government regulations, disasters, strikes, civil disorder, curtailment of transportation facilities, or other emergencies provided the foregoing are beyond the control of the parties, making it inadvisable, illegal or impossible to hold the Event.

5

14.    **Maintenance of the Licensed Premises.**

    a.    Licensee shall maintain order at the Speedway and shall not conduct, and shall use its reasonable efforts not to permit, any activities at the Speedway which (i) are prohibited by any applicable law, regulation, rule or ordinance; (ii) endanger the health or safety of any persons or property; or (iii) violate any rules, regulations, policies, practices or procedures of IMS as amended from time to time by IMS in its sole discretion provided Licensee has previously been notified thereof in writing.

    b.    Licensee shall use its good faith reasonable efforts not to commit waste at the Speedway, damage Speedway property or maintain or permit to be maintained a nuisance therein. Licensee shall not apply any substance to any racing or other surface without the consent of IMS. Licensee shall present all licensed space in a tasteful manner appropriate for Invitees of all ages. Following the Event, Licensee shall remove any and all trash and debris, clean all surfaces, and otherwise return the Licensed Premises to the same condition, normal wear and tear excepted, as the Licensed Premises was received by Licensee from IMS. Licensee shall be responsible for any and all property damage and all clean-up costs to the Licensed Premises during or as a result of the Event. All debris shall be placed in containers furnished by IMS.  No firearms or other weapons shall be brought onto the grounds of the Speedway.

    c.    The integrity of any paved surface of the Licensed Premises shall be maintained at all times, and Licensee shall repair any damage to the surface at Licensee's sole cost. Penetration of the parking surface with tent stakes or similar implements is prohibited.

    d.    All displays and trailers are subject to IMS approval, not to be unreasonably withheld. IMS shall be deemed to have approved any display provided such display would not cause IMS to be in breach of any of its third party obligations or otherwise expose IMS to legal liability or material reputational harm. The inclusion of any Artist logo or other mark on or in connection with any displays or trailers shall not be deemed to expose IMS to reputational harm.  All displays and trailers shall be free standing. Storage on top of any trailer located on the Licensed Premises is prohibited. No one is permitted on top of a trailer located on the Licensed Premises. Licensee shall be solely responsible for maintaining the Licensed Premises in a clean and tasteful manner during the License Period, consistent with the standards of taste for similar concerts in the United States.

    e.    All stages and other temporary structures including stage equipment, elevated platforms, mobile/portable bleachers and fences must comply with all applicable laws and regulations and may be subject to prior inspection and approval by a governmental authority and IMS, provided IMS shall not unreasonably withhold its approval and shall be deemed to have approved all stages and other temporary structures that are of a type and quality consistent with that customarily used for similar concerts in the United States.

    f.    All merchandise to be sold in the Licensed Space must be displayed, stored and sold from a mobile trailer unit or professional portable tenting with proper display area and self-contained storage.

    g.    The boundaries of any display space identified in Section 1 may not be exceeded and shall contain completely all elements of the display, including but not limited to restroom facilities, generators, light towers, storage units, office trailers, tractor/trailers, rubbish containers, personal vehicles, hoisting equipment, rigging, stakes, entrance structures, guy wires. If the dimensions and location of the display space have been specified in Section 1 or subsequent to execution of this Agreement, they shall not be changed during installation. Motor vehicles not a part of a display are only permitted in parking lots open to the public.

    h.    All portions of the Event, including viewing areas, exhibits, kiosks, interactive displays, and stages that are open and available to Invitees and shall be accessible to individuals with disabilities, and shall comply with the Americans with Disabilities Act (ADA).

    i.    Upon consent from IMS, not to be unreasonably withheld, Licensee may "plug in" customary power and/or telecommunications cords into currently existing standard household power outlets (120 volt convenience receptacles) or currently existing standard telephone jacks. Any equipment, device or system requiring connections to other services must be connected and disconnected by IMS.

    j.    Operation of the Event shall immediately cease if so instructed by IMS or public safety officials acting in good faith due to severe weather materially threatening the attendees of the Event or otherwise based on legitimate concern for public safety. Licensee shall be prepared to lower, dismantle, and/or secure as required any parts of the display or vendor area that are unstable, susceptible to damage or otherwise pose an elevated hazard during high winds, lightning, and heavy rain. Licensee shall insure that display is fabricated and installed

6

in such a manner as to be quickly disassembled, lowered and/or secured as required to insure the safety of the general public during severe weather.

k.   IMS safety personnel will be onsite during the Event to provide security for the Event and its attendees. If Licensee requires additional security for the Event, IMS will assist in making these arrangements through an IMS-approved security firm at Licensee's additional expense.

15.   **Miscellaneous.**

a.   **Assignment.** Licensee may not assign or transfer any of its rights or obligations under this Agreement without the prior written consent of IMS.

b.   **Entire Agreement.** This Agreement constitutes the entire understanding between the parties to this Agreement with respect to the subject matter of this Agreement and shall be deemed to supersede all prior agreements, whether written or oral, and the terms and provisions of any such prior agreements shall be deemed to have been merged into this Agreement. Notwithstanding the foregoing, IMS and Licensee hereby acknowledge and agree that they intend to enter into, and are currently negotiating, an overall exclusive agreement between each other pursuant to which Licensee would be the exclusive promoter of music-related events at the Licensed Premises for a term of four (4) years from the date of the Event, with an exclusive six (6) month first negotiation right to extend such term (the "Overall Agreement"). At such time, if ever, that such Overall Agreement is entered into, this Agreement shall be deemed to be superseded thereby (except as may be expressly provided otherwise in the Overall Agreement), and the Event shall be deemed to have been undertaken pursuant to the terms and conditions of the Overall Agreement.

c.   **Modification and Waiver.** No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by both parties. No waiver of any breach or violation of any of the provisions of this Agreement shall constitute or shall be deemed to constitute a waiver of any other breach or violation of any provision of this Agreement, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

d.   **Public Statements and Press Releases.** The Licensee agrees to obtain IMS's pre-approval, not to be unreasonably withheld or delayed, and to coordinate the content and timing of all public statements and press releases concerning the relationship governed by this Agreement.

e.   **Notice.** All notices required to be given under this Agreement or which the parties may desire to give under this Agreement shall be in writing and (a) hand delivered personally; or (b) delivered by facsimile transmission if receipt is confirmed to the party whom notice is to be given; or (c) addressed and sent by certified or registered mail, postage prepaid and return receipt requested to the parties. Notices to Licensee shall be directed to the addresses provided on Page 1, to the attention of the Head of Business Affairs and to the Chief Financial Officer. Copies of all notices to Licensee shall be simultaneously sent to *Grubman Shire & Meiselas, P.C., 152 West 57th Street, New York, NY 10019, Attention: Donald R. Friedman, Esq., facsimile 212-554-0444*. Notices to IMS shall be directed to *President, 4790 W. 16th Street, Indianapolis, IN 46222, facsimile 317-492-6482, with a copy to General Counsel, 4790 W. 16th Street, Indianapolis, IN 46222, facsimile 317-492-6490*. If either party wishes to alter the address to which notices to it are sent, it may do so by providing the new address, in writing, to the other party by one of the methods set forth in this Section 15(f). All notices addressed in accordance with this Agreement shall be effective when received if delivered by mail or, if personally delivered, the date on which delivery is made.

f.   **Remedies.** All rights and remedies provided in this Agreement shall be cumulative, and shall not be exclusive of one another or of any remedies available at law or in equity. Under no circumstances shall either party be liable for consequential, special or incidental damages.

g.   **Trademarks.** Except as set forth elsewhere in the Agreement, this Agreement does not grant Licensee any right or license to use any trademarks, service marks, copyrights or other intellectual property rights of IMS other than to identify the location of the Event, and any such use by Licensee is strictly prohibited. If IMS grants Licensee a license in Section 1 or elsewhere in the Agreement, the Licensee shall have a royalty-free, non-exclusive, limited, non-transferable license to use the specified Event Mark or IMS marks ("IMS Marks") in the United States for specified purpose requirements set forth in Section 1 or elsewhere in this Agreement. All artwork, design and premiums using the IMS Marks are subject to any applicable approval rights of IMS in accordance with the terms of this Agreement in each instance. The manufacturer of any premium bearing an IMS Mark must be an officially-approved licensee of IMS. Requests for the IMS Marks and approval shall be

7

361793.8
040615

submitted to Manager of Licensing, Indianapolis Motor Speedway, 4790 West 16th Street, Indianapolis, Indiana 46222, (317) 492-6792.

h.    Taxes.  IMS shall notify Licensee on a timely basis of the correct rates for calculating Licensee's taxes to be assessed on all amounts received by Licensee in respect of ticket sales for the Event to enable Licensee to prepare and timely file any and all tax returns or reports required to be filed in respect of any taxes owed by Licensee in connection with ticket sales for the Event.

i.    Compliance with Law. Licensee shall obtain all permits and comply with all laws applicable to its activities hereunder.

IN WITNESS WHEREOF, each party acknowledges that a duly authorized representative of such party has executed this Agreement as of the date set forth below, and acknowledges that such party has read, understands and agrees to the terms and conditions of this Agreement.

INDIANAPOLIS MOTOR SPEEDWAY, LLC

By: _____

Printed: J. Douglas Boles

Title: President

Date: 4/6/15

LICENSEE: GLOBAL LIVE, INC.

By: _____

Printed: Charles C. Ciongoli

Title: Executive VP & CFO

8

**INDIANA COMMERCIAL COURT**

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | )SS: | |
| COUNTY OF MARION | ) | CAUSE NO. |

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

     Plaintiff,

  v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

     Defendants.

