UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANAPOLIS MOTOR SPEEDWAY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:17-cv-01743-JMS-MPB |
| | ) | |
| GLOBAL LIVE, INC. and NEW YORK MARINE AND GENERAL INSURANCE COMPANY *a/k/a* PROSIGHT SPECIALTY INSURANCE GROUP INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

Plaintiff Indianapolis Motor Speedway, LLC ("IMS") and Defendant Global Live, Inc. ("Global Live") entered into a Special Event Agreement (the "Event Agreement") in April 2015 which allowed Global Live to host a concert featuring the Rolling Stones on July 4, 2015 at IMS. Pamela and William Shepard attended the concert, and both were injured when they tripped over a curb and fell while walking in a tunnel at IMS at the end of the evening. The Shepards have sued IMS in Indiana State Court (the "Underlying Lawsuit"), and IMS claims in this lawsuit that Defendant New York Marine and General Insurance Company, also known as ProSight Insurance Group, Inc. ("ProSight"), must defend and indemnify it in the Underlying Lawsuit under a commercial general liability policy ProSight issued to Global Live (the "Policy"). Presently pending before this Court is a Motion to Dismiss filed by Global Live and ProSight. [Filing No. 7.]

## I.
### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint

provide the defendant with "fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The factual allegations in the Complaint filed by IMS,[1] which the Court must accept as true at this time, are as follows:

---

[1] This Background section summarizes relevant Policy provisions, even though IMS did not attach the Policy to the Complaint. It is well-settled that a court may consider documents not attached to the complaint when they are referenced in the complaint and are integral to plaintiff's claims. *See, e.g.*, *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). Additionally, IMS has stated that the only reason it did not attach the Policy was because it never received a copy, and agrees that the Court may consider the Policy when analyzing Defendants' Motion to Dismiss. [Filing No. 22 at 3, n.1.]

**A. The Event Agreement**

In April 2015, IMS and Global Live entered into the Event Agreement, which allowed Global Live to host a concert featuring The Rolling Stones at IMS on July 4, 2015 (the "Event"). [Filing No. 1-1 at 11.] The Event Agreement set forth the obligations of IMS and Global Live in connection with the Event, including the following:

- Global Live was to provide "Event insurance" as follows:

> 9. **Insurance.** Prior to the Event, Licensee shall obtain and maintain at its expense commercial general liability insurance covering the Event, including without limitation products and completed operations liability, and a contractual liability endorsement (and covering X,C and U hazards, where applicable; independent contractors; and use of pyrotechnics), for full coverage of claims to a limit of ▇▇▇ per occurrence and in the aggregate (the "Policy"); automobile liability insurance on all owned, non-owned and hired autos and equipment operated or otherwise used or displayed during the Event with coverage limits ▇▇▇ per occurrence; and workers' compensation in accordance with statutory requirements, including employers liability insurance with a limit of ▇▇▇ per claim (but in no event in limits less than those required by law and/or as set forth in the artists' riders, if any); and Event cancellation or postponement coverage in an amount sufficient to cover ticket refunds. Licensee shall deliver a certificate evidencing Licensee's compliance as to insurance coverage to IMS upon execution of this Agreement or the Event will be canceled, and no fees or deposits paid prior to the cancellation will be refunded. The certificate of insurance must demonstrate the following:
>
>   (a) IMS Group (as defined below) is a certificate holder *and* is included as an additional insured under the Policy;
>   (b) The Policy specifically covers the Event and Licensee's obligations to IMS; and
>   (c) The Policy provides coverage primary to any other coverage(s) available to IMS Group.
>
> The amount of insurance coverage required to be obtained by Licensee is minimum coverage, and it shall be Licensee's obligation to purchase insurance for full coverage of claims as it deems advisable in its business judgment to protect itself and provide indemnity to IMS Group based upon the activities to occur in connection with the Event. In addition, Licensee will require all subcontractors performing work in connection with the Event to include IMS Group as Additional Insureds for comprehensive general liability insurance carried by such subcontractors.
>
> To support its indemnity obligations as set forth in Section 11(b), IMS shall maintain commercial general liability insurance ▇▇▇ per occurrence and in the aggregate. In addition, IMS shall have Licensee named as an additional insured for any claims asserted against Licensee that would, if successful, be covered by IMS's indemnity obligations as set forth in Section 11(b).

[Filing No. 1-1 at 25-26.]