## NOTICE OF EXCLUSION OF CONFIDENTIAL INFORMATION
## THAT IS NOT NECESSARY TO THE DISPOSITION OF THE CASE

     Contemporaneous with the filing of this notice, Plaintiff has omitted confidential

information in accordance with Administrative Rule 9(G). Pursuant to Administrative Rule

9(G)(5)(b)(ii)(a), Plaintiff provides this notice that the omitted confidential information "is not

necessary to the disposition of the case" and, therefore, "the excluded Court Record need not be

filed or tendered in any form and only the Public Access version is required." Admin. Rule

9(G)(5)(b)(i).

| Document to Be Excluded from Public Record | Administrative Rule 9(G) grounds upon which exclusion is authorized |
|---|---|
| Pages 9 and 10, titled "Schedule A," to Exhibit A of the Complaint | Administrative Rule 9(G)(2)(b); Ind. Code §§ 24-2-3-2, 24-2-3-6 |

Respectfully submitted,

ICE MILLER LLP

/s/ Olga Voinarevich
Angela P. Krahulik, Atty. No. 23036-49
Olga Voinarevich, Atty. No. 32188-48

*Attorneys for Plaintiff, Indianapolis Motor Speedway, LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

2

CONFIDENTIAL

**Filed: 4/21/2017 2:45:45 PM**
NOT FOR PUBLIC ACCESS Myla Eldridge
Clerk
Marion County, Indiana

ACORD® **CERTIFICATE OF LIABILITY INSURANCE**

DATE (MM/DD/YYYY)

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT |
|---|---|
| Arthur J. Gallagher & Co. Insurance Brokers of California, Inc. 505 N. Brand Blvd., Suite 600 Glendale, CA 91203-3944 License No. 0726293 | NAME: S. Corissu Stuckey |
| | PHONE (A/C, No, Ext): (818) 539-1278  FAX (A/C, No): (818) 539-1578 |
| | ADDRESS: |
| | E-MAIL corisso_stuckey@ajg.com |
| | PRODUCER CUSTOMER ID #: |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED Global Entertainment US Holdings, Inc.; Global Live, Inc. their officers, members, directors, representatives, employees, agents, subsidiaries and affiliates 1100 Glendon, Suite 2100 Los Angeles, CA 90024 | INSURER A: New York Marine and General Insurance Co. | 16608 |
| | INSURER B: | |
| | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |

**COVERAGES**  CERTIFICATE NUMBER:  REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY CLAIMS-MADE [X] OCCUR | X | | GL201500004535 | 07/01/2015 | 07/06/2015 | EACH OCCURRENCE | $ |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | **AUTOMOBILE LIABILITY** ANY AUTO ALL OWNED AUTOS SCHEDULED AUTOS X HIRED AUTOS X NON-OWNED AUTOS X PHYSICAL DAMAGE | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | PHYSICAL DAMAGE | $ |
| A | X UMBRELLA LIAB X OCCUR EXCESS LIAB CLAIMS-MADE DEDUCTIBLE X RETENTION | X | | UM201600003146 | 07/01/2015 | 07/06/2015 | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | WC STATU-TORY LIMITS | OTH-ER |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Certificate Holder is included as an Additional Insured but only as respects to claims arising out of the negligence of the Named Insured, as is required by written contract as per blanket Additional Insured endorsements CG 20 11 (01-96), CG 20 23 (10-93) and/or CG 20 34(07-04) as respects the operations of the Named Insured. Regarding Concert performance by the Rolling Stones – Indiana Motor Speedway – 4790 West 16th Street, Indianapolis, Indiana – 07/01/2015 – 07/06/2015 (including load-in and load-out)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Indianapolis Motor Speedway, L.L.C. 4700 West 16th Street, Indianapolis, Indiana 46222 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE *[signature]* |

© 1988-2009 ACORD CORPORATION. All rights reserved.

ACORD 25 (2009/09)  The ACORD name and logo are registered marks of ACORD

**EXHIBIT B**

Filed: 4/21/2017 2:45:45 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) | |
| COUNTY OF MARION | ) | CAUSE NO. |

49D10 17 01 CT C 0 0 5 9 3

| | |
|---|---|
| PAMELA SHEPARD and WILLIAM SHEPARD, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| INDIANAPOLIS MOTOR SPEEDWAY, LLC | ) ) ) |
| Defendant. | ) ) |

**JURY TRIAL DEMAND**

## COMPLAINT FOR DAMAGES

Come now the Plaintiffs, Pamela and William Shepard, and for their cause of action against Defendant, Indianapolis Motor Speedway, LLC, state as follows:

1.    At all times herein mentioned Defendant maintains its corporate headquarters at 4790 West 16th Street, Indianapolis, Indiana.

2.    On or about July 4, 2015, Plaintiff Pamela Shepard, was a business invitee of the Indianapolis Motor Speedway, LLC, Marion County, Indianapolis Indiana.

3.    At said time and place, Plaintiff Pamela Shepard fell after striking a concealed hazard.

4.    Defendant failed to provide adequate illumination for business invitees exiting the Rolling Stones concert at night.

5.    At said time and place Defendant, by and through its agents or employees, was negligent in the maintenance and upkeep of its premises.

6.    Defendant had notice of the hazardous condition.

**EXHIBIT C**

7.     As a proximate result of Defendant's careless and negligent acts and/or omissions Plaintiff, Pamela Shepard, has suffered the following damages:

      a.     severe physical injuries;

      b.     pain and suffering;

      c.     emotional distress;

      d.     reasonable medical expenses; and

      e.     disfigurement.

8.     That as a direct and proximate result of Defendant, Indianapolis Motor Speedway, LLC's careless and negligent acts and/or omissions, Plaintiff William Shepard has suffered the following damages:

      a.     he has been deprived of the love, care, affection and services of his wife; and

      b.     he has had to provide for the nursing care and assistance of his wife.

WHEREFORE, Plaintiffs, by Counsel, demand judgment against the Defendant, Indianapolis Motor Speedway, LLC, in an amount which will fully and fairly compensate them for their injuries and damages, for their costs, for TRIAL BY JURY, and for all other just and proper relief in the premises.

Respectfully submitted,

Merry M. Fountain
Attorney No. 20125-49
THE FOUNTAIN LAW FIRM
10401 North Meridian, Suite 209
Indianapolis, Indiana 46290
(317) 423-4242
Attorney for Plaintiffs

2

**49D01-1704-PL-016106**
Marion Superior Court, Civil Division 1

Filed: 4/21/2017 2:16:16 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

## INDIANA COMMERCIAL COURT

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | )SS: | |
| COUNTY OF MARION | ) | CAUSE NO. |

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

      Plaintiff,

      v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

      Defendants.

### IMS'S COMPLAINT AGAINST GLOBAL LIVE INC. AND NEW YORK MARINE GENERAL INSURANCE COMPANY A/K/A/ PROSIGHT SPECIALTY INSURANCE GROUP, INC.

      Plaintiff, Indianapolis Motor Speedway, LLC ("IMS"), by counsel, for its Complaint against Defendants, Global Live, Inc. ("Global Live") and New York Marine General Insurance Company a/k/a ProSight Specialty Insurance Group, Inc. ("ProSight") (collectively, "Defendants"), alleges and states:

### PARTIES, JURISDICTION AND VENUE

      1.    IMS is a limited liability company organized under the laws of the State of Indiana, with its principal place of business in Marion County at 4790 W. 16th Street, Indianapolis, Indiana 46222.

      2.    At all relevant times, Global Live was a domestic corporation with its principal place of business located at 1100 Glendon Avenue, 21st Floor, Los Angeles, California 90024.

      3.    At all times relevant, ProSight was a domestic corporation with its principal place of business located at 9 Maiden Lane, 27th Floor, New York, New York 10038.

4.     This Court may exercise personal jurisdiction over Defendants because Defendants have transacted business in the State of Indiana, have entered into agreements covering performance of duties in the State of Indiana, and have caused harm in the State of Indiana.

5.     Venue is also proper in this Court because a substantial part of the events or omissions giving rise to the alleged claims at issue occurred in Marion County.

## FACTS

### Contracts between IMS and Defendants

6.     On or about April 6, 2015, IMS and Global Live entered into a valid and enforceable Special Event Agreement (the "Event Agreement").  A true and correct copy of the Event Agreement, with trade secret and commercially and financially sensitive information redacted, is attached hereto as **Exhibit A**.

7.     The Event Agreement allowed Global Live to host a concert featuring the musical group professionally known as "The Rolling Stones" at the Indianapolis Motor Speedway on or about July 4, 2015 (the "Event").

8.     The Event Agreement set forth obligations and responsibilities of the parties in connection with the Event.

9.     Global Live's contractual duties included, *inter alia*, organizing, hosting, and sponsoring multiple aspects of the Event, including but not limited to marketing expenses, ticketing costs, event production, labors costs, permits, and *event insurance*. *See* Ex. A, at 1-3.

10.     Specifically, Global Live was expressly obligated to provide coverage for *all* claims arising in connection with the Event. Ex. A, at 4, ¶ 9.

2

11. The Event Agreement repeatedly refers to the concert attendees as Global Live's "invitees." *See* Ex. A, at 4, ¶ 11.

12. Under the pertinent terms of the Event Agreement, Global Live was required to "obtain and maintain at its expense commercial general liability insurance *covering the Event...for full coverage of claims* to a limit of at least         per occurrence and in the aggregate (the "Policy")." Ex. A, at 4, ¶ 9 (emphasis added).

13. According to Paragraph 9(b) of the Event Agreement, "[t]he Policy specifically covers *the Event and* [Global Live's] obligations to IMS." Ex. A, at 4.