- Global Live was to indemnify IMS under certain circumstances as provided in the Indemnification Provision, which stated in relevant part:

> **11. Indemnification.**
>
> a. Licensee and Licensee's agents, representatives, employees, contractors and invitees and spectators ("Invitees") shall be provided with access to the Speedway (including both public areas and restricted areas of the Speedway) conditioned upon Licensee's compliance with this Section 11a. To the fullest extent possible, it is the intention of Licensee and IMS that the indemnities set forth below and the insurance coverage maintained by Licensee pursuant to Section 9 will provide liability protection to Licensee and IMS Group for claims arising out of Licensee's and its Invitees' presence at the Speedway during the Event. To the extent that Licensee's insurance holds IMS Group harmless, IMS Group does not require indemnity from Licensee. However, if and to the extent the coverage maintained by Licensee for the Licensee and IMS Group's benefit does not hold IMS Group harmless, Licensee shall indemnify, defend and hold harmless IMS Group for third party claims and liability arising in connection therewith, including costs and reasonable outside attorneys' fees, arising from (i) Licensee's or its Invitees' use of the Speedway or (ii) the negligence or willful misconduct of Licensee or its Invitees or (iii) Licensee's breach of this Agreement and/or its representations and warranties hereunder, provided the applicable claim is reduced to a final adverse judgment or settled with Licensee's prior written consent, not to be unreasonably withheld, provided, however, the foregoing indemnity shall not apply with respect to claims resulting from the breach of IMS' representations, warranties or covenants under this Agreement or from the sole negligence or willful misconduct of the IMS Group or any member thereof. This Section shall survive expiration or termination of this Agreement. "IMS Group" means IMS, Indianapolis Motor Speedway Foundation, Inc., all relevant race sanctioning bodies, and the successors, assigns, officers, directors, owners, members, agents, affiliates and employees of each of them.

[Filing No. 1-1 at 26.]

**B. The Policy and the Certificate of Insurance**

ProSight issued the Policy to Global Entertainment US Holdings, Inc. for an effective period of July 1, 2015 to July 6, 2015. [Filing No. 8-1 at 14.] Global Live's insurance broker, Arthur J. Gallagher & Co., issued a Certificate of Liability Insurance (the "Certificate") to Global Live reflecting issuance of the Policy, and listed the Certificate Holder as IMS. [Filing No. 1-1 at 32.] The Certificate states:

> Certificate Holder is included as an Additional Insured but only as respects to claims arising out of the negligence of the Named Insured, as is required by written contract as per blanket Additional Insured endorsements CG 20 11 (01-96), CG (20 23 (10-93) and/or CG 20 34 (07-04) as respects the operations of the Named Insured. Regarding Concert performance by the Rolling Stones – Indiana Motor Speedway….

[Filing No. 1-1 at 32.]

The relevant endorsements referenced in the Certificate, which address who is considered an Additional Insured, provide as follows:

- Endorsement CG 20 11 01-96 (the "Managers or Lessors Endorsement"): "WHO IS AN INSURED (Section II) is amended to include as an insured the

person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions: This insurance does not apply to: 1. Any 'occurrence which takes place after you cease to be a tenant in that premises. 2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule." [Filing No. 8-1 at 34.]

- Endorsement CG 20 34 07 04 (the "<u>Leased Equipment Endorsement</u>"): "Who Is An Insured (Section II) is amended to include as an additional insured any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization." [Filing No. 8-1 at 36.][2]

**C. The Underlying Lawsuit**

On July 4, 2015, Pamela and William Shepard attended the Rolling Stones concert at IMS. [Filing No. 1-1 at 13.] While they were walking through a tunnel at IMS to exit the Event, the Shepards tripped over a curb. [Filing No. 1-1 at 14.] William Shepard sustained minor injuries to his leg, and Pamela Shepard injured her left elbow and right shin. [Filing No. 1-1 at 14.] Ms. Shepard's injuries required surgical intervention and other treatment. [Filing No. 1-1 at 14.]

On December 28, 2016, the Shepards filed a lawsuit against IMS in Marion County, Indiana Superior Court. [Filing No. 1-1 at 14 (*Pamela Shepard and William Shepard v. Indianapolis Motor Speedway, LLC*, Cause No. 49D10-1701-CT-000393).] In the Underlying Lawsuit, the Shepards allege that IMS breached its duty of care to the Shepards by failing to provide adequate illumination for business invitees exiting the Event. [Filing No. 1-1 at 14.]

---

[2] IMS concedes that it is not considered an additional insured under Endorsement CG 20 23 10 93, which applies to "any executor, administrator, trustee or beneficiary" of Global Live's "estate or living trust." [*See* Filing No. 22 at 12 (IMS stating that it "concedes it is not an executor, administrator, trustee or beneficiary under the terms of the Endorsement numbered CG 20 23 10 93").]