14. At all relevant times, ProSight was Global Live's commercial general liability insurer.

15. As required under the terms of the Event Agreement, IMS was added as an additional insured to Global Live's Commercial General Liability ("CGL") insurance policy by a Certificate of Liability Insurance issued by ProSight for CGL policy number GL 201500004535 with a period of July 1, 2015 to July 6, 2015 (the "Policy"). A true and correct copy of the Certificate of Liability Insurance, with trade secret and commercially and financially sensitive information redacted, is attached as **Exhibit B**.

16. To date, IMS has never been provided with a copy of the complete CGL Policy.

17. The Event Agreement further specifies that the coverage under the Policy must explicitly include IMS "as an additional insured under the Policy" and indicates that the coverage provided to IMS is to be "primary to any other coverage(s) available to IMS." Ex. A, at 4, ¶ 9(a), (c).

18. The Event Agreement further specifies that "[t]he amount of insurance coverage required to be obtained by [Global Live] is minimum coverage, and it shall be [Global Live's]

3

obligation to purchase Insurance for full coverage of claims . . . *to protect itself and provide*

*Indemnity to IMS Group based upon the activities to occur in connection with the Event.*" Ex. A,

at 4, ¶ 9 (emphasis added).

19.     The Indemnity provision of the Event Agreement provides as follows:

> *To the fullest extent possible, it is the intention* of [Global Live]
> and IMS that the Indemnities set forth below and *the insurance
> coverage maintained by [Global Live] pursuant to Section 9 will
> provide liability protection to [Global Live] and IMS Group for
> claims arising out of [Global Live]'s and its invitees' presence at
> the Speedway during the Event*... [I]f and the extent the coverage
> maintained by [Global Live]...for IMS Group's benefit does not
> hold IMS Group harmless, *[Global Live] shall indemnify, defend
> and hold harmless IMS Group for third party claims and liability
> arising in connection therewith, including costs and reasonable
> attorneys' fees arising from (i) [Global Live's] or its Invitees' use
> of the Speedway* or (ii) the negligence or willful misconduct of
> [Global Live] or its Invitees. . .

Ex. A, at 5, ¶ 11(a) (emphasis added).

20.     To the extent there are any known or unknown claims arising out of the Event,

ProSight is contractually obligated to provide a defense and indemnity to IMS, as its insured,

under the Policy.

21.     Moreover, to the extent ProSight fails to provide the required defense and

indemnity to IMS, Global Live must satisfy its duty to defend and indemnify IMS from any such

claims.

## The Underlying Lawsuit

22.     On or about July 4, 2015, Global Live hosted the Event at Indianapolis Motor

Speedway.

23.     Upon information and belief, non-parties, Pamela Shepard and William Shepard

(collectively, the "Shepards") attended the Event.

4

24.     Upon information and belief, the Shepards tripped over a curb and fell while walking in the tunnel at the Indianapolis Motor Speedway, exiting the Event.

25.     Upon information and belief, Mr. Shepard sustained minor injuries to his leg.

26.     Upon information and belief, Mrs. Shepard sustained injuries to her left elbow and right shin, which required surgical intervention and other treatment.

27.     On or about December 28, 2016, the Shepards filed a Complaint for Damages against IMS (the "Shepards' Complaint") in an action now pending in Marion County, Indiana entitled *Pamela Shepard and William Shepard v. Indianapolis Motor Speedway, LLC*, Cause No. 49D10-1701-CT-000393 (the "Underlying Lawsuit"), alleging IMS is liable to the Shepards for damages arising from the allegations set forth in the Shepards' Complaint. A true and correct copy of the Shepards' Complaint is attached hereto as **Exhibit C**.

28.     The Shepards' Complaint alleges that the Shepards' claims arise out of the incident described in Paragraphs 24 through 26 above and further alleges that, by failing to provide adequate illumination for business invitees exiting the Event, IMS breached its duty of care to the Shepards (the "Claims").

29.     While IMS denies the aforementioned allegations and any liability on behalf of IMS, the Claims and the Underlying Lawsuit are squarely within the scope contemplated by the Event Agreement between IMS and Global Live and the Policy issued by ProSight (as evidenced by the Certificate of Liability Insurance issued to IMS by ProSight).

30.     Accordingly, because ProSight was obligated to provide insurance coverage protection for all "claims arising out of [Global Live]'s and its invitees' presence at the Speedway during the Event[,]"and due to IMS's status as ProSight's additional insured, ProSight

5

is required to defend the Claims and to indemnify IMS for any damages in connection with the claims in the Underlying Lawsuit. *See* Ex. A.

31.     Moreover, to the extent ProSight refuses to defend the Underlying Lawsuit and indemnify IMS in connection with the Underlying Lawsuit and/or the Claims, Global Live is contractually obligated to do so itself.

32.     IMS notified Global Live and ProSight of the Shepards' Claims within days of the Event and ProSight acknowledged the receipt of said information. However, to date, IMS has contacted Global Live and/or ProSight regarding the Claims multiple times over a period of more than 18 months, but has not received any substantive response.

33.     The Underlying Lawsuit has continued, and is still pending in Marion County, and IMS is forced to defend itself as to the Claims in Global Live's and ProSight's absence.

34.     Despite numerous demands to assume their responsibilities, Defendants have committed multiple breaches of the Event Agreement and/or the Policy by failing to defend, indemnify, and hold IMS harmless in connection with the Underlying Lawsuit, as they were expressly obligated to do under the terms of the Event Agreement and the Policy.

35.     IMS has fulfilled all of its duties, conditions, and prerequisites to coverage under the Event Agreement and the Policy with respect to the Claims and/or the Underlying Lawsuit.

36.     IMS is thus entitled to an award of all amounts and all expenses and costs incurred as a result of IMS's defense of the Underlying Lawsuit and payment for the same on an as-incurred basis going forward, plus interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit (including any amount paid by vendor or in settlement), and a declaration pursuant to Indiana Code § 34-14-1 *et seq.* that Defendants are obligated to provide

6

insurance coverage, indemnify, and hold IMS harmless in connection with the Underlying Lawsuit and/or the Claims.

## COUNT I

### BREACH OF CONTRACT AGAINST PROSIGHT

37.     IMS restates and incorporates the allegations of paragraphs 1 through 36 above as if fully set forth herein.

38.     IMS and ProSight are parties to the Policy, which is a valid and enforceable agreement.

39.     As part of the Policy, IMS is entitled to coverage, defense, and indemnity from ProSight for any claims that have been or may be asserted against IMS relating to the Event.

40.     Upon information and belief, no terms or exclusions in the Policy unambiguously exclude coverage for the Underlying Lawsuit and the Claims asserted in the Underlying Lawsuit are within the scope of coverage contemplated by the Event Agreement and the Policy.

41.     As such, ProSight has a duty to provide coverage, defend, and indemnify in the Underlying Lawsuit.

42.     Despite numerous demands to comply with the terms of the Policy, ProSight has failed to provide coverage, to defend the Underlying Lawsuit, or to acknowledge its duties to IMS for any and all claims related to the Event, including the Claims asserted in the Shepards' Complaint, which constitutes a material breach of ProSight's duties under the Policy.

43.     IMS has been, and will continue to be, damaged by ProSight's breach of the Policy.

44.     As a result, IMS is entitled to direct, compensatory, consequential, and incidental damages.

7

45.     Upon information and belief, all conditions precedent to coverage under the Policy have been satisfied or waived and no exclusion within the Policy precludes coverage for the Underlying Lawsuit and the Claims.

## COUNT II

### PROSIGHT'S BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

46.     IMS restates and incorporates the allegations of paragraphs 1 through 45 above as if fully set forth herein.

47.     IMS and ProSight are parties to the Policy, executed in favor of IMS (the insured under the Policy), which is a valid and enforceable policy of insurance.

48.     Indiana law imposes upon insurers, such as ProSight, an obligation of good faith and fair dealing with their insureds.

49.     ProSight's obligation of good faith and fair dealing includes an obligation to refrain from causing an unfounded delay in making payment; making an unfounded refusal to pay policy proceeds; exercising an unfair advantage to pressure an insured into settlement of a claim; and, deceiving the insured.

50.     Despite IMS's numerous attempts to obtain cooperation from ProSight with regard to ProSight's obligations under the Policy, ProSight has refused to acknowledge IMS's right to coverage, defense, and indemnity under the Policy, has failed to respond to IMS's tender of the claim, and failed to disclaim or accept coverage or to provide IMS a defense in connection with the Underlying Lawsuit.

51.     As set forth herein, IMS has been forced to defend itself against the Underlying Lawsuit because ProSight wrongfully failed to provide it a defense under the Policy.

8

52. IMS has and continues to incur costs, expenses, and attorneys' fees due to ProSight's breaches of its duties to its policyholder, and failure to provide coverage and defend IMS in the Underlying Lawsuit.

53. ProSight's breaches of its fiduciary duties to its policyholder are such that punitive damages, including treble damages, and attorneys' fees are appropriate.

## COUNT III

## DECLARATORY JUDGMENT AGAINST PROSIGHT

54. IMS restates and incorporates the allegations of paragraphs 1 through 53 above as if fully set forth herein.

55. The above allegations describe an actual and justiciable controversy between IMS and ProSight regarding their rights and obligations under the Policy.

56. ProSight is obligated to provide IMS a defense and indemnification for claims to which the insurance applies, including the Claims asserted in the Underlying Lawsuit.

57. Upon information and belief, no terms or exclusions in the Policy unambiguously exclude coverage for the Underlying Lawsuit. The Claims asserted in the Underlying Lawsuit are within the scope of coverage contemplated by the Policy.