5

### D. The Present Lawsuit

IMS filed suit against Global Live and ProSight in Marion Superior Court on April 21, 2017, [Filing No. 1-1 at 10-21], and Global Live and ProSight removed the case to this Court on May 25, 2017 on the basis of diversity jurisdiction, [Filing No. 1]. IMS alleges claims for breach of contract against ProSight, breach of the duty of good faith and fair dealing against ProSight, and breach of contract against Global Live. [Filing No. 1-1 at 16-20.] IMS also seeks a declaratory judgment that ProSight is obligated to provide insurance coverage for any and all claims raised in the Underlying Lawsuit, including for both IMS's defense of the Underlying Lawsuit and indemnification of IMS for liability in connection with the Underlying Lawsuit. [Filing No. 1-1 at 18-19.]

## III.
### DISCUSSION

### A. Policy Coverage

Defendants first argue that IMS's claims against ProSight fail because IMS is not an additional insured under the Policy. [Filing No. 8 at 13-17.] They assert that the Certificate does not create additional coverage for IMS by listing IMS as a Certificate Holder because the Certificate contains specific language confirming that it does not create or confirm coverage and that, even if the Certificate did provide coverage for IMS, that coverage would be limited to instances when claims are made against IMS arising out of Global Live's negligence. [Filing No. 8 at 13-14.] Defendants contend that the Shepards do not allege that Global Live was negligent in the Underlying Lawsuit, or caused the negligence of IMS. [Filing No. 8 at 15.] Defendants assert that because all of IMS's claims are based on IMS's status as an additional insured, its claims fail. [Filing No. 8 at 15.] Further, Defendants argue that: (1) the Managers and Lessors Endorsement only applies to liability arising out of the ownership, maintenance, or use of premises leased to

6

Global Live, there are no allegations of those circumstances in the Underlying Lawsuit, and the Event Agreement states that Global Live was not leasing from IMS; and (2) the Leased Equipment Endorsement provides that additional insureds are persons or organizations from whom Global Live leases equipment, and there is no allegation that Global Live leased equipment from IMS. [Filing No. 8 at 16-17.]

In response, IMS argues that the Certificate was a form that IMS mandated Global Live provide to show that IMS was a certificate holder and an additional insured under the Policy, the Policy specifically covered the Event and Global Live's obligations to IMS, and the Policy provided coverage primary to any other coverage available to IMS. [Filing No. 22 at 9.] It contends that the Certificate expressly includes language evidencing coverage for IMS under the Policy, and that the Event Agreement and the Certificate both were entered into to provide coverage for IMS. [Filing No. 22 at 10-11.] IMS also contends that the Policy specifically provides coverage for the Event, and for the "Blanket Additional Insured," which it claims is IMS. [Filing No. 22 at 11.] IMS argues further that the Managers or Lessors Endorsement does not only apply to lessors, but also to managers of the premises, and that "managers" is not defined by the Policy and IMS has sufficiently alleged that it falls within the endorsement. [Filing No. 22 at 14-15.] It also contends that it is an additional insured under the Leased Equipment Endorsement because, when read in conjunction with the Event Agreement, it is clear that Global Live was required to obtain insurance to "'cover[ ] the event, including without limitation products and completed operations liability.'" [Filing No. 22 at 13.] IMS further notes that Global Live leased equipment from IMS under the Event Agreement, including lighting, which brings IMS within the terms of the Leased Equipment Endorsement. [Filing No. 22 at 13.]

7

On reply, Defendants reiterate their argument that the Certificate itself does not provide coverage for IMS. [Filing No. 23 at 2-5.] They also argue that the allegations in the Underlying Lawsuit do not bring IMS within the scope of the Managers or Lessors Endorsement or the Leased Equipment Endorsement such that IMS is an additional insured. [Filing No. 23 at 6-8.]

In evaluating the parties' arguments, it is important to keep in mind that Defendants have moved to dismiss this case based on the allegations of the Complaint. While the Court agrees with the parties that it may consider the Policy (although it is not attached to the Complaint), the Court's task is to determine whether the Complaint states a claim upon which relief can be granted. IMS alleges in the Complaint that Global Live was obligated under the Event Agreement to obtain event insurance for all claims arising from the Event, that the Policy was to provide coverage for Global Live's obligations to IMS, that the Policy was to explicitly include IMS "'as an additional insured under the Policy,'" and that the coverage provided to IMS was to be "'primary to any other coverage(s) available to IMS.'" [Filing No. 1-1 at 11-12.] These allegations indicate an intent in the Event Agreement for Global Live to purchase coverage that specifically covered IMS as an additional insured, and are enough to state claims that are dependent upon coverage under the Policy – here, breach of contract and breach of the duty of good faith and fair dealing – and to support a request for a declaratory judgment. Moreover, the parties have presented differing views regarding the meaning of the Managers or Lessors Endorsement and the Leased Equipment Endorsement. Resolution of the issue of whether those endorsements provided coverage for IMS is not appropriate at the motion to dismiss stage, where IMS has sufficiently alleged that the parties intended it to be covered by the Policy, and that it was, in fact, covered. The Court **DENIES** Defendants' Motion to Dismiss as it relates to coverage under the Policy.