58. ProSight has wrongly failed to abide by its obligations to defend and indemnify IMS in the Underlying Lawsuit.

59. The issues in this action are ripe for decision and relate to the construction and validity of the Policy, including the rights of IMS to be provided a defense in the Underlying Lawsuit.

60. IMS therefore seeks a declaration that ProSight is obligated to provide insurance coverage for any and all claims raised in the Underlying Lawsuit.

9

61.     IMS further seeks a declaration that ProSight is obligated to otherwise fully defend, indemnify and hold IMS harmless for any and all claims made or otherwise made in the Underlying Lawsuit up to the applicable limits of the Policy.

## COUNT IV

## BREACH OF CONTRACT AGAINST GLOBAL LIVE

62.     IMS restates and incorporates the allegations of paragraphs 1 through 61 above as if fully set forth herein.

63.     IMS and Global Live are parties to the Event Agreement, which is a valid and enforceable agreement.

64.     Under the terms of the Event Agreement, Global Live was obligated to procure insurance for any claims relating to the Event, including the Claims raised in the Underlying Lawsuit. The coverage was to be primary to any other coverage(s) available to IMS.

65.     However, if Global Live's insurance fails to provide coverage, defense, and indemnification for claims arising from the Event, including the Claims raised in the Underlying Lawsuit, Global Live is obligated to do so itself.

66.     ProSight has failed to comply with its obligations and to provide defense and indemnification to IMS as its insured, as evidenced by the Certificate of Liability Insurance.

67.     Accordingly, under the Event Agreement, IMS is entitled to reimbursement of its defense and indemnity from Global Live for any claims that have been or may be asserted against IMS relating to the Event, including the Claims alleged in the Underlying Lawsuit, as well as all interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit (including any amount paid by vendor or in settlement).

10

68.     Despite numerous demands to comply with the terms of the Event Agreement, Global Live has breached the Event Agreement by failing to defend the Underlying Lawsuit and failing to hold IMS harmless for the Claims raised in the Underlying Lawsuit, which constitute material breaches of the Event Agreement.

69.     Under Indiana law, the disclaimer of a contractual duty is a breach of contract even if the time specified in the contract for performing the duty has not yet arrived.

70.     IMS has been, and will continue to be, damaged by Global Live's breach of the Event Agreement.

71.     As a result, IMS is entitled to direct, compensatory, consequential, and incidental damages, including its fees and costs in the Underlying Lawsuit and in this action.

72.     Upon information and belief, all conditions precedent to this action have been waived or have been fulfilled.

## PRAYER FOR RELIEF

WHEREFORE, IMS respectfully requests that the Court grant it the following relief:

A.     A declaratory judgment that ProSight is obligated to provide coverage, including both defense and indemnity, in connection with the Underlying Lawsuit; Immediate payment for any and all amounts and all expenses and costs incurred as a result of IMS's defense of the Underlying Lawsuit and payment for the same on an as-incurred basis going forward, plus all interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit;

B.     Immediate payment for any and all amounts and all expenses and costs incurred as a result of IMS's defense of the Underlying Lawsuit and payment for the same on an as-incurred basis going forward, plus all interest, attorneys' fees, court costs, and expenses IMS incurs in the Underlying Lawsuit;

11

C.    A judgment in IMS's favor and against the Defendants in an amount that will fully compensate IMS for its damages and losses, including compensatory, consequential and incidental damages and prejudgment interest, including but not limited to an award of costs, fees (including attorneys' fees), treble damages, punitive damages, and litigation expenses in this action, with interest; and

D.    For all such other relief that is just and proper in the premises.

Respectfully submitted,

ICE MILLER LLP

/s/ Olga Voinarevich
Angela P. Krahulik, Atty. No. 23036-49
Olga Voinarevich, Atty. No. 32188-48

*Attorneys for Indianapolis Motor Speedway, LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

12

**49D01-1704-PL-016106**

Marion Superior Court, Civil Division 1

Filed: 4/21/2017 2:16:16 PM
Myla A. Eldridge
Clerk
Marion County, Indiana



## SPECIAL EVENT AGREEMENT

THIS SPECIAL EVENT AGREEMENT ("Agreement") is effective as of April ___, 2015 (the "Effective Date"), by and between Indianapolis Motor Speedway, LLC, an Indiana limited liability company located at 4790 West 16th Street, Indianapolis, Indiana 46222 ("IMS"), and the licensee identified in Section 1. In consideration of the mutual covenants set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement agree as follows:

**1. Licensee Identification and Event Details.**

Company Name: Global Live, Inc, ("Licensee")

Address: 1100 Glendon Avenue, 21st Floor, Los Angeles, CA 90024

E-Mail: chuck.ciongoli@thisglobal.com

Contact Person: Charles Ciongoli

Telephone Number: 310-774-4700



Event Name: Rolling Stones Concert

Event Date(s) and Times: July 4, 2015, 6:00 p.m. ~ [_____]. Actual performance time to be mutually agreed by the parties; Camping and RV's to be allowed on the Licensed Premises (as defined below) from July 3, 2015 through the end of the Event, subject to the consumer's execution of any standard license agreements normally required by IMS.

Set Up Date(s) and Time: Beginning Sunday, June 28, 2015 at 8:00 a.m. Access to the Licensed Premises to be coordinated with IMS personnel. Licensee shall use reasonable efforts to cause its Invitees that will be conducting set-up, tear-down and other work in connection with the Event to execute standard consent and liability releases normally required by IMS prior to such Invitees being allowed access to the Licensed Premises.

Tear Down Date(s) and Times: To be completed by Monday, July 6, 2015 by 11:59 p.m. Access to the Licensed Premises to be coordinated with IMS personnel.

Description of Event: Licensee will host a concert featuring the musical group professionally known as "The Rolling Stones" (the "Artist") at the Indianapolis Motor Speedway (the "Speedway") in and around the Plaza, Pavilion, Media Center, Moto GP garages, Gir Timers Room, North Chalet, oval track and such other locations as shall be determined by IMS and Licensee (the "Licensed Premises"). The event will consist of the following activities and such other activities as shall be agreed between IMS and Licensee, all of which shall comply with the terms of this Agreement (collectively, the "Event"):

    (i) concert; and
    (ii) fireworks display.

Included Services and Equipment to be provided by IMS:

a) Ambulance and Other Medical Services. IMS will secure ambulatory services for the Event and in addition will make available use of its onsite hospital facility which IMS will cause to be staffed and operational at all times during the Event. IMS will provide the foregoing to Licensee's expense, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

b) Facilities Staff. IMS shall provide Facilities Staff members, who will be available for the entire Event. The number of such Facilities Staff members and their functions (e.g., security, ushers, ticket takers) shall be mutually agreed prior to the Event and shall be reasonable for an event of this size and type, and shall include, but not be limited to, staff and equipment for cleaning/housekeeping services, police and fire services, camping operations and parking and traffic services. IMS will provide the foregoing to Licensee's expense, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

36170218
040515

**EXHIBIT A**

c) *Video Boards.* Subject to IMS's pre-approval of the advertiser, Licensee shall be permitted to display its and its affiliated companies' advertising and imagery, in accordance with *Section 7(d)* of the Agreement, on IMS's video boards.

d) *Public Announcements.* IMS shall make available, limited use of the public address system. Announcers and all content shall be provided by Licensee, subject to IMS pre-approval.

e) *Food and Beverage Trucks.* The parties agree that Levy Premium Foodservice Limited Partnership shall be the food and beverage service provider at the Event. IMS shall make arrangements for such service, including without limitation, the arrangement of food and beverage truck vendors desired by Licensee.

f) *Golf Carts.* IMS shall make available to Licensee IMS' golf carts for use by Licensee's production personnel at no additional charge. Subject to execution of IMS' Consent, Indemnification & Liability Release Agreement for Use of a Golf Cart, any and all other golf carts operated on the premises of the Speedway, whether Licensee-owned or rented, must be registered with IMS. All golf cart operators must be at least 16 years of age. If use of a golf cart is part of this Agreement, then the IMS Credential Office will provide Licensee an IMS golf cart voucher ("*GC Voucher*") upon receipt and approval of: this Agreement, Licensee's certificate of insurance, and a completed golf cart registration form. The GC Voucher must be redeemed at the IMS Safety Office for an IMS golf cart permit/sticker ("*GC Permit*"). The GC Permit must be placed on Licensee's golf cart. An authorized representative of Licensee must execute IMS' standard waiver and release of liability and indemnity agreement for golf carts and initial a copy of IMS' standard rules of operation for golf carts at the time of redeeming the GC Voucher for a GC Permit. All golf carts operated on the premises of the Speedway, regardless of who owns the golf cart(s), must be registered with IMS.

g) *Fireworks.* To be provided by IMS at Licensee's expense, in accordance with a budget to be mutually agreed in advance, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up. IMS acknowledges that in addition to the fireworks display to which the preceding sentence applies, Artist shall be entitled to include a fireworks display as part of Artist's concert, and that IMS will make available at no cost the services of a supervisory pyrotechnician in connection therewith.

h) *Fencing.* To be provided by IMS at Licensee' expense, in accordance with a budget to be mutually agreed in advance, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

i) *Light towers.* To be provided by IMS at Licensee's expense, in accordance with a budget to be mutually agreed in advance, provided the amount charged to Licensee shall be IMS' actual cost therefor on a "pass-thru" basis, excluding any overhead charge and without mark-up.

Additional Services and Equipment: If Licensee's request IMS facilitates on behalf of Licensee a third party rental of equipment or engagement of third party services, Licensee will be responsible for the actual invoice price of such rental or services upon presentation of the applicable invoice with respect thereto at settlement. Notwithstanding anything contained in this Agreement to the contrary, subject to coordination with IMS personnel, IMS owned or leased equipment will be made available for Licensee's use in connection with the Event at no charge.