### B. The Indemnification Provision

Defendants also argue that the Indemnification Provision in the Event Agreement does not obligate Global Live to defend and indemnify IMS in the Underlying Lawsuit, so IMS's claim against Global Live for breach of the Indemnification Provision must be dismissed. [Filing No. 8 at 18-19.] They argue that the Indemnification Provision specifically excludes indemnification for claims that are "from the sole negligence or willful misconduct of the IMS Group or any member thereof," and note that the Underlying Lawsuit only involves negligence claims against IMS and not Global Live. [Filing No. 8 at 18-19 (emphasis omitted).] Defendants also contend that "under the [Event Agreement] IMS was solely responsible for parking and traffic services and lighting at the Concert." [Filing No. 8 at 19.]

In response, IMS argues that the Shepards amended their complaint in the Underlying Lawsuit to add Global Live as a defendant, so Defendants' argument that the Indemnification Provision excludes indemnification for claims that are from the sole negligence of IMS is now moot. [Filing No. 22 at 16.] Further, IMS asserts that Global Live, not IMS, was in control of the premises on the day of the Event, which included control over illumination of the premises. [Filing No. 22 at 16-17.]

On reply, Defendants argue that even though Global Live was added as a defendant in the Underlying Lawsuit, there are still no specific allegations that Global Live was negligent. [Filing No. 23 at 8-9.] Defendants also contend that under the Event Agreement, IMS was solely responsible for parking and traffic services and lighting at the Event, and "IMS's attempt to shift responsibility simply because Global Live agreed to pay for those services provided by IMS fails." [Filing No. 23 at 10.]

9

Again, the Court looks to the allegations in the Complaint. IMS alleges that the Event Agreement, in addition to providing that Global Live must maintain insurance that would cover IMS, also provided that "to the extent ProSight fails to provide the required defense and indemnity to IMS, Global Live must satisfy its duty to defend and indemnify IMS from any such claims." [Filing No. 1-1 at 13.] The Court finds unavailing Defendants' arguments that IMS has not stated a claim for breach of the Indemnification Provision against Global Live because the Underlying Lawsuit does not contain negligence claims against Global Live, or because IMS was solely responsible for parking, traffic services, and lighting at the Event. First, Global Live is now a defendant in the Underling Lawsuit, and the Shepards allege that "Defendants" did not provide adequate lighting, "Defendants" were negligent, "Defendants" had notice of a hazardous condition, and the Shepards were injured as a proximate result of "Defendants'" negligence. [Filing No. 21-1 at 4-5.] It is inconsequential that the Shepards do not specify in each allegation "IMS and Global Live."

Second, Defendants' argument regarding who was responsible for lighting is overreaching. At the motion to dismiss stage, it is not appropriate for the Court to examine the language of the Event Agreement, determine who was responsible for lighting, and then determine whether the Indemnification Provision applies under the circumstances here. As with their arguments related to whether IMS was an additional insured under the Policy, the Court focuses only on the allegations of the Complaint – and those allegations indicate an intent on the part of Global Live and IMS for Global Live to indemnify IMS if insurance did not cover IMS under certain circumstances. In essence, the parties agreed that in exchange for use of the venue, Global Live would come to IMS's financial - though not "emotional - rescue" in the event of a claim.[3]

---

[3] THE ROLLING STONES, *Emotional Rescue*, *on* Emotional Rescue (Compass Point Studios 1980).

Defendants have not presented a situation that is so far outside the scope of the Indemnity Provision, based on the allegations in the Complaint, that IMS has failed to state a claim upon which relief can be granted. Rather, IMS has adequately alleged that the circumstances present here fall within the Indemnity Provision. Defendants' Motion to Dismiss is **DENIED** as it relates to indemnification under the Event Agreement's Indemnification Provision.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss, [Filing No. 7]. The Court notes that its decision should not be construed as a finding that the Policy or the Indemnification Provision provide coverage for IMS, but only that IMS has stated claims that this is the case at the motion to dismiss stage. Defendants' arguments are more akin to those that would be made at the summary judgment stage of the litigation, after discovery has taken place and in the context of a developed factual record. The Court recognizes Defendants' desire to bring this litigation to a swift conclusion, but it is early and "time is on our side."[4] Moreover, "you can't always get what you want" – but the parties are encouraged to work toward resolution of this matter short of trial, and are reminded that "if you try sometimes well you just might find you get what you need."[5]

Date: 8/14/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[4] THE ROLLING STONES, *Time Is On My Side*, *on* 12x5 (Regent Sound 1964).
[5] THE ROLLING STONES, *You Can't Always Get What You Want*, *on* Let It Bleed (Decca Records 1969).

11