Additional responsibilities of Licensee:

a) At no cost to IMS, Licensee agrees to provide IMS with a 60'X 60' display area in the Plaza.

b) All labor costs not otherwise provided for above, including, without limitation, the costs of stage hands, rigging personnel, loaders and unloaders.

c) Ticketing costs including credit card fees.

d) Event Production, including, without limitation, staging, platforms, risers, and barricades, including the equipment and costs therefor except as otherwise provided in this Agreement.

e) Event insurance as set forth below.

f) Permits, if applicable, with respect to the Event.

g) Advertising and marketing expenses with respect to the Event.

2

Payment: The License Fee and Other Fees are due and payable upon settlement of the Event, which shall take place within five (5) business days following the completion of tear down.

2.     License. IMS grants to Licensee a limited, non-transferable and non-exclusive license ("License") to use designated areas during the Event and the set up and tear down periods for the Event as set forth above in accordance for customary standards for comparable events in the United States. This Agreement does not create nor convey any legal title, leasehold or other legal, equitable or beneficial property interest in or to the Speedway.



4.     Services and Equipment. IMS shall provide or arrange for all included Services and Equipment as set forth above, and any Additional Services and Equipment requested by Licensee and agreed to by IMS. Third party vendors and service providers with respect to Additional Services and Equipment requested by Licensee shall be subject to Licensee's and IMS' mutual approval, not to be unreasonably withheld, and any such services and equipment must be of "first class" quality.

5.     Open and Close Times and Tear Down. Unless specified in Section 1, open and close times and tear down times shall be mutually determined by IMS and Licensee.

6.     Laps. In the event that persons are participating in hot laps or track laps that are approved by IMS they must be at least eighteen (18) years old; possess valid, government-issued photo identification; and execute all IMS required consent and liability releases.

7.     Commercial Transactions.

a.    Generally. Unless otherwise set forth in Section 1 or this Section 7, IMS prohibits (i) all commercial transactions at the Speedway, including but not limited to the sale of food, alcoholic and nonalcoholic beverages, and merchandise and (ii) all distribution of products (including donated products), samples and/or premiums (non-saleable articles bearing trademarks, logos or advertising used to promote or publicize any product or service). Licensee shall ensure that its invitees (as defined in Section 11), are aware of and comply with the terms and conditions regarding commercial transactions in this Agreement.

b.    Food and Beverages. IMS shall arrange for Levy to provide food and beverage concessions specified in Section 1 at IMS designated concessions and food and beverage truck areas, and all hospitality food and beverages shall be provided by Levy or IMS-approved caterers at Licensee's additional cost.

c.    Merchandise. Licensee and its contractors may sell Event merchandise in IMS designated areas so long as the Event merchandise does not display any IMS trademark. Notwithstanding the foregoing, Licensee and its contractors shall be entitled to offer for sale t-shirts and other merchandise displaying designs that identify the Event by the name of the venue. Unless set forth in Section 1, no other sale of merchandise by Licensee or its contractors is permitted, Licensee represents, warrants and covenants that, prior to the Event and continuing throughout the Event, Licensee or its contractors shall secure and maintain a proper license from any and all third parties whose trademarks, logos, brands and/or other intellectual property appear on the merchandise/services being offered/displayed at the Speedway. Licensee agrees to permit IMS (and its representatives) access during normal business hours to Licensee's records pertaining to such licenses for the purpose of verifying the existence of such licenses. In the event Licensee cannot demonstrate that it or its contractors hold a proper license for any merchandise/services being offered/displayed at the Speedway, Licensee agrees that it shall cooperate with IMS to promptly remove such merchandise/services from the Speedway.

3

d. **Advertising and Signs.** Licensee and Artist shall have the right to solicit third-party sponsors to be sponsors for the Event and to for and/or in connection with the Event, including any sponsorship advertising of or during the Event. Licensee shall provide IMS in advance a list of potential sponsors and advertisers, and IMS shall have the right, exercisable by written notice within two (2) days after Licensee's submission of such list to IMS, to reject any sponsor or advertiser which would cause IMS to be in breach of its existing third party agreements. All sponsorship advertising and/or promotional displays and signage at the Speedway of any sponsors and advertisers rejected by IMS pursuant to the preceding sentence are strictly prohibited. IMS hereby pre-approves the use of Artist's logos in advertising for the Event and otherwise at the Event.

e. **Sweepstakes.** Licensee shall not conduct a sweepstakes, raffle or similar activity in connection with the Event without the pre-approval of IMS, Licensee must comply with all laws and obtain all permits with respect to such activities and must provide IMS evidence thereof prior to the Event.

f. **Consumer Information.** If Licensee collects any information (e.g., name, email address, mail address, mobile number, etc.) in connection with any activity under this Agreement (e.g., via sweepstakes entry forms, if a sweepstakes is pre-approved by IMS, Event registration forms, etc.), provided that to do so will not result in Licensee's breaching any of its third party obligations, Licensee will share such information (collectively "Consumer Information") with IMS within thirty (30) days after collection. Licensee shall use reasonable efforts to ensure that IMS has all necessary right and power to use the Consumer Information in connection with its business. Without limiting any of its obligations under the foregoing, Licensee represents and warrants that: (a) IMS may utilize the Consumer Information in IMS's direct sales, marketing, communication or other outreach activities; (b) Licensee will provide express notice to each person of its intent to share the Consumer Information with IMS and that, upon receipt by IMS, the Consumer Information will be used and maintained by IMS pursuant to its privacy policy at www.indianapolismotorspeedway.com; (c) in connection with any Consumer Information that is an email address or a mobile number, Licensee will seek to obtain and maintain the applicable consumer's express opt-in consent for IMS's use of the same or provide written notice to IMS if opt-in consent was not obtained; and (d) notwithstanding the foregoing or any of the provision in this Agreement to the contrary, Licensee will not provide IMS any Consumer Information for a child under the age of 13 years without IMS's express prior written approval.

8. **Photography/Videography.** Licensee and Artist may take still photos and video recordings of the Event for Licensee's and/or Artist's promotional use as well as internal historical purposes. All other photography and videography arrangements must be pre-approved by IMS, such approval not to be unreasonably withheld, and shall be subject to execution of a Location Release. Other than pursuant to a Location Release, the commercial use or re-sale of any photographs or film footage taken on the grounds of the Speedway is prohibited, provided, however, such restriction shall not apply with respect to behind-the-scenes photos or video recordings. No broadcasts, photographs or videotapes shall imply a relationship between IMS and Licensee other than that permitted under this Agreement.

9. **Insurance.** Prior to the Event, Licensee shall obtain and maintain at its expense commercial general liability insurance covering the Event, including without limitation products and completed operations liability, and a contractual liability endorsement (and covering X,C and U hazards, where applicable; independent contractors; and use of pyrotechnics), for full coverage of claims to a limit of [ ] per occurrence and in the aggregate (the "Policy"); automobile liability insurance on all owned, non-owned and hired autos and equipment operated or otherwise used or displayed during the Event with coverage limits [ ] per occurrence; and workers' compensation in accordance with statutory requirements, including employers liability insurance with a limit of [ ] per claim (but in no event in limits less than those required by law and/or as set forth in the artists' riders, if any); and Event cancellation or postponement coverage in an amount sufficient to cover ticket refunds. Licensee shall deliver a certificate evidencing Licensee's compliance as to insurance coverage to IMS upon execution of this Agreement or the Event will be canceled, and no fees or deposits paid prior to the cancellation will be refunded. The certificate of insurance must demonstrate the following:

    (a)  IMS Group (as defined below) is a certificate holder *and* is included as an additional insured under the Policy;
    (b)  The Policy specifically covers the Event and Licensee's obligations to IMS; and
    (c)  The Policy provides coverage primary to any other coverage(s) available to IMS Group.

The amount of insurance coverage required to be obtained by Licensee is minimum coverage, and it shall be Licensee's obligation to purchase insurance for full coverage of claims as it deems advisable in its business judgment to protect itself and provide indemnity to IMS Group based upon the activities to occur in connection with the Event. In addition, Licensee will require all subcontractors performing work in connection with the Event to include IMS Group as Additional Insureds for comprehensive general liability insurance carried by such subcontractors.

4

361793.8
010615

To support its indemnity obligations as set forth in Section 11(b), IMS shall maintain commercial general liability insurance _____ per occurrence and in the aggregate. In addition, IMS shall have Licensee named as an additional insured for any claims asserted against Licensee that would, if successful, be covered by IMS's indemnity obligations as set forth in Section 11(b).

10.     Representations and Warranties.

a.  Licensee represents and warrants that (i) Licensee has the right to enter into and fully perform every provision of this Agreement; and (ii) the person executing this Agreement on Licensee's behalf has the authority to do so.

b.  IMS represents and warrants that (i) IMS owns the Licensed Premises and that IMS has the right to enter into and fully perform every provision of this Agreement; and (ii) the person executing this Agreement on IMS' behalf has the authority to do so.

11.     Indemnification.

a.  Licensee and Licensee's agents, representatives, employees, contractors and invitees and spectators ("Invitees") shall be provided with access to the Speedway (including both public areas and restricted areas of the Speedway) conditioned upon Licensee's compliance with this Section 11a. To the fullest extent possible, it is the intention of Licensee and IMS that the indemnities set forth below and the insurance coverage maintained by Licensee pursuant to Section 9 will provide liability protection to Licensee and IMS Group for claims arising out of Licensee's and its Invitees' presence at the Speedway during the Event. To the extent that Licensee's insurance holds IMS Group harmless, IMS Group does not require indemnity from Licensee. However, if and to the extent the coverage maintained by Licensee for the Licensee and IMS Group's benefit does not hold IMS Group harmless, Licensee shall indemnify, defend and hold harmless IMS Group for third party claims and liability arising in connection therewith, including costs and reasonable outside attorneys' fees, arising from (i) Licensee's or its Invitees' use of the Speedway or (ii) the negligence or willful misconduct of Licensee or its Invitees or (iii) Licensee's breach of this Agreement and/or its representations and warranties hereunder, provided the applicable claim is reduced to a final adverse judgment or settled with Licensee's prior written consent, not to be unreasonably withheld, provided, however, the foregoing indemnity shall not apply with respect to claims resulting from the breach of IMS' representations, warranties or covenants under this Agreement or from the sole negligence or willful misconduct of the IMS Group or any member thereof. This Section shall survive expiration or termination of this Agreement. "IMS Group" means IMS, Indianapolis Motor Speedway Foundation, Inc., all relevant race sanctioning bodies, and the successors, assigns, officers, directors, owners, members, agents, affiliates and employees of each of them.

b.  IMS shall indemnify, defend and hold harmless Licensee and Artist and the respective successors, assigns, officers, directors, owners, members, agents, affiliates and employees thereof for third party claims and liability arising in connection therewith, including costs and reasonable outside attorneys' fees, arising from (i) the failure of IMS' Equipment, including, without limitation, any software, provided by IMS as set forth under "Included Services and Equipment to be provided by IMS" in Section 1 above in connection with the performance of IMS' obligations hereunder, or (ii) the sole negligence or willful misconduct of IMS or its employees or independent contractors engaged by IMS or any affiliated or related entity, or (iii) IMS' breach of this Agreement and/or its representations and warranties hereunder, provided the applicable claim is reduced to a final adverse judgment or settled with IMS' prior written consent, not to be unreasonably withheld. This Section shall survive expiration or termination of this Agreement.

12.     Cancellation and Refund Policy.  If Licensee cancels the Event in advance of the dates set forth in Section 1 other than as a result of force majeure as set forth in Section 13 or IMS' negligence or fault, IMS shall be entitled to reimbursement of its actual out-of-pocket non-overhead expenses incurred specifically in connection with the Event prior to such cancellation as provided for in this Agreement.  If for any reason the Licensed Premises becomes unavailable in advance of the Event, IMS will promptly notify Licensee and use its best efforts to mitigate any adverse effect on Licensee or on the Event.  If IMS cancels the Event other than as a result of force majeure as set forth in Section 13, in addition to any other rights or remedies that Licensee may have at law or in equity, IMS shall promptly refund to Licensee 100% of the License Fee and any and all fees and deposits paid by Licensee to IMS prior to the cancellation. Licensee assumes the risk of cancellation of all or part of the Event or any portion thereof during the Event for any reason not within IMS' control including without limitation inclement weather.

13.     Force Majeure. The parties' obligation to perform hereunder is subject to acts of God, war, government regulations, disasters, strikes, civil disorder, curtailment of transportation facilities, or other emergencies provided the foregoing are beyond the control of the parties, making it inadvisable, illegal or impossible to hold the Event.

5

361793.8
040615

14.     Maintenance of the Licensed Premises.

a.   Licensee shall maintain order at the Speedway and shall not conduct, and shall use its reasonable efforts not to permit, any activities at the Speedway which (i) are prohibited by any applicable law, regulation, rule or ordinance; (ii) endanger the health or safety of any persons or property; or (iii) violate any rules, regulations, policies, practices or procedures of IMS as amended from time to time by IMS in its sole discretion provided Licensee has previously been notified thereof in writing.

b.   Licensee shall use its good faith reasonable efforts not to commit waste at the Speedway, damage Speedway property or maintain or permit to be maintained a nuisance therein. Licensee shall not apply any substance to any racing or other surface without the consent of IMS. Licensee shall present all licensed space in a tasteful manner appropriate for invitees of all ages. Following the Event, Licensee shall remove any and all trash and debris, clean all surfaces, and otherwise return the Licensed Premises to the same condition, normal wear and tear excepted, as the Licensed Premises was received by Licensee from IMS. Licensee shall be responsible for any and all properly damage and all clean-up costs to the Licensed Premises during or as a result of the Event. All debris shall be placed in containers furnished by IMS. No firearms or other weapons shall be brought onto the grounds of the Speedway.

c.   The integrity of any paved surface of the Licensed Premises shall be maintained at all times, and Licensee shall repair any damage to the surface at Licensee's sole cost. Penetration of the parking surface with tent stakes or similar implements is prohibited.

d.   All displays and trailers are subject to IMS approval, not to be unreasonably withheld. IMS shall be deemed to have approved any display provided such display would not cause IMS to be in breach of any of its third party obligations or otherwise expose IMS to legal liability or material reputational harm.  The inclusion of any Artist logo or other mark on or in connection with any displays or trailers shall not be deemed to expose IMS to reputational harm.  All displays and trailers shall be free standing. Storage on top of any trailer located on the Licensed Premises is prohibited. No one is permitted on top of a trailer located on the Licensed Premises. Licensee shall be solely responsible for maintaining the Licensed Premises in a clean and tasteful manner during the License Period, consistent with the standards of taste for similar concerts in the United States.

e.   All stages and other temporary structures including stage equipment, elevated platforms, mobile/portable bleachers and fences must comply with all applicable laws and regulations and may be subject to prior inspection and approval by a governmental authority and IMS, provided IMS shall not unreasonably withhold its approval and shall be deemed to have approved all stages and other temporary structures that are of a type and quality consistent with that customarily used for similar concerts in the United States.

f.   All merchandise to be sold in the Licensed Space must be displayed, stored and sold from a mobile trailer unit or professional portable tenting with proper display area and self-contained storage.

g.   The boundaries of any display space identified in Section 1 may not be exceeded and shall contain completely all elements of the display, including but not limited to restroom facilities, generators, light towers, storage units, office trailers, tractor/trailers, rubbish containers, personal vehicles, hoisting equipment, rigging, stakes, anchor structures, guy wires. If the dimensions and location of the display space have been specified in Section 1 or subsequent to execution of this Agreement, they shall not be changed during installation. Motor vehicles not a part of a display are only permitted in parking lots open to the public.

h.   All portions of the Event, including viewing areas, exhibits, kiosks, interactive displays, and stages that are open and available to invitees and shall be accessible to individuals with disabilities, and shall comply with the Americans with Disabilities Act (ADA).

i.   Upon consent from IMS, not to be unreasonably withheld, Licensee may "plug in" customary power and/or telecommunications cords into currently existing standard household power outlets (120 volt convenience receptacles) or currently existing standard telephone jacks. Any equipment, device or system requiring connections to other services must be connected and disconnected by IMS.

j.   Operation of the Event shall immediately cease if so instructed by IMS or public safety officials acting in good faith due to severe weather materially threatening the attendees of the Event or otherwise based on legitimate concern for public safety. Licensee shall be prepared to lower, dismantle, and/or secure as required any parts of the display or vendor area that are unstable, susceptible to damage or otherwise pose an elevated hazard during high winds, lightning, and heavy rain. Licensee shall insure that display is fabricated and installed

6

In such a manner as to be quickly disassembled, lowered and/or secured as required to insure the safety of the general public during severe weather.

k.   IMS safety personnel will be onsite during the Event to provide security for the Event and its attendees. If Licensee requires additional security for the Event, IMS will assist in making these arrangements through an IMS-approved security firm at Licensee's additional expense.

16.   Miscellaneous.

a.   Assignment. Licensee may not assign or transfer any of its rights or obligations under this Agreement without the prior written consent of IMS.

b.   Entire Agreement. This Agreement constitutes the entire understanding between the parties to this Agreement with respect to the subject matter of this Agreement and shall be deemed to supersede all prior agreements, whether written or oral, and the terms and provisions of any such prior agreements shall be deemed to have been merged into this Agreement. Notwithstanding the foregoing, IMS and Licensee hereby acknowledge and agree that they intend to enter into, and are currently negotiating, an overall exclusive agreement between each other pursuant to which Licensee would be the exclusive promoter of music-related events at the Licensed Premises for a term of four (4) years from the date of the Event, with an exclusive six (6) month first negotiation right to extend such term (the "Overall Agreement"). At such time, if ever, that such Overall Agreement is entered into, this Agreement shall be deemed to be superseded thereby (except as may be expressly provided otherwise in the Overall Agreement), and the Event shall be deemed to have been undertaken pursuant to the terms and conditions of the Overall Agreement.

c.   Modification and Waiver. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by both parties. No waiver of any breach or violation of any of the provisions of this Agreement shall constitute or shall be deemed to constitute a waiver of any other breach or violation of any provision of this Agreement, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

d.   Public Statements and Press Releases. The Licensee agrees to obtain IMS's pre-approval, not to be unreasonably withheld or delayed, and to coordinate the content and timing of all public statements and press releases concerning the relationship governed by this Agreement.

e.   Notice. All notices required to be given under this Agreement or which the parties may desire to give under this Agreement must be in writing and (a) hand delivered personally; or (b) delivered by facsimile transmission if receipt is confirmed to the party whom notice is to be given; or (c) addressed and sent by certified or registered mail, postage prepaid and return receipt requested to the parties. Notices to Licensee shall be directed to the addresses provided on Page 1, to the attention of the Head of Business Affairs and to the Chief Financial Officer. Copies of all notices to Licensee shall be simultaneously sent to *Grubman Shire & Meiselas, P.C., 152 West 57th Street, New York, NY 10019, Attention: Donald R. Friedman, Esq., facsimile 212-554-0444*. Notices to IMS shall be directed to President, 4790 W. 16th Street, Indianapolis, IN 46222, facsimile 317-492-6462, with a copy to General Counsel, 4790 W. 16th Street, Indianapolis, IN 46222, facsimile 317-492-6490. If either party wishes to alter the address to which notices to it are sent, it may do so by providing the new address, in writing, to the other party by one of the methods set forth in this Section 16(f). All notices addressed in accordance with this Agreement shall be effective when received if delivered by mail or, if personally delivered, the date on which delivery is made.

f.   Remedies. All rights and remedies provided in this Agreement shall be cumulative, and shall not be exclusive of one another or of any remedies available at law or in equity. Under no circumstances shall either party be liable for consequential, special or incidental damages.

g.   Trademarks. Except as set forth elsewhere in the Agreement, this Agreement does not grant Licensee any right or license to use any trademarks, service marks, copyrights or other intellectual property rights of IMS other than to identify the location of the Event, and any such use by Licensee is strictly prohibited. If IMS grants Licensee a license in Section 1 or elsewhere in the Agreement, the Licensee shall have a royalty-free, non-exclusive, limited, non-transferable license to use the specified Event Mark or IMS marks ("IMS Marks") in the United States for specified purpose requirements set forth in Section 1 or elsewhere in this Agreement. All artwork, design and premiums using the IMS Marks are subject to any applicable approval rights of IMS in accordance with the terms of this Agreement in each instance. The manufacturer of any premium bearing an IMS Mark must be an officially-approved licensee of IMS. Requests for the IMS Marks and approval shall be

7

submitted to Manager of Licensing, Indianapolis Motor Speedway, 4790 West 16th Street, Indianapolis, Indiana 46222, (317) 492-6792.

h.    Taxes.  IMS shall notify Licensee on a timely basis of the correct rates for calculating Licensee's taxes to be assessed on all amounts received by Licensee in respect of ticket sales for the Event to enable Licensee to prepare and timely file any and all tax returns or reports required to be filed in respect of any taxes owed by Licensee in connection with ticket sales for the Event.

i.    Compliance with Law.  Licensee shall obtain all permits and comply with all laws applicable to its activities hereunder.

IN WITNESS WHEREOF, each party acknowledges that a duly authorized representative of such party has executed this Agreement as of the date set forth below, and acknowledges that such party has read, understands and agrees to the terms and conditions of this Agreement.

INDIANAPOLIS MOTOR SPEEDWAY, LLC

By: _____

Printed: J. Douglas Boles

Title: President

Date: 4/6/15

LICENSEE: GLOBAL LIVE, INC.

By _____

Printed: Charles C. Ciongoli

Title: Executive VP & CFO

8

## INDIANA COMMERCIAL COURT

STATE OF INDIANA ) IN THE MARION SUPERIOR COURT
)SS:
COUNTY OF MARION ) CAUSE NO.

INDIANAPOLIS MOTOR SPEEDWAY, LLC,

      Plaintiff,

    v.

GLOBAL LIVE, INC. and NEW YORK
MARINE GENERAL INSURANCE COMPANY
a/k/a PROSIGHT SPECIALTY INSURANCE
GROUP, INC.,

      Defendants.

### NOTICE OF EXCLUSION OF CONFIDENTIAL INFORMATION
### THAT IS NOT NECESSARY TO THE DISPOSITION OF THE CASE

Contemporaneous with the filing of this notice, Plaintiff has omitted confidential information in accordance with Administrative Rule 9(G). Pursuant to Administrative Rule 9(G)(5)(b)(ii)(a), Plaintiff provides this notice that the omitted confidential information "is not necessary to the disposition of the case" and, therefore, "the excluded Court Record need not be filed or tendered in any form and only the Public Access version is required." Admin. Rule 9(G)(5)(b)(i).

| Document to Be Excluded from Public Record | Administrative Rule 9(G) grounds upon which exclusion is authorized |
|---|---|
| Pages 9 and 10, titled "Schedule A," to Exhibit A of the Complaint | Administrative Rule 9(G)(2)(b); Ind. Code §§ 24-2-3-2, 24-2-3-6 |

Respectfully submitted,

ICE MILLER LLP


/s/ Olga Voinarevich
Angela P. Krahulik, Atty. No. 23036-49
Olga Voinarevich, Atty. No. 32188-48

*Attorneys for Plaintiff, Indianapolis Motor Speedway, LLC*


ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100

2

**49D01-1704-PL-016106**
Marion Superior Court, Civil Division 1

Filed: 4/21/2017 2:16:16 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

ACORD®

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT |
|---|---|
| Arthur J. Gallagher & Co.<br>Insurance Brokers of California, Inc.<br>505 N. Brand Blvd., Suite 600<br>Glendale, CA 91203-3944<br>License No. 0726293 | NAME: S. Corissa Sluckey<br>PHONE (A/C, No, Ext): (818) 539-1270  FAX (A/C, No): (818) 539-1678<br>ADDRESS:<br>E-MAIL corissa_sluckey@ajg.com<br>PRODUCER<br>CUSTOMER ID #: |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED<br>Global Entertainment US Holdings, Inc.; Global Live, Inc. their officers, members, directors, representatives, employees, agents, subsidiaries and affiliates<br>1100 Glendon, Suite 2100<br>Los Angeles, CA 90024 | INSURER A : New York Marine and General Insurance Co. | 16608 |
| | INSURER B : | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |

COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY<br>X COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE X OCCUR | | X | GL201600004535 | 07/01/2015 | 07/08/2015 | EACH OCCURRENCE | $ |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>X POLICY PRO-JECT LOC | | | | | | GENERAL AGGREGATE | $ |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | AUTOMOBILE LIABILITY<br>ANY AUTO<br>ALL OWNED AUTOS<br>SCHEDULED AUTOS<br>X HIRED AUTOS<br>X NON-OWNED AUTOS<br>X PHYSICAL DAMAGE | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB X OCCUR<br>EXCESS LIAB CLAIMS-MADE<br>DEDUCTIBLE<br>X RETENTION | | X | UM201600003146 | 07/01/2015 | 07/08/2015 | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | | WC STATU-TORY LIMITS / OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

Certificate Holder is included as an Additional Insured but only as respects to claims arising out of the negligence of the Named Insured, as is required by written contract as per blanket Additional Insured endorsements CG 20 11 (01-96), CG 20 23 (10-93) and/or CG 20 24(07-04) as respects the operations of the Named Insured. Regarding Concert performance by the Rolling Stones – Indiana Motor Speedway – 4790 West 16th Street, Indianapolis, Indiana – 07/01/2015 – 07/09/2015 (including load in and load out)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Indianapolis Motor Speedway, LLC.<br>4790 West 16th Street,<br>Indianapolis, Indiana 46222 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br>AUTHORIZED REPRESENTATIVE<br>*[signature]* |

© 1988-2009 ACORD CORPORATION. All rights reserved.

ACORD 25 (2009/09)          The ACORD name and logo are registered marks of ACORD

**EXHIBIT B**

Filed: 4/21/2017 2:16:16 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

**49D01-1704-PL-016106**
Marion Superior Court, Civil Division 1

| | |
|---|---|
| STATE OF INDIANA ) | IN THE MARION SUPERIOR COURT |
| ) | |
| COUNTY OF MARION ) | CAUSE NO. |
| | |
| PAMELA SHEPARD and ) | |
| WILLIAM SHEPARD, ) | |
| ) | |
| Plaintiffs, ) | JURY TRIAL DEMAND |
| ) | |
| vs. ) | |
| ) | |
| INDIANAPOLIS MOTOR ) | |
| SPEEDWAY, LLC ) | |
| ) | |
| Defendant. ) | |

CAUSE NO. 49D10 17 01 CT 000393

**F I L E D**

(409)   DEC 28 2016

## COMPLAINT FOR DAMAGES

Come now the Plaintiffs, Pamela and William Shepard, and for their cause of action

against Defendant, Indianapolis Motor Speedway, LLC, state as follows:

    1.    At all times herein mentioned Defendant maintains its corporate headquarters at

4790 West 16th Street, Indianapolis, Indiana.

    2.    On or about July 4, 2015, Plaintiff Pamela Shepard, was a business invitee of the

Indianapolis Motor Speedway, LLC, Marion County, Indianapolis Indiana.

    3.    At said time and place, Plaintiff Pamela Shepard fell after striking a concealed

hazard.

    4.    Defendant failed to provide adequate illumination for business invitees exiting the

Rolling Stones concert at night.

    5.    At said time and place Defendant, by and through its agents or employees, was

negligent in the maintenance and upkeep of its premises.

    6.    Defendant had notice of the hazardous condition.

**EXHIBIT C**

7. As a proximate result of Defendant's careless and negligent acts and/or omissions Plaintiff, Pamela Shepard, has suffered the following damages:

        a.     severe physical injuries;

        b.     pain and suffering;

        c.     emotional distress;

        d.     reasonable medical expenses; and

        e.     disfigurement.

8. That as a direct and proximate result of Defendant, Indianapolis Motor Speedway, LLC's careless and negligent acts and/or omissions, Plaintiff William Shepard has suffered the following damages:

        a.     he has been deprived of the love, care, affection and services of his wife; and

        b.     he has had to provide for the nursing care and assistance of his wife.

WHEREFORE, Plaintiffs, by Counsel, demand judgment against the Defendant, Indianapolis Motor Speedway, LLC, in an amount which will fully and fairly compensate them for their injuries and damages, for their costs, for TRIAL BY JURY, and for all other just and proper relief in the premises.

Respectfully submitted,

Merry M. Fountain
Attorney No. 20125-49
THE FOUNTAIN LAW FIRM
10401 North Meridian, Suite 209
Indianapolis, Indiana 46290
(317) 423-4242
Attorney for Plaintiffs

2

U.S POSTAGE >> PITNEY BOWES

ZIP 46282 $ 010.03⁰
02 1P
0001397195 APR 21 2017

CERTIFIED MAIL

7016 1970 0000 4621 8639



**IceMiller**
LEGAL COUNSEL

One American Square   Suite 2900   Indianapolis, IN 46282-0200

Global Live, Inc.
c/o Corporation Service Company, its Registered
Agent
2711 Centerville Rd., Suite 400
Wilmington, DE 19808

Filed: 5/18/2017 1:26:18 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

STATE OF INDIANA     )     IN MARION COUNTY SUPERIOR COURT
    ) SS:
COUNTY OF MARION     )     CAUSE NUMBER: 49D01-1704-PL-016106

| | |
|---|---|
| INDIANAPOLIS MOTOR SPEEDWAY, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | ) |
| | ) |
| GLOBAL LIVE, INC. and NEW YORK MARINE | ) |
| GENERAL INSURANCE COMPANY a/k/a | ) |
| PROSIGHT SPECIALTY INSURANCE GROUP, INC., | ) |
| | ) |
|     Defendants. | ) |
| | ) |

## E-FILING APPEARANCE BY ATTORNEY IN CIVIL CASE

**This Appearance Form must be filed on behalf of every party in a civil case.**

1. The party on whose behalf this form is being filed is:

   Initiating \_\_\_\_      Responding \_\_X\_\_      Intervening \_\_\_\_

   The undersigned attorney and all attorneys listed on this form now appear in this case for the following parties:

   Name of party **Global Live, Inc. and New York Marine and General Insurance Company, incorrectly identified as New York Marine General Insurance Company A/K/A Prosight Specialty Insurance Group, Inc.**

   Address of party *(see Question #5 below if this case involves a protection from abuse order, a workplace violence restraining order, or a no-contact order)*

   _____

   Telephone # of party _____

2. Attorney information for service as required by Trial Rule 5(B)(2)

   **Ross D. Roloff**
   **Attorney Identification Number 17524-64**
   **Tressler LLP**
   **233 South Wacker Drive**
   **22nd Floor**

**Chicago, Illinois 60606**
**rroloff@tresslerllp.com**
**Telephone: 312.627.4110**

**-IMPORTANT**: Each attorney specified on this appearance:

(a)    certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

(b)    acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney; and

(c)    understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Attorneys can review and update their Roll of Attorneys contact information on Courts Portal at http://portal.courts.in.gov.

3.   This is a _____PL_____ case type as defined in administrative Rule 8(B)(3).

4.   This case involves child support issues. Yes _____ No ___X___ (*If yes, supply social security numbers for all family members on a separately attached document filed as confidential information on **light green paper**. Use Form TCM-TR3.1-4.*)

5.   This case involves a protection from abuse order, a workplace violence restraining order, or a no-contact order. Yes _____ No ___X___ (*If Yes, the initiating party must provide an address for the purposes of legal service but that address should not be one that exposes the whereabouts of a petitioner.*) The party shall use the following address for purposes of legal service:

_____        Attorney's address

_____        The Attorney General Confidentiality program address (contact the Attorney General at 1-800-321-1907 or e-mail address is **confidential@atg.in.gov**).

_____        Another address (provide)

_____

This case involves a petition for involuntary commitment.        Yes _____ No ___X___

6.   If Yes above, provide the following regarding the individual subject to the petition for involuntary commitment:

a.   Name of the individual subject to the petition for involuntary commitment if it is not already provided in #1 above.

2

_____

b. State of Residence of person subject to petition: _____

c. At least one of the following pieces of identifying information:

   (i) Date of Birth _____

   (ii) Driver's License Number _____

      State where issued _____ Expiration date _____

   (iii) State ID number _____

      State where issued _____ Expiration date _____

   (iv) FBI number _____

   (v) Indiana Department of Corrections Number _____

   (vi) Social Security Number is available and is being provided in an attached
      confidential document Yes _____ No _____

7. There are related cases:  Yes _____ No _____X____ (*If yes, list on continuation page.*)

8. Additional information required by local rule:

   _____

9. There are other party members:  Yes _____ No __X__ (*If yes, list on continuation page.*)

10. This form has been served on all other parties and Certificate of Service is attached:

   Yes ___X___ No _____

3

Dated: <u>May 18, 2017</u>

Respectfully submitted,

TRESSLER LLP

*s/ Ross D. Roloff*

Ross D. Roloff
Attorney Number 17524-64
Tressler LLP
233 South Wacker Drive
22nd Floor
Chicago, Illinois 60606
312.627.4110
rroloff@tresslerllp.com

RDR/des/689781

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served electronically through Efile.incourts.gov on the following persons on May 18, 2017:

Angela D. Krahulik, Atty. No. 23036-49
Ice Miller LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282
317.236.5991
Angela.Krahulik@icemiller.com

Olga Voinarevich, Atty. No. 32188-48
Ice Miller LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282
317.236.2347
Olga.Voinarevich@icemiller.com

*s/ Ross D. Roloff*

Ross D. Roloff
Attorney Number 17524-64
Tressler LLP
233 South Wacker Drive
22nd Floor
Chicago, Illinois 60606
312.627.4110
rroloff@tresslerllp.com

Filed: 5/18/2017 1:30:06 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

| STATE OF INDIANA | ) | IN MARION COUNTY SUPERIOR COURT |
|---|---|---|
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NUMBER: 49D01-1704-PL-016106 |

INDIANAPOLIS MOTOR SPEEDWAY, LLC,    )
    )
       Plaintiff,    )
    )
v.    )
    )
GLOBAL LIVE, INC. and NEW YORK MARINE    )
GENERAL INSURANCE COMPANY a/k/a    )
PROSIGHT SPECIALTY INSURANCE GROUP, INC.,    )
    )
       Defendants.    )
_____)

## NOTICE OF AUTOMATIC ENLARGEMENT

The defendants, Global Live, Inc. ("Global Live") and New York Marine and General Insurance Company, incorrectly identified as New York Marine General Insurance Company A/K/A Prosight Specialty Insurance Group, Inc. ("New York Marine"), pursuant to TR 6(B)(1) and LR49-TR5-203(D), respectfully move for an automatic enlargement of time to respond to "IMS's Complaint Against Global Live, Inc. and New York Marine General Insurance Company A/K/A Prosight Specialty Insurance Group, Inc." ("Complaint"). The Complaint was filed on April 21, 2017, New York Marine was served by mail on April 25, 2017, and Global Live was served by mail on April 26, 2107. Therefore, the earliest responsive pleading date of twenty-three (23) days thereafter is May 18, 2017. With this automatic enlargement of thirty (30) days under LR49-TR5-203(D), the responsive pleadings of Global Live and New York Marine will now be due on or before June 16, 2017.

Dated: <u>May 18, 2017</u>          Respectfully submitted,

                                          TRESSLER LLP

                                          *s/ Ross D. Roloff*

                                          _____

                                          Ross D. Roloff
                                          Attorney Number 17524-64
                                          Tressler LLP
                                          233 South Wacker Drive
                                          22nd Floor
                                          Chicago, Illinois 60606
                                          312.627.4110
                                          rroloff@tresslerllp.com

RDR/689787

Filed: 5/18/2017 1:30:06 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

### CCS ENTRY FORM

IN THE MARION COUNTY SUPERIOR COURT, MARION COUNTY, INDIANA

**CAUSE NUMBER:** 49D01-1704-PL-016106

**TITLE OF CAUSE:** *Indianapolis Motor Speedway, LLC v. Global Live, Inc. and New York Marine General Insurance Company A/K/A Prosight Specialty Insurance Group, Inc.*

The activity should be summarized as follows on the Chronological Case Summary (CCS):

Come now the defendants, Global Live, Inc. and New York Marine and General Insurance Company, incorrectly identified as New York Marine General Insurance Company A/K/A Prosight Specialty Insurance Group, Inc., by and through their counsel, Ross D. Roloff of Tressler LLP, and files their "E-Filing Appearance by Attorney in Civil Case" and "Notice of Automatic Enlargement" on May 18, 2017.

**Submitted by:**

Ross D. Roloff (Attorney No. 17524-64)
Tressler LLP
233 S. Wacker Drive, 22nd Floor
Chicago, Illinois 60606

Attorney for Defendants

**Opposing Counsel:**

Angela D. Krahulik, Atty. No. 23036-49
317.236.5991
Angela.Krahulik@icemiller.com

Olga Voinarevich, Atty. No. 32188-48
317.236.2347
Olga.Voinarevich@icemiller.com

Ice Miller LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282

Attorneys for Plaintiff

---

### (TO BE DESIGNATED BY THE COURT)

This CCS Entry Form shall be:

(     ) Placed in case file
(     ) Discarded after entry on the CCS
(     ) Mailed to all counsel by: _____ Counsel _____ Clerk _____ Other
(     ) There is no attached Order; or
          The attached Order shall be placed in the RJO: _____ Yes _____ No

Date: _____     Approved: _____

Judge, _____ County Circuit Court

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served electronically through Efile.incourts.gov on the following persons on <u>May 18, 2017</u>:

Angela D. Krahulik, Atty. No. 23036-49
Ice Miller LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282
317.236.5991
Angela.Krahulik@icemiller.com

Olga Voinarevich, Atty. No. 32188-48
Ice Miller LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282
317.236.2347
Olga.Voinarevich@icemiller.com

*s/ Ross D. Roloff*

Ross D. Roloff
Attorney Number 17524-64
Tressler LLP
233 South Wacker Drive
22nd Floor
Chicago, Illinois 60606
312.627.4110
rroloff@tresslerllp.com